UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RODERICK GOLDEN,

                                    Plaintiff,

                                                                    5:21-cv-85
v.                                                                  (DNH/TWD)

JOHN GAGNE, et al.,

                                    Defendants.
_____

APPEARANCES:

RODERICK GOLDEN
Plaintiff, *pro se*
208 Melrose Ave
Syracuse, NY 13206

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

                    <u>**ORDER AND REPORT-RECOMMENDATION**</u>

I.        **INTRODUCTION**

        Roderick Golden ("Plaintiff") filed this *pro se* action against John Gagne, Field

Investigator, Syracuse DMV ("Gagne"); Timothy Furlong, Regional Director, Syracuse DMV

("Furlong"); Detective William Root, Onondaga County Sheriff's Dept. ("Root"); William

Fitzpatrick, Onondaga County District Attorney ("DA Fitzpatrick"); and Hon. Lawrence Marks,

NY Chief Administrative Judge for NY Courts ("Judge Marks") (collectively "Defendants").

(Dkt. No. 1.)  After granting Plaintiff's *in forma pauperis* application, this Court recommended

that Plaintiff's complaint be dismissed without prejudice because it failed to provide sufficient

information for the Court to review or for Defendants to have fair notice of the claims against

them.  (Dkt. No. 6.)  The Court also denied Plaintiff's motion for appointment of counsel as

premature.  *Id*.  U.S. District Judge David N. Hurd adopted the Report-Recommendation and afforded Plaintiff an opportunity to submit an amended complaint.  (Dkt. No. 7.)  Currently before the Court is Plaintiff's amended complaint and a second motion for appointment of counsel.  (Dkt. Nos. 11, 12.)

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

### A.    Standard of Review

Title 28 of United States Code Section 1915 directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[1]

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure ("Federal Rules").  Rule 8 of the Federal Rules provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable."  *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).  Although "[n]o technical form is

---

[1]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Fed. R. Civ. P. 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  *Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rule 8 of the Federal Rules "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

### B.    Summary of the Amended Complaint

The following facts are set forth as alleged by Plaintiff. On December 5, 2016, Plaintiff was "subjected to a warrantless arrest" by Gagne, Root, and two other unidentified Onondaga County Sheriff's Deputies, John Doe 1 and John Doe 2. (Dkt. No. 11 at 4-5.[2]) Plaintiff's arrest was "effectuated during a brief-court ordered recess during the trial of a related Syracuse City Court Small civil case," which Plaintiff and his wife, Tokay Golden "were attending and actively litigating *pro se* as co-Plaintiffs against a local automobile repair shop Tri-Count Auto." *Id.* at 5. Gagne was "also in attendance at that trial, ostensibly as a subpoenaed witness for [Plaintiff's] adversary, Tri-Count Auto." *Id.*

Gagne and the "three other arresting officers—all acting in concert with each other under color of state law within the scope of the respective employment, and all in full public view— accosted [Plaintiff] in the hallway outside the courtroom and forthwith placed [him] under arrest." *Id.* at 5-6. Plaintiff was "publicly handcuffed, frisked, and then openly 'perp walked' from the building to the Onondaga County Justice Center nearby for booking, fingerprinting, and

---

[2]  Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

other intake processing incidental to [Plaintiff] being confined there pending [his] arrangement."
*Id*. at 6.  Plaintiff was upset, embarrassed, and humiliated by the "public spectacle" of being arrested on a "spurious criminal charge."  *Id*.  The amended complaint refers to the foregoing arrest as the "first in a concurrent serious of four distinct (but related) ensuing unlawful seizures, each of which was violative of [Plaintiff's] Fourth Amendment rights[.]"  *Id*.

The next morning, approximately twenty-two hours following his arrest, Plaintiff was "transported from the Justice Center to be arraigned in Syracuse City Court (Cecile, J.) on a felony complaint attested to by Defendant Gagne as the complainant."  *Id*. at 7.  Plaintiff subsequently learned the felony complaint charged him with "having committed the class D Felony of Criminal Possession of a Forged Instrument, Second Degree (NY Penal Law § 170.25)" in that "on information and belief" "approximately fourteen months prior to [his] arrest, [Plaintiff] fraudulently and feloniously possessed a counterfeit New York safety inspection sticker which was found affixed to a motor vehicle allegedly driven by [Plaintiff] to Tri-Count."  *Id*. at 7-8.

During the arraignment, represented by assigned counsel, Plaintiff pleaded not guilty.  *Id*. at 8.  Plaintiff claims the arraignment "included no discussion whatsoever of the factual underpinning of the charge; or the propriety of [his] warrantless arrest; or the facial sufficiency of the accusatory instrument; or any other matter even remotely related to the issue of probable cause to believe that [Plaintiff] committed the charged offense."  *Id*.  "Judge Cecile precipitately concluded [the] arraignment by issuing a securing order which remanded [Plaintiff] to the Sheriff's custody and set [his] bail at $7500 cash/bond."  *Id*. at 9.  The case was adjourned for further proceedings on "Gagne's felony complaint."  *Id*.  Plaintiff was returned to the Justice Center, where he "remained in custody for 2-3 days" before he "could raise the funds necessary

to secure [his] release with a bail bond." *Id*. The amended complaint refers to the foregoing as the "second unlawful seizure." *Id*.

"In the ensuing months," Plaintiff had to "put aside" other "personal and business affairs so that [he] could devote a significant amount of [his] time, energy, effort and expense to developing [his] defense to Defendant Gagne's baseless and spurious criminal charge." *Id*. at 10. He was required to take time off from work to make required court appearances, to consult with his attorneys, and to "make visits with physicians for treatment of [his] worsening mental and emotional distress." *Id*.

On December 9, 2016, during one of the numerous courts appearances Plaintiff was required to make, Syracuse City Court Judge Mary A. Doherty issued "an order of protection in person in favor of Jonathan Zerbel, the individual identified in defendant John Gagne's felony complaint as being the deponent in a curiously unfiled (and inexplicably missing) supporting deposition." *Id*. at 10-11. "This 'phantom' supporting deposition never surfaced at any time during [Plaintiff's] prosecution on Defendant Gagne's felony complaint, even though it allegedly contained crucial information necessary for the establishment of probable cause to believe that [Plaintiff] committed Defendant Gagne's charged felony offense." *Id*. at 11. The amended complaint refers to Judge Doherty's "issuance of her order of protection'" as the "third unlawful seizure." *Id*.

Plaintiff claims "the restrictions the unlawful seizure imposed on [his] liberty rights unduly interfered with [his] Fifth and Fourteenth Amendment due process rights to a fair trial on Defendant Gagne's felony complaint inasmuch as those restrictions hampered [his] ability to investigate the scene of the alleged crime, and to speak with any prospective witnesses who might have been present on the Tri-Count premises at relevant times." *Id*. at 12. Plaintiff claims

"Judge Doherty's issuance of her order of protection was preceded by no exploration whatsoever of any facts which might be considered as being supporting of establishing the existence of reasonable cause to believe that [Plaintiff] committed the offense charged in Investigator Gagne's felony complaint." *Id*.

On May 18, 2017, during a scheduled pre-trial conference with Syracuse City Court Judge Derrick Thomas, "the felony charge was to be 'reduced' (on the People's initiative) in order to bypass the Grand Jury's considering the charge." *Id*. a 12-13. At that appearance, "there was little or no compliance with the controlling procedural mandates of Criminal Procedure Law" in that the case "appears to have never been presented to the Grand Jury; and second, no explanation was proffered to secure or justify the People's curious failure to prepare, serve or file a replacement accusatory instrument." *Id*. at 13.

On January 23, 2018, Plaintiff's case was "brought to its long-overdue conclusion" when "following a bring off-the-record discussion among Judge Thomas, Onondaga County Assistant District Attorney Jane Raven and [Plaintiff], the Judge dismissed the case with the concurrence of the parties." *Id*. at 13. This court appearance included "no discussion whatsoever of any facts which might arguable bear on the issue of reasonable cause to believe that [Plaintiff] committed the offense which was being dismissed." *Id*. at 13-14.

"In retrospect, [Plaintiff] now firmly believe[s] that [his] being charged with the original counterfeit inspection sticker felony charge was the actual fruit of a nefarious conspiracy to violate [his] civil rights that originated with Timothy Furlong, Investigator John Gagne, and unknown officers at the Syracuse Regional Office of the New York Department of Motor Vehicles." *Id*. at 14. Plaintiff believes he was "singled out for retaliation because of a complaint [he] lodged with State Assemblyman Sam Roberts' office in 2012 seeking redress for some

questionable practices of a certain DMV investigator (Michael Santalucia)." *Id*. "That complaint earned a 'troublemaker' status with the DMV" for Plaintiff and his wife. *Id*. Plaintiff believes it was "that status" which "severely warped Investigator Gagne's capability to conduct a full, fair and through investigation." *Id*.

The amended complaint lists violations of Plaintiff's constitutional rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. *Id*. at 16. Plaintiff seeks declaratory and monetary relief. *Id*. at 17. For a more detailed description of these facts and claims, reference is made to the amended complaint.

### C. Analysis

Plaintiff brings this action pursuant to § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp*., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

To state a cognizable claim under § 1983, a complaint must allege "(1) 'that some person has deprived [the plaintiff] of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)) (alteration omitted).

### 1. DA Fitzpatrick and Judge Marks

Plaintiff names DA Fitzpatrick and Judge Marks as Defendants in the caption of the amended complaint and list of parties. (Dkt. No. 11 at 3.) DA Fitzpatrick and Judge Marks,

however, are not referenced anywhere in the body of the amended complaint and Plaintiff has not asserted any cause of action against these Defendants. In the absence of factual allegations sufficient to plausibly suggest DA Fitzpatrick and Judge Marks were personally involved in conduct that violated Plaintiff's constitutional rights, the amended complaint fails to state a cognizable claim against these Defendants. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

Additionally, and as previously noted in the Report-Recommendation (Dkt. No. 6), DA Fitzpatrick and Judge Marks are most likely entitled to prosecutorial and judicial immunity. *See Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001); *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (per curiam).

It is well-settled that "[p]rosecutors sued under § 1983 enjoy absolute immunity 'from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process.'" *Joyner v. Cty. of Cayuga*, No. 5:20-CV-1904088 (MAD/TWD), 2020 WL 1904088, at *9 (N.D.N.Y. Apr. 17, 2020) (quoting, *inter alia*, *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d

9

Cir. 1994)).  This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial."  *Moye v. City of New York*, No. 11 Civ. 316 (PGG), 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, No. 00 CIV 3626 (SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000)).  Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

Similarly, judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff.  *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994); *see also Stump v. Sparkman*, 435 U.S. 349, 357 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.").  Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  This immunity applies to state court judges who are sued in federal court pursuant to § 1983.  *Pizzolato v. Baer*, 551 F. Supp. 355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983). The only two circumstances in which judicial immunity does not apply is when he or she takes

action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Accordingly, the Court recommends the amended complaint be dismissed as against DA Fitzpatrick and Judge Marks.

### 2.    Fourth Amendment False Arrest

The Court construes Plaintiff's amended complaint as alleging a § 1983 claim for false arrest in violation of his Fourth Amendment rights. The elements of a false arrest claim under the Fourth Amendment, which are essentially the same as a state law false arrest claim, are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (citation and quotation marks omitted). "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

As a threshold matter, only those events occurring pre-arraignment are properly considered part of Plaintiff's false arrest claim, as opposed to his malicious prosecution claim, discussed below. As explained by the Supreme Court, a false arrest claim "consists of detention without legal process . . . ." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). As a result, the false arrest ends once the [arrestee] is arraigned and subject to legal process, and thereafter any claim of unlawful detention forms part of the entirely separate tort of malicious prosecution. *Id*. at 389-390. "If there is a false arrest claim, damages for that claim cover the time for detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Id*. at 390 (citation omitted).

Here, the amended complaint alleges that Gagne and Root arrested Plaintiff without the privilege to do so because Plaintiff had not committed any crime.  Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court recommends that Gagne and Root be required to respond to Plaintiff's Fourth Amendment false arrest claim.[3]  The Court expresses no opinion on whether this claim can withstand a dispositive motion.

### 3.    Fourth Amendment Malicious Prosecution

The Court construes Plaintiff's amended complaint alleging a § 1983 claim for malicious prosecution in violation of his Fourth Amendment rights.  The elements of a malicious prosecution claim are "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983) (internal quotation marks omitted)). "In addition, the Second Circuit requires that a plaintiff demonstrate that there was a 'post arraignment seizure,' since a § 1983 malicious prosecution claim is 'grounded ultimately

---

[3]  Rule 10(a) of the Federal Rules provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a).  A party not named in the caption of the complaint is not a party to the action. *Abbas v. United States*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").  "If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case." *Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007).  In this instance, while Plaintiff claims John Doe 1 and John Doe 2 were "arresting officers," *see* Dkt. No. 11 at 4-5, the aforementioned unidentified individuals are not identified as defendants in the caption of the complaint or the list of parties. *See id*. at 1-2.  Thus, the Court will not construe the amended complaint to include any claims or causes of action against the Doe Defendants.  For the same reason, the Court will not construe the amended complaint to include any claims or cause of actions against other private individuals referenced in the body of the complaint, including but not limited to, assistant district attorneys, private attorneys, and state judges as they are not identified as defendants in the caption of the amended complaint or list of parties.

on the Fourth Amendment's prohibition of unreasonable seizures.'"  *Hawthorne v. City of Albany*, No. 1:17-CV-00716 (GTS/TWD), 2017 WL 3822112, at *6 (N.D.N.Y. July 25, 2017) (quoting *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013)), *report and recommendation adopted sub nom. Hawthorne v. Ruecker*, 2017 WL 4351520 (N.D.N.Y. Oct. 2, 2017).

Plaintiff has alleged that on December 5, 2016, he was arrested and charged with possession of a forged instrument in the second degree "on Gagne's felony complaint."  (Dkt. No. 11 at 4, 7.)  Plaintiff contends that the charge was dismissed on January 23, 2018, indicating not only a favorable termination for Plaintiff, but also a post-arraignment seizure.  *Id.* at 13; *see Savino*, 331 F.3d at 72; *Hawthorne*, 2017 WL 3822112, at *6.  Moreover, Plaintiff contends he did not commit the charged crime and was deemed a "trouble maker" at the DMV, suggesting a lack of probable cause and malice.  (Dkt. No. 11 at  8, 10, 14.)

Accordingly, at this early stage, Plaintiff sufficiently sets forth a plausible malicious prosecution claim, and it is recommended that Plaintiff's claim be permitted to proceed against Gagne.  *See Hawthorne*, 2017 WL 3822112, at *1, 6 (allowing malicious prosecution claim to proceed against the police officer defendants); *Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) ("[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or when she withholds relevant and material information.").  The Court expresses opinion on whether this claim can withstand a dispositive motion.

### 4.      First Amendment Retaliation

The Court construes Plaintiff amended complaint as attempting to plead a First Amendment retaliatory arrest claim against Gagne.  (Dkt. No. 11 at 14.)  "To prevail on a First Amendment theory of retaliatory arrest, [Plaintiff] must prove that (1) he has an interest

protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendant' actions effectively chilled the exercise of his First Amendment right." *Malloy v. Sopchak*, No. 1:18-CV-1460 (BKS/DJS), 2019 WL 1024354, at *4 (N.D.N.Y. Jan. 28, 2019) (citation and quotation marks omitted), *report and recommendation adopted*, 2019 WL 1025765 (N.D.N.Y. Mar. 4, 2019). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Although Plaintiff appears to suggest that he was "singled out for retaliation because of a complaint [he] lodged with State Assemblyman Sam Roberts' office in 2012 seeking redress for some questionable practices of a certain DMV investigator (Michael Santalucia)," Dkt. No. 11 at 14, the amended complaint contains no facts whatsoever to suggest there is any causal connection between the alleged misconduct of Gagne, the arrest at issue, and the complaint Plaintiff lodged four years before against another individual. *See Hare v. Hayden*, No. 09 CIV. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.")); *Quick v. Minale*, No. 9:16-CV-0807 (BKS/DJS), 2016 WL 6124495, at *7 (N.D.N.Y. Oct. 20, 2016) (finding alleged retaliatory actions that occurred at least two years and up to four years after the protected conduct dismissed any suggestion of a causal connection); *see also Spavone v. Fischer*, No. 10 CIV. 9427, 2012 WL 360289, at *5 (S.D.N.Y. Feb. 3, 2012) (finding fifteen months inadequate to establish a causal connection through temporal proximity).

Moreover, there is no indication that Plaintiff's speech was "actually chilled." *Cabrera v. City of New York*, No. 16-CV-2298 (RRM/RER), 2018 WL 4636798, at *8 (E.D.N.Y. Sept. 27, 2018) (quoting *Curely of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("Where a party can show no

change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."); *see also Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (affirming dismissal of complaint which failed to allege that speech was "actually chilled" as a result of defendant's actions).

Accordingly, the Court recommends dismissing First Amendment retaliation claim for failure to state a claim upon which relief may be granted.

### 5. Conspiracy

Liberally construed, Plaintiff alleges Furlong, Gagne, and unknown others at the Syracuse Regional Office of the New York Department of Motor Vehicles conspired against him. (Dkt. No. 11 at 14.) "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).

Here, Plaintiff states in conclusory fashion that "the original counterfeit inspection sticker felony charge was the actual fruit of a nefarious conspiracy to violate [his] civil rights," Dkt. No. 11 at 14, but he failed to plead any agreement between two or more state actors, or how defendants acted in concert to allegedly falsely arrest and/or maliciously prosecute him. Wholly conclusory claims of conspiracy are properly dismissed *sua sponte* on initial review. *See Johnson v. Goord*, 12 F. App'x 22, 23 (2d Cir. 2000); *Delaney v. City of Albany*, No. 1:18-CV-1193 (DNH/CFH), 2019 WL 2537312, at *5 (N.D.N.Y. June 20, 2019) (dismissal on initial review of wholly conclusory conspiracy claim), *report and recommendation adopted*, 2019 WL 3454618 (N.D.N.Y. July 31, 2019).

Accordingly, the Court recommends dismissing Plaintiff's conspiracy claim for failure to state a claim upon which relief may be granted.

### 6.    Fifth Amendment

The amended complaint references the Fifth Amendment.  (Dkt. No. 1 at 12, 16.)  The Fifth Amendment, however, applies to the United States government and federal employees, and not to the States.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (holding Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not state officials); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2009) (holding that any due process claim against the city was "properly brought under the Fourteenth Amendment, not the Fifth Amendment").

Because Plaintiff has not alleged any deprivation of his due process rights by the federal government or federal employees, the Court also recommends dismissal of any Fifth Amendment claim.

### 7.    Remaining Claims

While the amended complaint references the Sixth and Fourteenth Amendments, Dkt. No. 11 at 16, Plaintiff fails to state the basis for such claims under these provisions and/or fails to identify any individuals personally involved in the alleged constitutional violations.[4]

---

[4]  The Court notes, however, that to the extent Plaintiff's due process claim are premised on the same factual allegations underlying his Fourth Amendment claims of false arrest and malicious prosecution, any such due process claim would be dismissed as duplicative.  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim.") (internal quotation marks omitted).  Moreover, to the extent Plaintiff complains about "due process" violations as a result of the proceedings held by the city court judges, as discussed above, with minor exceptions, judges are entitled to absolute immunity.  *See* Part III.C.1.

Accordingly, the Court recommends dismissing the remaining claims for failure to state a claim upon which relief may be granted.

## III.    MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has been unsuccessful in his efforts to obtain *pro bono* counsel on his own. (Dkt. No. 12.)  Thus, the Court may properly consider Plaintiff's motion.  It is well-settled that there is no right to appointment of counsel in civil matters.  *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994).  28 U.S.C. § 1915(e)(1).  Title 28 of United States Code Section 1915 provides that a court may request an attorney to represent any person "unable to afford counsel."  28 U.S.C. § 1915(e)(1).  Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance.  *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997).  As the Second Circuit stated in *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986), the court "should first determine whether the indigent's position seems likely to be of substance."  802 F.2d at 61.  If the claim satisfies that threshold requirement, a number of factors must be carefully considered by the court in ruling upon such a motion.  Among these factors are:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge*, 802 F.2d at 61-62).  This is not to say that all, or indeed any, of these factors are controlling in a

particular case.  Rather, each case must be decided on its own facts.  *Velasquez v. O'Keefe*, 899

F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

At this early stage of the litigation, where the amended complaint has not yet been served

on the Defendants and they have not had the opportunity to respond to Plaintiff's allegations,

Plaintiff's motion for appointment of counsel is premature.

Moreover, even assuming, for purposes of this application only, that Plaintiff's position

seems likely to be of substance, the relevant factors weigh decidedly against granting Plaintiff's

application at this time.  For example: (1) the case does not present novel or complex issues; (2)

it appears as though, to date, Plaintiff has been able to effectively litigate this action; and (3) if

this case proceeds to trial, it is highly probable this Court will appoint pro bono trial counsel at

the final pretrial conference.  At this time, the Court is not aware of any special reason why

appointment of counsel would be more likely to lead to a just determination of this litigation.

Accordingly, Plaintiff's motion is denied.  (Dkt. No. 12.)  Plaintiff may only file another

motion for appointment of counsel in the event he can demonstrate that, in light of specific

changed circumstances, consideration of the above factors warrants granting the application.

Again, it is highly probable this Court will appoint *pro bono* trial counsel at the final pretrial

conference if this case proceeds to trial.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 11) be accepted for

filing; and it is further

**RECOMMENDED** that Plaintiff's Fourth Amendment false arrest claim against

Defendants Gagne and Root **SURVIVES** initial review and requires a response; and it is further

**RECOMMENDED** that Plaintiff's Fourth Amendment malicious prosecution claim against Defendant Gagne **SURVIVES** initial review and requires a response; and it is further

**RECOMMENDED** that the remaining claims be dismissed pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief can be granted and with leave to amend; and it is further

**RECOMMENDED** that the Clerk be directed to **TERMINATE** DA Fitzpatrick, Judge Marks, and Furlong as Defendants in this action; and is if further

**ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated:  July 21, 2021
        Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[5]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 20 of 119
Hudson v. Artuz, Not Reported in F.Supp.2d (1998)
1998 WL 832708

1998 WL 832708
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Theodore HUDSON, Plaintiff,

v.

Christopher ARTUZ, Warden Philip
Coombe, Commissioner Sergeant
Ambrosino Doctor Manion Defendants.

No. 95 CIV. 4768(JSR).
|
Nov. 30, 1998.

**Attorneys and Law Firms**

Mr. Theodore Hudson, Great Meadow Correctional Facility,
Comstock.

Alfred A. Delicata, Esq., Assistant Attorney General, New
York.

MEMORANDUM AND ORDER

BUCHWALD, Magistrate J.

**\*1** Plaintiff Theodore Hudson filed this *pro se* action
pursuant to 42 U.S.C. § 1983 on April 26, 1995. Plaintiff's
complaint alleges defendants violated his constitutional rights
while he was an inmate at Green Haven Correctional
Facility. [1] Plaintiff's complaint was dismissed *sua sponte* by
Judge Thomas P. Griesa on June 26, 1995 pursuant to 28
U.S.C. § 1915(d). On September 26, 1995, the Second Circuit
Court of Appeals vacated the judgment and remanded the case
to the district court for further proceedings.

[1]    Plaintiff is presently incarcerated at Sullivan
       Correctional Facility.

The case was reassigned to Judge Barbara S. Jones on
January 31, 1996. Defendants moved to dismiss the complaint
pursuant to Fed.R.Civ.P. 12(c) on November 25, 1996.
Thereafter, the case was reassigned to Judge Jed S. Rakoff
on February 26, 1997. On February 26, 1998, Judge Rakoff
granted defendants' motion to dismiss, but vacated the
judgment on April 10, 1998 in response to plaintiff's motion
for reconsideration in which plaintiff claimed that he never
received defendants' motion to dismiss.

By Judge Rakoff's Order dated April 14, 1998, this case was
referred to me for general pretrial purposes and for a Report
and Recommendation on any dispositive motion. Presently
pending is defendants' renewed motion to dismiss. Plaintiff
filed a reply on July 6, 1998. For the reasons discussed
below, plaintiff's complaint is dismissed without prejudice,
and plaintiff is granted leave to replead within thirty (30) days
of the date of the entry of this order.

FACTS

Plaintiff alleges that he was assaulted by four inmates in the
Green Haven Correctional Facility mess hall on March 14,
1995. (Complaint at 4.) He alleges that he was struck with
a pipe and a fork while in the "pop room" between 6:00
p.m. and 6:30 p.m. (Complaint at 4–5.) Plaintiff contends
that the attack left him with 11 stitches in his head, chronic
headaches, nightmares, and pain in his arm, shoulder, and
back. (*Id.*) Plaintiff also states that Sergeant Ambrosino
"failed to secure [the] area and separate" him from his
attackers. (Reply at 5.) Plaintiff's claim against Warden Artuz
is that he "fail [sic] to qualify as warden." (Complaint at
4.) Plaintiff names Commissioner Coombes as a defendant,
alleging Coombes "fail [sic] to appoint a qualified warden
over security." (Amended Complaint at 5.) Plaintiff further
alleges that Dr. Manion refused to give him pain medication.
(Complaint at 5.) Plaintiff seeks to "prevent violent crimes"
and demands $6,000,000 in damages. (Amended Complaint
at 5.)

Defendants moved to dismiss the complaint, arguing that: (1)
the Eleventh Amendment bars suit against state defendants
for money damages; (2) the plaintiff's allegations fail to state
a claim for a constitutional violation; (3) the defendants are
qualifiedly immune from damages; and (4) plaintiff must
exhaust his administrative remedies before bringing this suit.

DISCUSSION

I find that plaintiff's complaint runs afoul of Rules 8 and
10 of the Federal Rules of Civil Procedure and dismiss the
complaint without prejudice and with leave to amend. Federal
Rule 8 requires that a complaint contain "a short and plain
statement of the claim showing that the pleader is entitled to
relief." Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to
give fair notice of the claim being asserted so as to permit the

1998 WL 832708

adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977)); *see Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (stating that the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").

**\*2** Rule 10 of the Federal Rules of Civil Procedure requires, *inter alia,* that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. *Moore's Federal Practice,* Vol. 2A, ¶ 10.03 (1996). Rule 10 also requires that each claim upon which plaintiff seeks relief be founded upon a separate transaction or occurrence. *Id.*[2] The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading." *Sandler v. Capanna,* 92 Civ. 4838, 1992 WL 392597, \*3 (E.D.Pa. Dec.17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1323 at 735 (1990)).

[2]   Rule 10 states:

(b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

A complaint that fails to comply with these pleading rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of" a plaintiff's claims. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996). It may therefore be dismissed by the court. *Id.; see also Salahuddin v. Cuomo,* 861 F.2d at 42 ("When a complaint does not comply with the requirement that it be short and plain, the court has the power to, on its own initiative, ... dismiss the complaint"). Dismissal, however, is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible

that its true substance, if any, is well disguised." *Id.* In those cases in which the court dismisses a *pro se* complaint for failure to comply with Rule 8, it should give the plaintiff leave to amend when the complaint states a claim that is on its face nonfrivolous. *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995).

In determining whether a nonfrivolous claim is stated, the complaint's allegations are taken as true, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint of a *pro se* litigant is to be liberally construed in his favor when determining whether he has stated a meritorious claim. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even if it is difficult to determine the actual substance of the plaintiff's complaint, outright dismissal without leave to amend the complaint is generally disfavored as an abuse of discretion. *See Salahuddin,* 861 F.2d at 42–42; *see also Doe v. City of New York,* No. 97 Civ. 420, 1997 WL 124214, at \*2 (E.D.N.Y. Mar.12, 1997).

Here, plaintiff's *pro se* complaint fails to satisfy the requirements of Federal Rules 8 and 10. The complaint is often illegible and largely incomprehensible, scattering what appear to be allegations specific to plaintiff within a forest of headnotes copied from prior opinions. Defendants have answered with a boilerplate brief, which is perhaps all a defendant can do when faced with such a complaint. The Court is left with an insurmountable burden in attempting to make a reasoned ruling on such muddled pleadings.

**\*3**   Although plaintiff's complaint is substantially incomprehensible, it appears to plead at least some claims that cannot be termed frivolous on their face. For example, plaintiff clearly alleges that inmates assaulted him and that Dr. Manion refused to provide him medical attention. He also appears to assert that Sergeant Ambrosino failed to protect him from the attack or take steps to prevent future attacks. (Plaintiff's Reply at 5). It is well established that an inmate's constitutional rights are violated when prison officials act with deliberate indifference to his safety or with intent to cause him harm. *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991). It is similarly well established that an inmate's constitutional rights are violated when a prison doctor denies his request for medical care with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble,* 429

U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Although plaintiff provides few facts to support his allegations, I disagree with defendants' assertion that outright dismissal is appropriate because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Defendant's Memorandum at 5 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because plaintiff's complaint does not comply with Rules 8 and 10, it is hereby dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order. In drafting his second amended complaint, plaintiff is directed to number each paragraph and order the paragraphs chronologically, so that each incident in which he alleges a constitutional violation is described in the order that it occurred. Plaintiff is also directed to specifically describe the actions of each defendant that caused plaintiff harm, and to do so in separate paragraphs for each defendant. Plaintiff's complaint shall contain the facts specific to the incidents plaintiff alleges occurred, and not any facts relating to any case that has been decided previously by a court of law. Plaintiff's complaint shall also contain a clear statement of the relief he seeks in addition to monetary damages.

CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 832708

---

End of Document                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady
County Jail; Cheryl Clark, M.D.;
Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.


***DECISION and ORDER***

LAWRENCE E. KAHN, U.S. District Judge.

 **\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

 **\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

2007 WL 607341

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order. [1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1]    Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5425501
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Eileen CASINO, Plaintiff,
v.
" 'Mr R. ROHL' or 'John Doe' Owner/Administrator
of Woodhaven Nursing Home," Defendant.

No. 14–CV–2175 (SJF)(GRB).
|
Signed Oct. 23, 2014.

**Attorneys and Law Firms**

Eileen Casino, South Haven, NY, pro se.

**ORDER**

FEUERSTEIN, District Judge.

**\*1** On April 3, 2014, *pro se* plaintiff Eileen Casino ("plaintiff") [1] filed a fourth *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") challenging the quality of care Donato J. Casino allegedly received at, *inter alia,* Woodhaven Nursing Home ("Woodhaven"), [2] accompanied by an application to proceed *in forma pauperis.* On May 30, 2014, plaintiff filed an amended complaint pursuant to Section 1983 against ' "MR. R. ROHL' or 'JOHN DOE' Owner/Administrator of Woodhaven Nursing Home" ("defendant").

[1]    Although the caption of the complaint indicates that plaintiff is also asserting claims on behalf of her "children and grandchild," "[a] person who has not been admitted to the practice of law may not represent anybody other than himself." *Guest v. Hansen,* 603 F.3d 15, 20 (2d Cir.2010); *see* 28 U.S.C. § 1654. Accordingly any claims asserted by plaintiff on behalf of her children and grandchild are dismissed without prejudice.

[2]    As set forth below, each of plaintiff's earlier cases were *sua sponte* dismissed.

Since plaintiff's financial status, as set forth in her declaration in support of her application to proceed *in forma pauperis,*

qualifies her to commence this action without prepayment of the filing fees, *see* 28 U.S.C. § 1915(a)(1), her application to proceed *in forma pauperis* is granted. However, for the reasons set forth below, the amended complaint is *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief.

**I. Background**

A. Prior Litigation

1. The First Casino Action
On September 11, 2013, plaintiff filed in this Court, *inter alia,* a complaint pursuant to Section 1983 against Brian Cassidy ("Cassidy") and "Mr, Rohl, as owner/admin," [3] among others, alleging violations of Mr. Casino's civil rights relating to his treatment and care in an unidentified nursing home and to court proceedings in which Cassidy acted as his law guardian, which was assigned docket number 13–CV–5095 ("the first action"). By Order dated November 8, 2013, *inter alia:* (1) plaintiff's claims in the first action were *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) for lack of standing and failure to state a claim for relief; and (2) Mr. Casino's claims in the first action were *sua sponte* dismissed without prejudice on the basis that plaintiff, who is not an attorney, could not assert *pro se* claims on his behalf.

[3]    In her application to proceed *in forma pauperis* in this action, plaintiff identifies Mr. Rohl as the "owner/administrator" of Woodhaven. (Application to Proceed *In Forma Pauperis* ["IFP Applic."] at 1).

2. The Second Complaint
On October 28, 2013, plaintiff filed another complaint in this court pursuant to Section 1983 against "Stonybrook [sic] University Medical Center" ("Stony Brook"), Cassidy and Woodhaven alleging, *inter alia,* that those defendants were "not always acting in the best interest of [Mr.] Casino or his family or according to all our wishes" and "unfair competition for family time with my husband" (Compl. under docket number 13–6357 at 1–2), which was assigned docket number 13–CV–6357 ("the second action"). By Order dated January 27, 2014, *inter alia:* (1) plaintiff's claims against Stony Brook were *sua sponte* dismissed for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure; (2) plaintiff's Section 1983 claims

against Woodhaven and Cassidy were *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief; and any state law claims were dismissed without prejudice pursuant to 28 U.S.C. § 1367.

3. The Third Complaint

**\*2** On or about January 22, 2014, plaintiff filed a third complaint ("the third action") pursuant to Section 1983 on behalf of herself and Mr. Casino against Stony Brook, Cassidy, Woodmere Nursing Home ("Woodmere") and the New York State Mental Health Court ("the State Court") alleging, *inter alia*, that those defendants' actions concerning Mr. Casino's care were "against [the] best interest[s] & wish[es] of p[atien]t & [his] family resulting in setbacks of health at Stonybrook [sic] Hospital" (Compl. under docket number 14–CV–00629 at ¶ III), which was assigned docket number 14–CV–00629 ("the third action"). By Order dated April 10, 2014, *inter alia*: (1) plaintiff's claims against Stony Brook and the State Court were *sua sponte* dismissed pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction; (2) plaintiff's Section 1983 claims against Woodmere and Cassidy were *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief; (3) any state law claims were dismissed without prejudice pursuant to 28 U.S.C. § 1367; and (4) Mr. Casino's claims were *sua sponte* dismissed without prejudice because plaintiff, who is not an attorney, could not assert *pro se* claims on his behalf.

B. The Instant Complaint [4]

[4]   All material allegations in the Complaint are assumed to be true for the purposes of this order, *see, e.g. Rogers v. City of Troy, N.Y.,* 148 F.3d 52, 58 (2d Cir.1998) (in reviewing a *pro se* complaint for *sua sponte* dismissal, a court is required to accept the material allegations in the complaint as true), and do not constitute findings of fact by the Court.

Since the original complaint filed by plaintiff was not signed, the Court's *pro se* office sent plaintiff a Notice of Deficiency ("Notice") on May 14, 2014, informing her that she must file a signed complaint within fourteen (14) days from the date of the Notice in order to proceed with this case. [See Docket Entry No. 5]. On May 30, 2014, plaintiff filed a signed amended complaint against defendant alleging that the "right to life[,] liberty[,] happiness guarantee [sic] in Constitution of USA was denied [and] there is now wrongful death of Donato Casino caused by criminal negligence [and] human rights

abuses." (Amended Complaint ["Am. Compl."], ¶ II(B)) (case converted to lowercase).

The following is plaintiff's statement of her claims against defendant in the amended complaint, which she alleges occurred "[b]etween June of 2013–Sept 10 of 2013," (Am.Compl., ¶ III(A));

"At all visits from myself I found Dan in a dark room, no company, no radio or tv turned on, on his back, no care given yet that day incl. no diaper change or feeding or fluid/ice [indecipherable] Approx. 2 visits or more per [week]. Approx. 2 [weeks] per [month]. Actually Dan on their premises....

[ ] No ability or available call bell[.]

[ ] 'Sterile['] dressing table filthy at each visit[.]

[ ] 'Sterile' dressing to be used left on table unattended, open to dirty air for who knows how long w/ointments on them open to air[ .]

5 different hosp. stays-only they sent him later rather than in timely fashion. Also-last hosp. stay at Stony Brook Hosp. was 5 months from Sept–2013 to end of Jan/Feb '14[,] which consisted of health crisis after health crisis requiring heroic means to save Dan's life during that 5 mos. After [transfer] to new home in Nassau Co. Dan was never the same-responsive, but min. interactive–1 more stay at Franklin Hosp. (2–3 wk) back to Woodmere-then final stay at S. Nassau Hosp. Dan did not get his last wish for me to be by his side in his last hour because of location. I arr[ived] at Nassau after (Cassidy) (law guardian) approved a DNR.

**\*3**   At Nassau Hosp.–3 handwritten pps. of meds scheduled on 1 shift shown to me[.] Feeding at 30 ml. (only 1/3 what they [brought] him up to at Franklin (90 ml) still insufficient for his frame[.] )

I *saw* 5 dark spots (large) on Doplar in his stomach-they were ulcers, yet hosp. claims they could not determine cause of bleeding or infection. Nassau continued use of Tylenol, though Franklin had said they would not use it-contraindicated by a condition Dan had.

Woodmere had Dan off [of] ventilator, IV P/C Line, feeding & hydration at 2 visits and failed [indecipherable] to hosp[.]"

(Am.Compl.¶¶ III–IV) (emphasis in original; case converted).

Plaintiff seeks, *inter alia,* compensatory damages in the amount of "½ a million dollars."

(Am.Compl.¶ V) (case converted).

## II. Discussion

### A. Standard of Review

Under the *in forma pauperis* statute, 28 U.S.C. § 1915(e) (2) (B), a district court must dismiss a complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

It is axiomatic that district courts are required to read *pro se* complaints liberally, *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *Hogan v. Fischer,* 738 F.3d 509, 515 (2d Cir.2013), and to construe them "to raise the strongest arguments that they suggest." *Gerstenbluth v. Credit Suisse Securities (USA) LLC,* 728 F.3d 139, 142–43 (2d Cir.2013) (quotations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." *Harrington v. Cnty. of Suffolk,* 607 F.3d 31, 33 (2d Cir.2010); *see also Ashcroft v. Iqbal* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Nevertheless, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868; *see also In re Amaranth Natural Gas Commodities Litig.,* 730 F.3d 170, 180 (2d Cir.2013).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955, 167

L.Ed.2d 929); *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 717 (2d Cir.2013) (accord). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. 544, 127 S.Ct. at 1959, 167 L.Ed.2d 929.

### B. Section 1983

**\*4** Section 1983 of Tile 42 of the United States Code provides, in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...."

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia,* ––– U.S. ––––, 132 S.Ct. 1657, 1661, 182 L.Ed.2d 662 (2012). Thus, to state a Section 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)); *see also Rehberg v. Paulk,* ––– U.S. ––––, 132 S.Ct. 1497, 1501–02, 182 L.Ed.2d 593 (2012).

Although Section 1983 liability may only be imposed upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it," *Nat'l Collegiate Athletic Ass'n. v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988) (quotations and citation omitted); *see also Hafer v. Melo,* 502 U.S. 21, 28, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("Congress enacted § 1983 to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their

authority or misuse it." (quotations and citations omitted)), "[a] private actor may be liable under § 1983 * * * if there is a sufficiently close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Sykes v. Bank of Am.,* 723 F.3d 399, 406 (2d Cir.2013) (quotations, internal quotations and citations omitted); *see also Fabrikant v. French,* 691 F.3d 193, 206–07 (2d Cir.2012) ("Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action. * * * [T]here must be such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complains." (quotations, alterations, emphasis and citations omitted). "Anyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983." *Filarsky,* 132 S.Ct. at 1661 (quotations and citation omitted); *see also Fabrikant,* 691 F.3d at 207 ("The fundamental question * * * is whether the private entity's challenged actions are 'fairly attributable' to the state." (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982))). "Three main tests have emerged:

> **\*5** For the purposes of section 1983, the actions of a nominally private entity are attributable to the state ... (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test')."

*Fabrikant,* 691 F.3d at 207 (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (alteration in original)).

Defendant, as the owner or administrator of Woodhaven, a private nursing home, was not acting "under color of state

law" for purposes of Section 1983 with respect to the conduct alleged in the amended complaint. *White v. St. Joseph's Hosp.,* 369 F. App'x 225, 226 (2d Cir. Mar.10, 2010) (summary order) ("[P]rivate actors and institutions, such as the * * * nursing home * * * are generally not proper Section 1983 defendants because they do not act under color of state law. * * * [T]he presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action."); *Baum v. Northern Dutchess Hosp.,* 764 F.Supp.2d 410, 430–33 (N.D.N.Y.2011) (dismissing Section 1983 claims against private nursing home because it is not a state actor); *Mitchell v. Home,* 377 F.Supp.2d 361, 370 (S.D.N.Y.2005) (accord).

Moreover, in order to state a claim for relief under Section 1983, a plaintiff must allege the personal involvement of the defendant in the purported constitutional deprivation. *Spavone v. New York State Dep't of Corr. Servs.,* 719 F.3d 127, 135 (2d Cir.2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation and quotation marks omitted)); *Grullon v. City of New Haven.* 720 F.3d 133, 138–39 (2d Cir.2013). "Personal involvement" may be established by evidence of direct participation by a supervisor in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of New York,* 352 F.3d 733, 753 (2d Cir.2003); see also *Grullon,* 720 F.3d at 139. "An individual cannot be held liable for damages under Section 1983 'merely because he held a high position of authority'...." *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 127 (2d Cir.2004) (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. See *Costello v. City of Burlington,* 632 F.3d 41, 48–49 (2d Cir.2011).

**\*6** Since, *inter alia,* defendant is nowhere mentioned or referenced in the body of the amended complaint, plaintiff has not adequately pled his personal involvement in any of the constitutional deprivations alleged in the amended complaint. Accordingly, plaintiff's Section 1983 claims are dismissed

2014 WL 5425501

pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) for failure to state a claim for relief.


1. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Although, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002) (quotations and citation omitted), leave to amend is not required, *inter alia,* where a proposed amendment would be futile. *See Grullon,* 720 F.3d at 140; *Anderson News, L.L.C. v. American Media, Inc.,* 680 F.3d 162, 185 (2d Cir.2012), *cert. denied sub nom Curtis Circulation Co. v. Anderson News, L.L.C.,* —— U.S. ——, 133 S.Ct. 846, 184 L.Ed.2d 655 (2013). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners. Inc. v. Ikanos Commc'ns, Inc.,* 681 F.3d 114, 119 (2d Cir.2012).

Since, *inter alia,* even a liberal reading of the amended complaint does not give any indication that plaintiff can state a plausible federal claim against defendant, and this is plaintiff's fourth unsuccessful attempt to litigate essentially the same claims, any amendment to the amended complaint to replead the Section 1983 claims against defendant would be futile. Accordingly, plaintiff's Section 1983 claims against defendant are dismissed with prejudice.


C. Supplemental Jurisdiction

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, *see Wisconsin Dep't of Corr. v. Schacht,* 524 U.S. 381, 391–92, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998), a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U .S.C. § 1367(c)(3). *See Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 129 S.Ct. 1862, 1866–1867, 173 L.Ed.2d 843 (2009) (holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary); *Lundy v. Catholic Health Svs. of Long Island Inc.,* 711 F.3d 106, 117 (2d Cir.2013) ("The exercise of supplemental jurisdiction is within the sound discretion of the district court."). The court must "consider and weigh in each case, and at every stage of

the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent state law claims. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *see also Lundy,* 711 F.3d at 117–18 (accord). Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. *See Cohill,* 484 U.S. at 350 n. 7; *Lundy,* 711 F.3d at 118 ("Once all federal claims have been dismissed, the balance of factors will usually point toward a declination."); *Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 170 (2d Cir.2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (quotations and citation omitted)).

**\*7** In light of the dismissal of all federal claims in this action prior to service of a summons and the amended complaint upon defendant, and upon consideration of all relevant factors, i.e., judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over any remaining state law claims in this action. Accordingly, to the extent the amended complaint asserts any state law claims, those claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff is advised that pursuant to 28 U.S.C. § 1367(d), the statute of limitations for any state law claims, to the extent those claims were timely filed in this Court, is tolled for a period of **thirty (30) days after the date of this order,** unless a longer tolling period is otherwise provided under state law.


D. Filing Injunction

Under the All Writs Act, district courts are empowered to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The All Writs Act grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." *MLE Realty Assocs. v. Handler,* 192 F.3d 259, 261 (2d Cir.1999); *see also Matter of Hartford Textile Corp.,* 613 F.2d 388, 390 (2d Cir.1979) (holding that the All Writs Act "grant[s] the district court power sua sponte to enjoin further filings in support of frivolous and vexatious claims.") "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh,* 229 F.3d 121, 123 (2d Cir.2000) (quotations

2014 WL 5425501

and citation omitted); *see also Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." (quotations and citations omitted)); *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986) ("A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." (quoting *Abdullah v. Gatto.* 773 F.2d 487, 488 (2d Cir.1985) (*per curiam* )).

"The filing of repetitive and frivolous suits constitutes the type of abuse [of the judicial process] for which an injunction forbidding further litigation may be an appropriate sanction." *Shafii v. British Airways, PLC,* 83 F.3d 566, 571 (2d Cir.1996); *see also Lau,* 229 F.3d at 123 ("The issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings." (quotations, alterations and citations omitted)). The following factors should be considered in determining whether to restrict a litigant's future access to the courts:

> **\*8** "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.,* does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigation has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties."

*Safir,* 792 F.2d at 24; *see also Iwachiw v. New York State Dep't of Motor Vehicles,* 396 F.3d 525, 528 (2d Cir.2005) (accord). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir.* 792 F.2d at 24.

The court must first provide a litigant with notice and an opportunity to be heard before imposing a filing injunction, *see Lau,* 229 F.3d at 123; *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) (*per curiam),* and the filing injunction must be narrowly tailored so as to preserve the litigant's right of access to the court, *see Bd. of Managers of 2900 Ocean Ave. Condo. v. Bronkovic,* 83 F.3d 44, 45 (2d Cir.1996) (holding that filing injunctions "must be appropriately narrow."); *e.g. SBC 2010–1, LLC v. Morton,* 552 F. App'x 9, 12–13 (2d Cir. Dec.18, 2013) (summary order) (affirming the district court's issuance of a filing injunction on the basis, *inter alia,* that it was "narrowly crafted"); *Malcolm v. Bd. of Educ. of Honeoye Falls–Lima Cent. Sch. Dist.,* 506 F. App'x 65, 70 (2d Cir. Dec.26, 2012) (summary order) (accord).

This lawsuit is plaintiff's fourth unsuccessful attempt in this Court to litigate essentially the same claims regarding the treatment and care of Mr. Casino since September 2013. Given the court's "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel," *Lau,* 229 F.3d at 123, ***plaintiff is warned that similar, future actions will not be tolerated.*** If plaintiff persists in filing actions asserting claims previously asserted and dismissed by this Court with prejudice or for lack of subject matter jurisdiction, the Court will issue an order to show cause why she should not be required to seek leave of this Court before filing any future actions in this Court.

Finally, plaintiff is cautioned that Rule 11 of the Federal Rule of Civil Procedure applies to *pro se* litigants, *see Maduakolam v. Columbia Univ.,* 866 F.2d 53, 56 (2d Cir.1989) ("Rule 11 applies both to represented and *pro se* litigants \* \* \*."); *e.g., Ginther v. Provident Life and Cas. Ins. Co.,* 350 F. App'x 494, 496 (2d Cir.2009) (affirming a district court's imposition of Rule 11 sanctions against a *pro se* litigant), and that should she file another frivolous action, it is within the Court's authority to consider imposing sanctions upon her. *See* Fed.R.Civ.P. 11. [5]

[5]     This Court's April 10, 2014 order in the third action also warned plaintiff that the Court is considering issuing an order to show cause why a filing injunction should not be imposed upon her and imposing sanctions upon her pursuant to Rule 11 of the Federal Rules of Civil Procedure based upon her filing of repetitive and frivolous lawsuits.

However, this action was commenced one (1) week before the Court issued the April 10, 2014 order.

### III. Conclusion

**\*9** For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* is granted; plaintiff's Section 1983 claims against defendant are *sua sponte* dismissed in their entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) for failure to state a claim for relief; any state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3); and any claims asserted by plaintiff on behalf of her children and grandchild are dismissed without prejudice. ***Plaintiff is warned that her repetitive filing of actions in this Court asserting similar claims relating to the care and treatment of Mr. Donato will not be tolerated.*** If plaintiff persists in filing actions asserting claims previously asserted and dismissed by this Court with prejudice or for lack of subject matter jurisdiction, the Court: (1) ***will issue an order to show cause why she should not be required to seek leave of this Court before filing any future actions in this Court relating to the care and treatment of Mr. Donato;*** and (2)

will consider imposing sanctions upon her pursuant to Rule 11 of the Federal Rules of Civil Procedure.

The Clerk of the Court shall close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this Order upon all parties as provided in Rule 5(b) of the Federal Rules of Civil Procedure and record such service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5425501

---

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1904088
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael JOYNER, Plaintiff,

v.

COUNTY OF CAYUGA; Cayuga County Sheriff's
Department; City of Auburn; Shawn I. Butler, Chief
of Auburn Police Department, as an Individual
and in his official capacity; Cayuga County
District Attorney's Office; Jon E. Budelmann,
as an Individual and in his capacity as District
Attorney for Cayuga County; and Anthony
Spinelli, as an Individual and in his capacity
as an Auburn City Police Officer, Defendants.

5:20-CV-60 (MAD/TWD)
|
Signed 04/17/2020

**Attorneys and Law Firms**

OF COUNSEL: JARROD W. SMITH, ESQ., OFFICE OF
JARROD W. SMITH, 11 South Main Street, P.O. Box 173,
Jordan, New York 13080, Attorneys for Plaintiff.

OF COUNSEL: JEFFREY R. PARRY, ESQ., OFFICE OF
JEFFREY R. PARRY, 7030 East Genesee Street, Fayetteville,
New York 13066, Attorneys for Plaintiff.

OF COUNSEL: FRANK W. MILLER, ESQ., GIANCARLO
FACCIPONTE, ESQ., OFFICE OF FRANK W. MILLER,
6575 Kirkville Road, East Syracuse, New York 13057,
Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge:

**I. INTRODUCTION**

 *1  On or about February 18, 2020, Plaintiff filed a complaint
against Defendants City of Auburn, Shawn L. Butler, County
of Cayuga, Cayuga County District Attorney's Office, Jon
E. Budelmann, and Anthony Spinelli, asserting eight claims
pursuant to 42 U.S.C. §§ 1983 and 1988, and state law.
See Dkt. No. 5. Specifically, Plaintiff's complaint alleges the

following causes of action: (1) false arrest under the Fourth
and Fourteenth Amendments; (2) malicious prosecution
under the Fourth and Fourteenth Amendments; (3) negligent
failure to train or supervise; (4) state law false arrest; (5)
state law false imprisonment; (6) intentional and negligent
infliction of emotional distress under New York State law;
(7) negligence; and (8) deliberate indifference to medical care
under the Eighth Amendment. See Dkt. No. 5 at ¶¶ 40-114.
Currently before the Court is Defendants' motion to dismiss
the complaint in its entirety. See Dkt. No. 9.

**II. BACKGROUND**

According to the complaint, on August 10, 2018, Plaintiff
was the passenger in a vehicle that was driven by 140 Wall
Street, allegedly in violation of an order of protection for
Linda Fitzsimmons and Lee Joyner, who both reside at that
address. See Dkt. No. 5 at ¶¶ 24-25. Plaintiff resides at 145
Wall Street, several houses down from 140 Wall Street, on the
opposite side of the street. See id. at ¶ 25. Plaintiff was not the
driver of the vehicle and had no control over how the driver
was delivering him to his home. See id.

On August 13, 2018, Plaintiff was arraigned on two felony
complaints charging him with two counts of Criminal
Contempt in the First Degree based on the alleged violation of
the order of protection. See id. at ¶ 22. At the conclusion of his
arraignment, Plaintiff was remanded to the Cayuga County
Jail. See id. Plaintiff claims that "Defendant police officer
lacked the requisite requirement of having probable cause to
arrest the Plaintiff; and did falsely arrest and imprison the
Plaintiff." Id. at ¶ 23.

On October 4, 2018, Defendant Jon E. Budelmann, in his
capacity as Cayuga County District Attorney, presented
Plaintiff's charges to a grand jury, which "No Billed" the case.
See id. at ¶ 26. At this point, Plaintiff was released from
custody. See id.

During the fifty-three days during which Plaintiff "was being
illegally imprisoned," he slipped and fell at the Cayuga
County Jail. See id. at ¶ 31. According to Plaintiff, on August
31, 2018, a water pipe burst at the Cayuga County Jail near
Plaintiff's cell while he was already locked in for the night
and sleeping. See id. at ¶ 32. Plaintiff was woken by a
bursting water pipe that was turned off by a Cayuga County
Correctional officer. See id. at ¶ 33. "The first burst of the
water pipe [occurred] when the Cayuga County Correctional

officer shut the water off" between "12:00 midnight and 2:00 a.m." *Id.* at ¶ 34. "Plaintiff was woken by a bursting water pipe; and observed and heard that the correctional officer was going to turn off the water and clean up the water spill. At that time, there was no water in Plaintiff's cell." *Id.*

**\*2** Unbeknownst to Plaintiff, water from the burst pipe went underneath his locked cell door "and flooded his room while he was in bed and asleep." *Id.* at ¶ 35. "At around 6:30 am-7:00 am, Plaintiff got out of his bed to use the toilet in his cell. Plaintiff slipped and fell on the wet floor of his cell. The water on the floor was all near the toilet in his cell. There was a huge puddle of water between Plaintiff's bunk and the toilet in his cell." *Id.* at ¶ 36. Plaintiff claims that he slipped and fell, hitting his head and neck on his bunk, and his lower back on the floor, causing severe injuries. *See id.* at ¶ 37. At the time that Plaintiff had fallen and injured himself, a second water leak had occurred in the pod in which he was being held. *See id.* at ¶ 38. Plaintiff claims that, as a result of the fall, he suffered a herniated disc in his neck and a lower lumbar strain. *See id.* at ¶ 39. Plaintiff also claims that he suffers from numbing of his toes and finger tips. *See id.*

### III. DISCUSSION

**A. Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the

pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B. Documents Considered in Deciding Motion to Dismiss**

In their reply to the motion to dismiss, Defendants submitted several documents in further support of their motion. *See* Dkt. No. 16-1. These documents include (1) the August 10, 2018 criminal complaint charging Plaintiff with Criminal Contempt in the First Degree, (2) the order of protection that Plaintiff allegedly violated, (3) the affidavit of Linda Fitzsimmons that formed the basis for Defendant's underlying criminal charge, and (4) the incident narrative report of Defendant Spinelli dated August 15, 2018 relating to the criminal complaint filed against Plaintiff. *See id.* at 1-6.

**\*3** In deciding a motion to dismiss for failure to state a claim, the court considers the complaint, materials incorporated into the complaint by reference, materials integral to the complaint, and facts that are capable of judicial notice. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

In the present matter, the Court finds that these documents are not properly considered at the motion to dismiss stage. The Court acknowledges that there are cases in which courts have considered similar police records at the pleading stage. *See Betts v. Shearman*, No. 12-cv-3195, 2013 WL 311124, \*3 (S.D.N.Y. Jan. 24, 2013) (considering incident report and accusatory instrument that "provide[d] crucial details" about the plaintiff's prosecution), aff'd *on qualified immunity grounds*, 751 F.3d 78 (2d Cir. 2014); *cf. Obilo v. City Univ. of City of N.Y.*, No. 01-cv-5118, 2003 WL 1809471, \*4 (E.D.N.Y. Apr. 7, 2003) (considering incident report

2020 WL 1904088

and police complaint that the plaintiff had conceded were "implicitly" incorporated into his conspiracy allegations). The better view, however, adopted by a majority of courts in our Circuit, is that these kinds of police records are not "integral" to a false arrest complaint. *See Bejaoui v. City of New York*, No. 13-CV-5667, 2015 WL 1529633, *4–5 (E.D.N.Y. Mar. 31, 2015) (noting disagreement and declining to consider extrinsic police reports); *Alvarez v. Cty. of Orange*, 95 F. Supp. 3d 385, 394-95 (S.D.N.Y. 2015) (collecting cases). A document is not "integral" simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Most typically, "the incorporated document is a contract or other legal document containing obligations upon which the plaintiff's claim stands or falls, but which for some reason ... was not attached to the complaint." *Global Network Commc'ns*, 458 F.3d at 157. "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

Here, there is "no indication in the record that plaintiff relied on these documents in drafting the complaint." *Allyn v. Rockland Cty.*, No. 12-cv-5022, 2013 WL 4038602, *4 (S.D.N.Y. July 30, 2013), *affirmed*, 646 Fed. Appx. 60 (2d Cir. 2016). To the contrary, Plaintiff relies on his own perceptions and recollections, while only making passing reference to the criminal complaint and order of protection. Furthermore, it is not beyond dispute that the police report and narrative are a truthful description of the police officer's basis to arrest Plaintiff. To accept the truth of the documents offered by Defendants at this stage would amount to a premature determination that the arresting officers and the alleged victim are more credible than Plaintiff. To make such a determination at this stage would not be appropriate, and therefore the Court will not consider the facts adduced in these documents. The Court will, however, take judicial notice of the existence of the criminal complaint, supporting affidavit, and order of protection. *See Williams v. City of New York*, No. 14-cv-5123, 2015 WL 4461716, *1 (S.D.N.Y. July 21, 2015) (noting that the court "may take judicial notice of the procedural history of plaintiff's criminal case, but not of the truth of the arresting officers' version of events"); *see also Ribaudo v. Desimone*, No. 3:18-cv-1190, 2019 WL 1906269, *4 (M.D. Pa. Apr. 5, 2019) (holding that "even if judicial notice is taken of these documents, 'a court may take notice of such documents only

to establish their existence and legal effect, or to determine what statements they contained ... not for the truth of the matters asserted' ") (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014)) (other citation omitted).

### C. *Monell* and Supervisory Liability

**\*4** "Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a municipality can be held liable under [42 U.S.C. § 1983] if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Liability under Section 1983 "is imposed on the municipality [only] when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80. Thus, for a municipality to be held liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

"Supervisory liability is a concept distinct from municipal liability, and is 'imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates.' " *Kucera v. Tkac*, No. 5:12-cv-264, 2013 WL 1414441, *4 (D. Vt. Apr. 8, 2013) (quoting *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011)). Prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Circuit required a plaintiff to allege one of the following categories for supervisory liability under § 1983:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or

custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [persons] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In order to succeed on his *Monell* and supervisory liability claims, a plaintiff must first "identify obvious and severe deficiencies" in the policies of the municipal and supervisory defendants and "show a causal relationship" between those deficiencies and his alleged deprivations. *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007). However, to the extent that a plaintiff premises his claims on a failure to train or supervise, such failure "may constitute an official policy or custom [only] if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195. Similarly, a supervisory defendant is liable only for the creation or continuation of policy that leads to a pattern of unconstitutional conduct or if he demonstrated deliberate indifference in failing to act on information that a pattern of unconstitutional conduct was occurring. *See Colon*, 58 F.3d at 873.

"To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones*, 691 F.3d at 81.

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train [or supervise because] [w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen

a training program that will cause violations of constitutional rights.

**\*5** *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* at 61 (citation omitted). [1]

[1]    As discussed in more detail below, Plaintiff's complaint fails to set forth any facts sufficient to find either supervisory or municipal liability against any of the named Defendants for any of the listed causes of action.

### D. Cayuga County District Attorney's Office and Auburn Police Department

Plaintiff names the Cayuga County District Attorney's Office as a named Defendant in this case. The caselaw is clear, however, that a district attorney's office is not an entity subject to suit under 42 U.S.C. § 1983. *See Michels v. Greenwood Lake Police Dep't*, 387 F. Supp. 2d 361, 367 (S.D.N.Y. 2005) (citing cases); *Griffith v. Sadri*, No. 07-CV-4824, 2009 WL 2524961, *8 (E.D.N.Y. Aug. 14, 2009). Similarly, Plaintiff has listed the Auburn Police Department as an entity responsible for several of the alleged constitutional violations. *See* Dkt. No. 5 at ¶¶ 51-82. As with the District Attorney's Office, the Auburn Police Department (which is not listed as a Defendant in the caption of the complaint), the Court finds that it must be dismissed because a police department is not an independent, suable entity separate from the municipality in which the police department is located. *See Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007) (citation omitted); *Krug v. City of Rensselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing cases); *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 315 (S.D.N.Y. 2008) (citing cases).

Accordingly, the Court dismisses Plaintiff's claims against the Cayuga County District Attorney's Office and the Auburn Police Department.

### E. False Arrest

In their motion to dismiss, Defendants contend that, based on Plaintiff's own allegations, probable cause was present

to believe that he committed the offense for which he was arrested. *See* Dkt. No. 9-1 at 14-16. Defendants claim that Plaintiff "admits that he was charged with violating duly issued orders of protection issued for Linda Fitzsimmons and Lee Joyner, who reside at 140 Wall Street in the City of Auburn. *See id.* at 15 (citing Dkt. No. 5 at ¶ 24). Defendants further claim that Plaintiff "admits he was 'driven by' 140 Wall Street on August 10, 2018." *Id.* (citing Dkt. No. 5 at ¶ 25). Defendants contend that the fact that Plaintiff claims that he was not driving the vehicle "has no bearing on whether the order of protection was reasonably deemed violated by police authorities, and Plaintiff is careful not to deny that he was in fact at 140 Wall Street on the date in question, which is *a per se* violation of the order." *Id.* In response, Plaintiff argues that since he "was arrested for traveling on a public road in route to his own home and in violation of no Order, law or ordinance and, as it cannot be denied that he was 'no billed' by the Grand Jury, it would seem plausible to this writer that any court would agree to the plausibility of Plaintiff's claims." Dkt. No. 10 at 16.

**\*6** In assessing Fourth Amendment claims of false arrest brought under Section 1983, courts generally look to the law of the state in which the arrest is alleged to have occurred. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (citation omitted). To prevail on a false arrest claim under New York law, a plaintiff has to prove the following: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (alteration and internal quotation marks omitted) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (outlining the elements of false arrest claims). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.' " *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Ackerson*, 702 F.3d at 19-20 (citing *Weyant*, 101 F.3d at 852). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]' " *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (same). Such knowledge

or information can be based on information provided by an eyewitness, unless the circumstances would raise a doubt as to the eyewitness' veracity. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citing *Singer*, 63 F.3d at 119). The question is whether the facts known to the arresting officer, at the time of the arrest, objectively provided probable cause to support the arrest. *See Gonzalez*, 728 F.3d at 155.

In the present matter, the Court finds that Defendants' motion to dismiss Plaintiff's false arrest claim must be denied as to Defendant Spinelli. The complaint sufficiently alleges, albeit barely, that Defendant Spinelli lacked probable cause to arrest Plaintiff for the crime of Criminal in the First Degree. Indeed, it is unclear from the complaint whether Plaintiff's conduct was, in fact, in violation of the order of protection. [2]

[2]     Although the Court is permitting this claim against Defendant Spinelli to survive, the Court has serious doubts about whether the claim would survive a properly supported motion for summary judgment. If the Court were to consider the contents of the criminal complaint, supporting affidavit, and Defendant Spinelli's narrative, the claim would undoubtedly be dismissed. This, however, highlights why the Court believes that it is inappropriate to rely on the contents of these documents at this stage. Without the benefit of discovery, Plaintiff has been unable to question the veracity of the statements contained in those documents. That being said, the criminal complaint and affidavits paint a much less sympathetic picture than the one set out in Plaintiff's complaint.

However, to the extent that Plaintiff attempts to assert a false arrest claim against any other named Defendant, the claim must be dismissed. Plaintiff's complaint is devoid of any facts that would permit the Court to find that any other Defendant was personally involved in the alleged false arrest. Aside from conclusory allegations merely reciting the underlying law, Plaintiff fails to include any facts that plausibly allege the personal involvement of any municipal or supervisory Defendant. For example, Plaintiff alleges that "Defendant Butler, Defendant City and Defendant County have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the

public." Dkt. No. 78 at ¶ 78. While this allegation accurately reflects what is required to hold municipal and supervisory officials personally liable for the acts of other, the simple recitation of the relevant law is insufficient to withstand a motion to dismiss. Rather, Plaintiff was required to allege facts, specific to his case, demonstrating how these municipal and supervisory Defendants were personally involved in the alleged unconstitutional conduct, which he has failed to do. Simply put, the legal conclusions in Plaintiff's complaint, devoid of any supporting facts, fail to plausibly allege supervisory or municipal liability as to this claim.

**\*7** Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's false arrest claim as to Defendant Spinelli.

### F. Malicious Prosecution

In their motion to dismiss, Defendants argue that Plaintiff's malicious prosecution must be dismissed because the complaint fails to set forth facts plausibly alleging that the prosecution was initiated without probable cause or that any named Defendant acted with the requisite malice. *See* Dkt. No. 9-1 at 16-17. In response, Plaintiff states as follows: "As the plaintiff was arrested for traveling on a public road in route to his own home and in violation of no Order, law or ordinance, as it cannot be denied that he was 'no billed' by the Grand Jury and as he spent 53 days in jail for no reason whatsoever, it would seem plausible to this writer that any court would agree to the plausibility of Plaintiff's claims." Dkt. No. 10 at 17 (citing *Swierkiezicz v. Sorema*, 534 U.S. 506 (2002)). Plaintiff brings his malicious prosecution claim against the City of Auburn, Auburn Police Department, Cayuga County, and Defendant Butler. *See* Dkt. No. 5 at ¶¶ 51-82. While Plaintiff may be confident in the viability of his claim, this Court finds that Plaintiff has failed to plausibly allege facts supporting a claim for malicious prosecution.[3]

[3]     Throughout his response, Plaintiff repeatedly states that "the Court is respectfully reminded that it may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See, e.g.*, Dkt. No. 10 at 17, 18 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73). Further, Plaintiff repeatedly contends that he "has no duty at this stage to prove his case." *Id.* These basic tenets are not in dispute. What Plaintiff fails to appreciate, however, is that a complaint must be supported by facts specific to his case,

not merely broad assertions of the relevant law poorly disguised as facts. For example, Plaintiff alleges that Defendants engaged in "extreme and outrageous conduct," but fails to explain how any of the conduct alleged could possibly be considered extreme and outrageous. Further, Plaintiff seems to be operating under the assumption that the Court is required to use its imagination to come up with a hypothetical set of facts that could have been pled that would render the claims plausible. *Iqbal* and *Twombly*, however, place no such burden on the Court. Rather, it is incumbent on the plaintiff to set forth the necessary facts specific to his or her case to render the asserted claims plausible.

To prevail on a Section 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment ... and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). Under New York law, a plaintiff must plausibly allege four elements to support a malicious prosecution claim: " '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Id.* (quotation and other citations omitted); *see also Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (quotation omitted). Initiating a criminal proceeding against a person without probable cause, coupled with a deprivation of liberty, is a Fourth Amendment violation. *See Murphy v. Lynn*, 118 F.3d 938, 944-45 (2d Cir. 1997) (citation omitted).

**\*8** The Second Circuit has held that although "police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.' " *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quotations omitted). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Id.* (citation omitted).

Recently, the New York Court of Appeals acknowledged that it has " 'never elaborated on how a plaintiff in a malicious prosecution case demonstrates that the defendant commenced or continued the underlying criminal proceeding.' " *Torres*

Joyner v. County of Cayuga, Slip Copy (2020)
Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 38 of 119
2020 WL 1904088

*v. Jones*, 26 N.Y.3d 742, 760-61 (2016) (quotation omitted). "But, by suggesting that a defendant other than a public prosecutor may be liable for supplying false information to the prosecutor in substantial furtherance of a criminal action against the plaintiff, we have implicitly recognized that such conduct may, depending on the circumstances, constitute the commencement or continuation of the prosecution." *Id.* at 761 (citations omitted); *see also Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983) (noting that proof establishing "that the police witnesses" have falsified evidence may create liability for malicious prosecution); *Hopkinson v. Lehigh Val. R.R. Co.*, 249 N.Y. 296, 300-01 (1928) (noting that the falsification of evidence and presentation of that evidence to the prosecutor can constitute commencement of a prosecution).

### *1. Initiation of Criminal Prosecution*

In the present matter, the Court finds that Plaintiff's malicious prosecution claim must be dismissed. Initially, the Court finds that Plaintiff has failed to adequately allege that any named Defendant initiated that the prosecution against him. While Defendant Spinelli filed the criminal complaint against him, nothing in the complaint suggests his participation in Plaintiff's prosecution beyond that. Nearly all cases in which law enforcement officers were found to have initiated or continued a prosecution for purposes of a malicious prosecution claim involve officers who provided knowingly false and/or fabricated evidence to unwitting prosecutors. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Ramos v. City of New York*, 285 A.D.2d 284, 299 (1st Dep't 2001). There is a rebuttable presumption that criminal proceedings are initiated by prosecutors, not arresting officers. *See Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (citation omitted). "[I]n the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment," a claim of malicious prosecution against the officer must fail. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (citations omitted).

Plaintiff's complaint is devoid of any allegations that Defendant Spinelli engaged in any of the conduct identified above that would permit the Court to find that Plaintiff plausibly alleged that any party other than the District Attorney initiated the prosecution against him. As such, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal.

### *2. Malice*

Plaintiff's complaint is also devoid of any facts supporting an inference that the prosecution was instituted with malice. As Defendants correctly note, Plaintiff misconstrues the standard on a motion to dismiss. While Plaintiff is not required to "prove" that Defendants acted in a malicious manner to sustain his claim, he is certainly required to plead enough facts that would make such a conclusion plausible. Plaintiff's complaint fails to plead any facts that would support the inference that any named Defendant (or their employees) acted with the requisite malice to support a malicious prosecution claim. Rather, the complaint simply alleges that he was subjected to normal processes of law. The number of days that Plaintiff spent in jail is irrelevant to this consideration, as is the fact that he was "no billed" by the Grand Jury. Plaintiff does not allege that he had previous interactions with any of the named Defendants, or that his interactions with them during his arrest and subsequent prosecution would indicate a malicious intent. Finally, as to the supervisory and municipal Defendants, Plaintiff has failed to put forth any facts in support of this claim. Rather, the complaint contains nothing but legal conclusions without providing any basis for the Court to conclude that Plaintiff has plausibly alleged a malicious prosecution claim against these Defendants.

**\*9** Accordingly, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal on this alternative ground.

### *3. Prosecutorial Immunity*

Prosecutors sued under 42 U.S.C. § 1983 enjoy absolute immunity " 'from claims for damages arising out of prosecutorial duties that are "intimately associated with the judicial phase of the criminal process." ' " *Okongwu v. County of Erie*, No. 14CV832, 2017 WL 2686454, \*3 (W.D.N.Y. June 22, 2017) (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))). The prosecutor enjoys this absolute immunity because he or she is acting in a quasi-judicial capacity. *See Okongwu v. County of Erie*, No. 14CV832, 2018 WL 1383233, \*3 (W.D.N.Y. Mar. 19, 2018). The function performed by the prosecutor defines the scope of this immunity. *See Imbler*, 424 U.S. at 430; *Warney*, 587 F.3d at 121. Acts of advocacy before a court, or preparation to advocate, are absolutely immune, *Imbler*, 424 U.S. at 430-31; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), while administrative duties or investigatory functions are not so immune, *Imbler*, 424 U.S. at 431 n.33; *Buckley*, 509 U.S. at 273; *Warney*, 587 F.3d at 121. "This protection encompasses

'all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation.' " *Peters*, 848 F. Supp. 2d at 385 (quoting *Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986)). As noted by the Second Circuit, "thus, to establish [absolute] immunity, the 'ultimate question' is 'whether the prosecutors have carried their burden of establishing that they were functioning as "advocates" when they engaged in the challenged conduct.' " *Warney*, 587 F.3d at 121 (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)).

Absolute immunity extends from the initiation of a prosecution and presenting a case at trial, *Boria v. Hicks*, No. 5:17-CV-00486, 2017 WL 2983304, *4 (N.D.N.Y. June 14, 2017), through the decision to end it, *see Okongwu*, 2017 WL 2686454, at *4, as well as post-conviction defense of proceedings and the decision whether to vacate a conviction, *Warney*, 587 F.3d at 123; *Peters*, 848 F. Supp. 2d at 387. Absolute immunity applies in the preparation for the initiation of judicial proceedings, but not to the investigative or administrative duties of a prosecutor. *See Warney*, 587 F.3d at 122. In *Peters*, the court listed activities that are investigative or administrative that do not deserve absolute immunity, such as orchestrating a sting operation, authorizing wiretaps, coercing confidential informant to consent to a wire, releasing information to the media, assisting in the execution of a warrant, or supervising and interacting with law enforcement agents to acquire evidence. *See Peters*, 848 F. Supp. 2d at 386 (citing cases).

In the present matter, the Court finds that Defendant Budelmann, as Cayuga County District Attorney is entitled to absolute prosecutorial immunity. In the complaint, Plaintiff alleges that "[o]n October 4, 2018, Defendant district attorney presented Plaintiff's criminal charges to the Grand Jury of Cayuga County where the grand jury 'No Billed' the case; and Plaintiff was released from his illegal confinement at the Cayuga County Jail." Dkt. No. 5 at ¶¶ 26, 91. Further, Plaintiff claims that "Defendant district attorney knew at the time of Plaintiff's case being presented to the Grand Jury of Cayuga County that he would not prevail due to the lack of probable cause." *Id.* at ¶ 29. These allegations make clear that Defendant Budelmann has been sued relating to his role in presenting the case to the grand jury; conduct for which he is entitled to absolute prosecutorial immunity. *See Hill v. City of New York*, 45 F.3d 653, 661-62 (2d Cir. 1995) (holding that "that prosecutors are immune from § 1983 liability for their conduct before a grand jury") (citations omitted); *Bernard v. County of Suffolk*, 356 F.3d 495, 505 (2d

Cir. 2004) (citations omitted). Accordingly, Plaintiff's claim of malicious prosecution against Defendant Budelmann is subject to dismissal on this alternative ground.

**\*10** Finally, to the extent that Plaintiff seeks to impute the conduct of Defendant Budelmann to Cayuga County, the claim must necessarily be dismissed. The Second Circuit Court of Appeals has unequivocally held that "prosecutorial acts may not fairly be said to represent official policy of the County," because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988) (internal quotation omitted); *see also Doe v. Smith*, 704 F. Supp. 1177, 1184 (S.D.N.Y. 1988). Since Defendant Budelmann was acting on behalf of the State of New York, and not Cayuga County, any alleged misconduct on Defendant Budelmann's part cannot be imputed to Cayuga County.

### G. Negligent/Intentional Infliction of Emotional Distress

In his sixth cause of action, Plaintiff alleges claims of negligent and intentional infliction of emotional distress against Defendants Butler, Spinelli, and Budelmann. *See* Dkt. No. 5 at ¶¶ 96-98. Defendants contend these claims fail as a matter of law. *See* Dkt. No. 9-1 at 19-20.

As to the claim of negligent infliction of emotional distress, it is well settled that a " ' plaintiff seeking damages for an injury resulting from a wrongful arrest and detention may not recover under broad general principles of negligence ... but must proceed by way of the traditional remedies of false arrest and imprisonment.' " *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015) (quoting *Secard v. Dep't of Soc. Servs. of Cnty. of Nassau*, 204 A.D.2d 445, 612 N.Y.S. 2d 167, 168 (2d Dep't 1994)). This is precisely what Plaintiff is attempting to do here. Tacking on a claim for negligent infliction of emotional distress without any other facts or assertions is insufficient under the relevant law. Moreover, even if this claim could be considered independent of Plaintiff's false arrest claim, it is still subject to dismissal because Plaintiff has not alleged any facts demonstrating that Defendants breached a duty owed to Plaintiff. As such, the Court grants Defendants' motion to dismiss as to Plaintiff's claim of negligent infliction of emotional distress.

As to the intentional infliction of emotional distress claim, it too must be dismissed. "Intentional infliction of emotional distress has four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial

2020 WL 1904088

probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.' " *Greenaway*, 97 F. Supp. 3d at 239-40 (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 596 N.Y.S. 2d 350, 612 N.E. 2d 699, 702 (1993)). "The 'extreme and outrageous conduct' must 'go beyond all possible bounds of decency' and be 'atrocious, and utterly intolerable in a civilized community.' " *Id.* (quotation and other citation omitted).

Here, Plaintiff claims that Defendants Budelmann, Spinelli, and Butler engaged in "extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff." Dkt. No. 5 at ¶ 97. Notably absent from the complaint is any explanation what this "extreme and outrageous conduct" was. " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 302 (1983) (quotation omitted). The threadbare facts alleged by Plaintiff, which include the fact that he was arrested and eventually released after the grand jury refused to indict, fall far short of this strict standard.

**\*11** Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims for negligent and intentional infliction of emotional distress.

### H. Negligence

In his seventh cause of action, Plaintiff asserts a claim for negligence. *See* Dkt. No. 5 at ¶¶ 100-04. In this claim, Plaintiff argues that his arrest, Defendants' failure to "follow the criminal law of the State of New York," and Plaintiff's fifty-three days of incarceration, were the product of Defendants' negligence. *See id.*

"To prevail on a claim for negligence under New York law, a plaintiff must establish '(1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff.' " *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 485 (E.D.N.Y. 2016) (quotation omitted). "However, '[u]nder New York law, harm predicated on an intentional act may not give rise to a claim of negligence.' " *Id.* (quotation and other citation omitted). Moreover, it is well settled that, "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the

appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 743 (4th Dept. 1979)) (other citation omitted).

In the present matter, the Court finds that Plaintiff's negligence claim must be dismissed as it is simply redundant of Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution. Accordingly, the Court grants Defendants' motion to dismiss as to this claim.

### I. Deliberate Indifference to Serious Medical Needs

In his eighth cause of action, Plaintiff claims that "Defendant Medical Staff and Defendant Cayuga County Sheriff's Department" were deliberately indifferent to his medical care and treatment after he was injured when a water pipe broke outside his cell on August 31, 2018. *See* Dkt. No. 5 at ¶¶ 105-14.

A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted). A pretrial detainee's claims are evaluated under the Due Process Clause because, " '[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner — neither cruelly and unusually nor otherwise.' " *Id.* (quotations omitted).

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29 (citation omitted). "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' — perhaps better classified as a *'mens rea'* prong' or 'mental element prong' — showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* "The reason that the term 'subjective prong' might be a misleading description is that, as discussed below, the Supreme Court has instructed that 'deliberate indifference' roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Id.* (citing

*Farmer v. Brennan*, 511 U.S. 825, 836-37, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

**\*12** Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," which includes the risk of serious damage to "physical and mental soundness." *Id.* at 30 (citations omitted). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.' " *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981))). For example, the Second Circuit has " 'held that prisoners may not be deprived of their basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety — and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health.' " *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

" '[C]onditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.' " *Darnell*, 849 F.3d at 30 (quotations omitted). "Unsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation." *Id.* (citations omitted).

The second element of a conditions of confinement claim brought under the Due Process Clause of the Fourteenth Amendment is the defendant's "deliberate indifference" to any objectively serious condition of confinement. *See Darnell*, 849 F.3d at 32. Courts have traditionally referred to this second element as the "subjective prong." "But 'deliberate indifference,' which is roughly synonymous with 'recklessness,' can be defined either 'subjectively' in a criminal sense, or 'objectively' in a civil sense." *Id.* As such, the "subjective prong" might better be described as the "*mens rea* prong" or "mental element prong." *Id.*

Under the second prong of the deliberate indifference analysis, the Court must consider whether the defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even

though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Under this standard, the plaintiff "must prove that [the defendants] acted intentionally or recklessly, and not merely negligently.' " *Id.* at 36.

In the present matter, the Court finds that Plaintiff has failed to plausibly allege a claim of deliberate indifference under the Fourteenth Amendment. Initially, the Court notes that the "medical staff" at the Cayuga County Jail were not named as defendants in this action. Rule 10(a) requires a plaintiff to "name all the parties" in the Complaint. *See* Fed. R. Civ. P. 10(a). Although the naming of pseudonymous defendants is permissible where a plaintiff requires discovery to learn the true identities of the defendants, the plaintiff subsequently must amend the complaint to reflect the discovered identities and effect service on the named parties within the 120-day time period set forth in Rule 4(m). *See Petty v. Cty. of Franklin*, 478 F.3d 341, 345–46 (6th Cir. 2007).

Here, Plaintiff has not brought suit against any pseudonymous defendants, and only makes reference to these unidentified individuals in the body of the complaint. If Plaintiff had intended to sue then-unknown members of the medical staff at the jail, he should have brought suit against "John and/ or Jane Doe" defendants, who could be identified through discovery. Upon obtaining their identities, Plaintiff would then be required to amend his complaint to reflect the Doe defendants' identities. *See Simmons v. District of Columbia*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011) (holding that a plaintiff "may bring an action against unknown John Doe defendants, but plaintiff must substitute named defendants for those unknown defendants after the completion of discovery") (citations omitted); *see also Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (holding that "[a]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery"). Here, Plaintiff has not brought suit against unknown members of the medical staff at the Cayuga County Jail or providing any facts that would permit Defendants to assist in obtaining their identities. As such, the only potential deliberate indifference claim asserted in the complaint is a municipal liability claim against Defendant Cayuga County.

**\*13** In his complaint, Plaintiff has alleged that a water pipe burst outside his cell during the night, the water was turned off, and at some point during the night it pooled near his cell's

toilet. *See* Dkt. No. 5 at ¶¶ 109-13. At sometime between 6:30 a.m. and 7:00 a.m., Plaintiff claims that he got out of bed to use the toilet in his cell and slipped and fell on the wet floor. *See id.* at ¶ 110. Plaintiff alleges that, when he fell, he hit his head and neck on his bunk and his lower back on the floor, causing severe injuries, including a herniated disc in his neck and lower lumbar strain. *See id.* at ¶¶ 111-13. Plaintiff claims that, "[a]fter the injury up and until Plaintiff was released on October 4, 2018[,] Plaintiff was denied medical treatment for his injuries that he suffered inclusive of medication and treatment from a physician." *Id.* at ¶ 114.

Initially, the Court notes that nothing in the complaint indicates that Plaintiff's alleged injury was caused by a municipal custom, policy, or usage, as is required to find a plausible claim against Defendant Cayuga County. Rather, Plaintiff claims that a water pipe leaked outside his cell during the night and that a "correctional officer ... turn[ed] off the water and clean[ed] up the water spill. At that time, there was no water in Plaintiff's cell." Dkt. No. 5 at ¶ 108. When the second pipe leaked, some water entered Plaintiff's cell, which caused Plaintiff to fall. *See id.* at ¶ 109. This isolated incident, involving a bursting water pipe, is woefully insufficient to plausibly allege municipal liability for Plaintiff's alleged injury. *See Connick,* 131 S. Ct. at 1360; *see also Plair v. City of New York,* 789 F. Supp. 2d 459, 470 (S.D.N.Y. 2011) ("[I]t is well established that a single incident does not give rise to an unlawful practice by subordinate officials so permanent and well-settled as to constitute custom or usage") (internal quotation marks omitted); *Giaccio v. City of New York,* 308 Fed. Appx. 470, 472 (2d Cir. 2009) (finding that allegations of, at most, four prior incidents of misconduct "falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability") (internal quotation marks omitted).

Even assuming that Plaintiff had asserted this claim against an individually named Defendant, the claim would still be dismissed. To satisfy the second prong of a deliberate indifference claim, Plaintiff must plausibly allege facts suggesting that a defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell,* 849 F.3d at 35. At best, the facts set forth in the complaint describe negligence on the part of the correctional staff, which is insufficient to support a claim of deliberate indifference. *See id.* at 36.

Finally, to the extent that Plaintiff is basing his claim on the alleged deprivation of medical care after his accident, Plaintiff has failed to provide any factual basis in support of his conclusory assertion that he "was denied medical treatment for his injuries that he suffered inclusive of medication and treatment from a physician." Dkt. No. 5 at ¶ 114. The complaint fails to allege that he brought his alleged injuries to the attention of the correctional or medical staff at the Cayuga County jail (or even identify any such individual).

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's deliberate indifference claim.

### IV. CONCLUSION

After carefully the entire record in this matter, parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**\*14** **ORDERS** that Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED in part** and **DENIED in part;** [4] and the Court further

[4]    As a result of this Memorandum-Decision and Order, the only remaining claim is Plaintiff's false arrest claim against Defendant Spinelli.

**ORDERS** that Defendants City of Auburn, Butler, Cayuga County, Cayuga County District Attorney's Office, and Budelmann are **TERMINATED** as Defendants in this action; and the Court further

**ORDERS** that Defendants' letter motion a portion of the argument raised in their motion to dismiss (Dkt. No. 15) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 1904088

**End of Document**                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 2569085
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ronald MOYE, Plaintiff,
v.
The CITY OF NEW YORK; Sgt. Nelson Caban,
P.O. Paul Jeselon, P.O. Samuel Fontanez, P.O.
Edward Simonetti, P.O. Matthew Boorman, P.O.
Frank Papa, P.O. Tawaina O'Neal, P.O. Brennan;
P.O. John; and A.D.A. Dustin Chao, Defendants.

No. 11 Civ. 316(PGG).
|
July 3, 2012.

### MEMORANDUM OPINION & ORDER

[PAUL G. GARDEPHE](), District Judge.

**\*1** Plaintiff Ronald Moye has brought claims against the City of New York, former New York County Assistant District Attorney Dustin Chao, and eight members of the New York City Police Department ("NYPD") under [42 U.S.C. § 1983]() and state law. Moye claims that Chao is liable for damages under [Section 1983]() and state law for malicious prosecution, abuse of process, denial of a fair trial, fabrication of evidence, conspiracy "to inflict an unconstitutional injury," and intentional and negligent infliction of emotional distress. (Am. Cmplt., Second, Third, Fourth, Fifth, Sixth, Seventh, and Ninth Claims) Chao has moved to dismiss the Amended Complaint on grounds of absolute immunity. For the reasons stated below, Chao's motion to dismiss will be granted.

### BACKGROUND

For purposes of deciding Defendant Chao's motion to dismiss, the Court has assumed that the following facts presented in the Amended Complaint are true.

### I. *MOYE'S ARREST*

On or about March 12, 2002, at approximately 8:00 p.m., NYPD officers Paul Jeselson and Tawaina O'Neal were stationed on the rooftop of an apartment building on the south side of West 118th Street near the corner of Morningside Avenue conducting nighttime narcotics surveillance. (Am.Cmplt.¶¶ 19, 22) Plaintiff's car was located on the north side of West 118th Street, near Manhattan Avenue. (*Id.* ¶ 21) Officer Jeselson claimed that he observed Plaintiff "extend his hand from the driver's side window and hand a small glassine" to another individual—later arrested—who, in turn, handed it to an unapprehended customer. (*Id.* ¶ 20) The Defendant officers moved in and arrested Moye in the vicinity of 352 West 118th Street. (Am.Cmplt.¶¶ 12, 25)

At the time of the arrest, and later at the 28th Precinct, the officers searched Moye and his car and found United States currency, both in Moye's possession and inside the vehicle. (*Id.* ¶ 27) The Defendant officers unnecessarily grabbed Moye, pushed him, and placed excessively tight handcuffs on him (*id.* ¶ 30), causing him to suffer bruises to and numbness in his wrists. (*Id.* ¶ 32)

Moye was indicted on March 22, 2002, for Criminal Possession of a Controlled Substance in the Third Degree. (Am. Cmplt. ¶ 35; Schwartz Decl., Ex. A) Plaintiff alleges that the police officer defendants "conspired [to give] and gave false testimony and intentionally placed false evidence before the grand jury." [1] (Am.Cmplt.¶ 35)

[1]    The Amended Complaint does not disclose what false testimony or other false evidence was laid before the grand jury. Moreover, there is no suggestion that Chao was involved in presenting false testimony or false evidence to the grand jury.

### II. *MOYE'S FIRST TRIAL*

Moye's first trial began on January 14, 2003. (Schwartz Decl., Ex. B) A.D.A. Chao introduced photographs at trial which he claimed showed the position of Plaintiff s car as it was parked on West 118th Street. (Am.Cmplt.¶ 38) Chao, Officer Jeselson, and Officer Papa were present when a District Attorney's office photographer took these photos in June 2002 from the March 12, 2002 observation point. (*Id.* ¶¶ 41–42, 44) Although the photographs were intended to convey the vantage point of the officers on the night of the arrest, they did not replicate the "nighttime conditions." (*Id.* ¶ 45) According to Moye, these photographs nonetheless showed that the officers could not have seen Plaintiff extend his hand from the driver's side window and pass a small glassine to another individual, because the driver's side could not be seen from the vantage point of the rooftop observation post, even with binoculars. (*Id.* ¶¶ 46, 48) At trial, Officer Jeselson admitted

2012 WL 2569085

that "he was not able to see the driver's side of the vehicles in the photographs." (*Id.* ¶ 47) Jeselson nonetheless claimed that he had been able to see Moye's hand "during the nighttime observation." (*Id.* ¶ 39) The first trial ended in a mistrial, with the jury unable to reach a verdict. (*Id.* ¶ 49)

### III. *MOYE'S SECOND TRIAL*

**\*2** In February 2003, A.D.A. Chao, Officers Brennan and Jeselson, and D.A's Office photographer Nancy Badger returned to West 118th Street to take more photographs. (*Id.* ¶ 53) They repositioned the car on an angle in order to make it appear that the officers would have been able to see Moye's hand outside the driver's side window on the night of his arrest. (*Id.* ¶¶ 55–60) With the car positioned in this fashion, Jeselson and Chao instructed Badger to take photographs of Officer Brennan's hand outside the driver's side window in an effort to simulate what the officers would have seen that night. (*Id.* ¶¶ 60–61) Jeselson and Chao then had Brennan move the car back to a curbside position "where additional photographs [were] taken at a wide angle to falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶ 63)

At Moye's second trial, Chao introduced these new photographs and elicited testimony from Jeselson in which he used the photographs to support his claim that he was able to see Moye's hand from the rooftop observation post. (*Id.* ¶¶ 66, 74) However, Badger testified that, in taking the new photographs, "the defendants moved the vehicle to an angle where the hand could be visible." Defendants then returned the vehicle to its curbside position and took additional photographs that "falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶¶ 81–84)

In summation, Moye's lawyer argued that Jeselson had lied about his observations from the roof and the positioning of the car in the photographs introduced by the prosecution.

(*Id.* ¶ 85) In response, A.D.A. Chao argued that Officer Jeselson had no opportunity to frame the defendant, because Chao had been present at the observation post:

> "[Defense counsel] spoke about people on that roof. It's in evidence. Officer Jeselson was on that roof, the photographer Laura Badger was on the roof, and I was on that roof. Now, if he is directing something improperly, that is Officer Jeselson, well, it's in front of me.

> "And if he knew he was going to get away with it when I say that's the opportunity, you know [defense counsel] talked about a lot of people losing their jobs about perjuring themselves, about the integrity of Robert Morgenthau's office. Well, if Officer Jeselson thought he was going to get away with it—

> "[DEFENSE counsel]: Mr. Chao is vouching for his witness.

> "THE COURT: Overruled.

> "[ADA] CHAO: If Officer Jeselson thought he was going to get away with it with me present, all that talk about firing, that should be me because I'm prosecuting this case, not Officer Jeselson.

> "[DEFENSE counsel]: That's objectionable vouching for his witness.

> "THE COURT: Overruled.

> "[DEFENSE counsel]: Your Honor, he is making himself an unsworn witness for the credibility of his police officer.

> **\*3** "THE COURT: Overruled.

> "[ADA] CHAO: Ladies and gentlemen, Mr. Morgenthau should fire me if Officer Jeselson thinks he is going to be able to say that in court, lie to you, when the person who is standing right next to him on that roof is me. Well, that lies with me.

> "So what's the explanation? If there's no motive, no opportunity for why Ms. Badger remembers it differently. Well, there's evidence that you heard the officer was on the roof. Evidence that you heard I was on the roof also. I have no other answer other than the fact that she is mistaken....

> "[DEFENSE counsel]: He is vouching for his witness using the pronoun I.

> "THE COURT: Members of the jury, you can accept his argument as to what happened on the roof. It's his argument based upon the evidence as he recalls it."

*People v. Move,* 52 A.D.3d 1, 5 (1st Dep't 2008); *see also* (Am. Cmplt. ¶¶ 87–92.

Moye was convicted at his second trial and sentenced to four-and-a-half to nine years' imprisonment. (Am.Cmplt.¶¶ 13–14)

## IV. *THE CHARGES AGAINST MOYE ARE DISMISSED*

On appeal, the First Department vacated the conviction in a 3–2 decision. *People v. Move,* 52 A.D.3d 1. The First Department found that "the prosecutor improperly vouched for his witness and interjected his personal integrity and the veracity of the District Attorney's office into his summation to support the credibility of Police Office Jeselson." *Id.* at 6. The New York Court of Appeals agreed that Chao had engaged in impermissible vouching for his witness, affirmed the reversal of the conviction, and remanded the case to Supreme Court. *People v. Move,* 12 N.Y.3d 743, 744 (2009). After remand, the New York County District Attorney's Office dismissed the case on October 21, 2009. (Am.Cmplt.¶¶ 16, 37)

### DISCUSSION

## I. *IMMUNITY*

Chao argues that the claims against him must be dismissed because his actions are protected by absolute immunity. [2]

[2]   Because Moye sues Defendant Chao in his individual capacity (Am .Cmplt.¶ 9), his claims are not barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("To the extent that ... a [Section 1983] claim is asserted against a [state official] in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment.").

Section 1983 "purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina v. Fletcher,* 522 U .S. 118, 123 (1997). In order to state a claim under Section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Newton v. City of New York,* 566 F.Supp.2d 256, 269–70 (S.D.N.Y.2008) (citing *Palmieri v. Lynch,* 392 F.3d 73, 78 (2d Cir.2004)).

"Although section 1983 imposes liability upon every person who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." *Day v. Morgenthau,* 909 F.2d

75, 77 (2d Cir.1990). While Section 1983 does not explicitly provide for such immunity, the Supreme Court and Second Circuit have ruled that "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.' " *Pinaud v. Cnty. of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993)).

**\*4**   As the Second Circuit has explained:

Such immunities are of two types: absolute and qualified. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Absolute immunity is reserved for officials who perform "special functions" and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. at 430–31. *See also Hill v. City of New York,* 45 F.3d at 660 (extending absolute prosecutorial immunity to persons acting under the direction of prosecutors in performing functions closely tied to the judicial process).

By contrast, only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions. *Buckley v. Fitzsimmons,* 509 U.S. at 273. ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.") (internal quotation marks and citations omitted); *accord Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir.2000).

*Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 502–03 (2d Cir.2004).

Absolute immunity extends only so far as necessary to protect the judicial process. *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995). Nonetheless,

[t]he doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney, as it provides that "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed,* 500 U.S. 478, 486, 111

S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 995).

*Pinaud,* 52 F.3d at 1147. The Court addresses the parameters of absolute prosecutorial immunity below.

**A.** *Legal Standard for Absolute Prosecutorial Immunity*
A prosecutor who, as here, is sued in his or her individual capacity, may assert absolute or qualified immunity as a defense. Courts may grant a Rule 12(b)(6) motion to dismiss on grounds of absolute immunity where the facts establishing the defense appear in the complaint. *Deronette v. City of New York,* No. 05 CV 5275(SJ), 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citing *Hill,* 45 F.3d at 663) (absolute immunity may be decided on a Rule 12(b)(6) motion where facts establishing the defense may be "gleaned from the complaint")). Moreover, district courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.[3] *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)); *United States v. Colbert,* No. 87 Civ. 4789, 1991 WL 183376 at *4 (S.D.N.Y. Sept. 11, 1991). This approach is appropriate given that "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler,* 424 U.S. at 419 n. 13. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley,* 509 U.S. at 270 (1993) (citing *Burns,* 500 U.S. at 486).

[3]     District courts likewise evaluate the applicability
        of absolute immunity before assessing whether a
        plaintiff has sufficiently alleged a constitutional
        violation. *Pinaud,* 52 F.3d at 1148 n. 4 (citing
        *Buckley,* 509 U.S. at 261).

**\*5** Prosecutorial immunity to Section 1983 claims is grounded in the immunity to tort liability that prosecutors enjoy under the common law. *Flagler v. Trainor,* 663 F.3d 543, 546 (2d Cir.2011) That immunity arises from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (citing *Imbler,* 424 U.S. at 423). Immunity protects the proper functioning of the prosecutor's office by insulating the exercise of prosecutorial discretion. *Kalina,* 522 U.S. at 125. Prosecutors are therefore "absolutely immune from suit only when acting as advocates and when

their conduct involves the exercise of discretion." *Flagler,* 663 F.3d at 546 (citing *Kalina,* 522 U.S. at 127).

The Supreme Court addressed the question of absolute immunity for prosecutors in *Imbler,* where it held that prosecutors are entitled to absolute immunity for damage suits under Section 1983 for all acts "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and ... presenting the State's case [at trial]." *Imbler,* 424 U.S. at 430.

Later, in *Buckley,* 509 U.S. at 273, the Supreme Court considered whether the prosecutor defendants were entitled to absolute immunity for "investigative" work they performed well before seeking an indictment, involving an effort to connect the plaintiff to a bootprint left at a murder scene. Although the Court rejected the prosecutors' claim for absolute immunity, the Court cautioned that it had

> not retreated ... from the principle
> that acts undertaken by a prosecutor
> preparing for the initiation of judicial
> proceedings or for trial, and which
> occur in the course of his role
> as an advocate for the State, are
> entitled to the protections of absolute
> immunity. Those acts must include
> the professional evaluation of the
> evidence assembled by the police
> and appropriate preparation for its
> presentation at trial or before a grand
> jury after a decision to seek an
> indictment has been made.

*Buckley,* 509 U.S. at 273 (internal citations and quotations omitted).

Whether a prosecutor has absolute immunity for a particular act thus "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). "Such functions include the decision to bring charges against a defendant, presenting the case to a grand jury, and the evaluation of evidence prior to trial." *Johnson v. City of New York,* No. 00 CIV 3626(SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (citing *Kalina,* 522 U.S. at 126). Furthermore, this "application of immunity is not limited to the duties a

prosecutor performs in the courtroom." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (citing *Buckley,* 509 U.S. at 272).

**\*6** "[A] district attorney is [not only] absolutely immune from civil liability for initiating a prosecution and presenting the case at trial," but also "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." *Hill,* 45 F.3d at 661 (citations omitted). Prosecutorial immunity from Section 1983 damages liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory,* 25 F.3d at 83. The Second Circuit has been "mindful of the Supreme Court's admonition that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987) (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett v. United States,* 798 F.2d 565, 571 (2d Cir.1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....")

Because absolute immunity extends broadly to all acts committed by a prosecutor in his or her role as an advocate, it protects prosecutors against claims that they conspired to, or actually presented, fabricated evidence at trial:

> absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." *Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986); *see also Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.1988) (*per curiam* ) (holding ... that prosecutor was immune from § 1983 liability for knowingly presenting false testimony). As much as the idea of a prosecutor conspiring to falsify evidence [is disturbing] ... there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the

performance of their duties. *See Imbler,* 424 U.S. at 426–428.

*Dory,* 25 F.3d at 83. [4]

[4] By contrast, discretionary prosecutorial actions that are not "intimately associated with the judicial phase of the criminal process" are entitled only to qualified immunity. *See Buckley,* 509 U.S. at 270–75; *Burns,* 500 U.S. at 491–95. A prosecutor is "absolutely immune from liability under section 1983 [only] for acts 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.' " *Day,* 909 F.2d at 77 (quoting *Imbler,* 424 U.S. at 410). Thus, when a prosecutor acts in an investigative or administrative capacity, absolute immunity is not available. *Hill,* 45 F.3d at 661. For example, immunity is not available when a prosecutor releases information or evidence to the media, *Buckley,* 509 U.S. at 276–78; authorizes or directs the use of wiretaps, *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984); or performs the functions normally performed by the police, such as assisting in the execution of a search or seizure. *See Buckley,* 509 U.S. at 273. The Supreme Court has also withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, *Burns,* 500 U.S. at 492–96, or acting as a complaining witness. *Kalina,* 522 U.S. 118, 129–31; *see also Ying Jing Gan,* 996 F.2d at 533 (finding that prosecutor was not entitled to absolute immunity where he allegedly exposed a witness to retaliation and failed to provide adequate protection for the witness).

Although courts have declined to establish a bright-line test based on the stage of a criminal proceeding, "absolute prosecutorial immunity has generally been found in cases where some type of formal proceeding had been commenced or was being commenced by the conduct at issue." *Tabor v. New York City,* No. 11 CV 0195 FB, 2012 WL 603561, at \*4 (E.D.N.Y.2012) (citing *Barbera v. Smith,* 836 F.2d at 99. In contrast, where formal proceedings have not begun and the prosecutor is acting in an investigative capacity—such as by providing the police with legal advice on investigative techniques—qualified immunity generally applies. *Id.* While the Supreme Court has noted that a prosecutor is not absolutely immune for every action taken after probable cause has been established, *see Buckley,* 509 U.S. at 274 n. 5, "the Court's treatment of the issue demonstrates that

the existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature of prosecutorial conduct." *Cousin v. Small,* 325 F.3d 627, 633 (5th Cir.2003); *accord Barbera,* 836 F.2d at 99 (noting "that in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts"); *see also DiBlasio v. Novello,* 344 F.3d 292, 300–01 (2d Cir.2003) ( "In assessing whether absolute immunity should attach to a prosecutor ... we have focused on the timing of the conduct at issue....") Thus, in interpreting *Buckley,* the Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could be based," on the other hand, with only the former entitling a prosecutor to absolute immunity. *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998).

**\*7**  In assessing a prosecutor's claim of absolute immunity, the court employs a "functional approach," *see, e.g., Burns,* 500 U.S. at 486, which looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988); *see also Van de Kamp v. Goldstein,* 555 U.S. 335, 335–336 (2009) ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of ... 'functional' considerations"). The court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Blouin v. Spitzer,* 356 F.3d 348, 357 (2d Cir.2004) (a court must examine the "nature of the function performed" in assessing whether absolute immunity will attach.); *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996).

### B. *Analysis*

#### 1. *Malicious Prosecution, Abuse of Process*

To the extent that the Amended Complaint seeks to hold Chao liable for initiating the prosecution of Moye, absolute immunity is clearly applicable. *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005) ("[T]he prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."); *see also Hill,* 45 F.3d at 660–61 (holding that prosecutors and those working under their direction are absolutely immune for claims relating to the initiation of a prosecution and for conduct before a grand jury). Plaintiff s

federal and state law claims alleging malicious prosecution and abuse of process will therefore be dismissed. [5]

[5]     Absolute immunity is a defense not only to Section 1983 claims but to related state law claims. *See Shmueli,* 424 F.3d at 238 (dismissing Section 1983 and related state law malicious prosecution claims); *Arum v. Miller,* 331 F.Supp.2d 99, 112 (E.D.N.Y.2004) (dismissing abuse of process and civil conspiracy claims on grounds of absolute prosecutorial immunity); *Imbler,* 424 U.S. at 424 (same principles require conferral of absolute immunity for damage claims against prosecutors under Section 1983 and state law).

#### 2. *Creation of Misleading Photographs, Conspiracy to Present False Evidence at Trial*

Moye alleges that Chao, in preparation for Moye's second trial, returned to West 118th Street and instructed Nancy Badger—the District Attorney's office photographer—to take photographs that inaccurately represented the position of Moye's car on the night of his arrest. Chao then presented these photographs at the second trial. (Am.Cmplt.¶¶ 38, 40, 50, 50–54, 66–67) Moye alleges that these photographs gave the false impression that the police in the observation post would have been able to see Moye's hand outside the driver's side window. (*Id.* ¶ 60) Moye further argues that absolute immunity does not extend to Chao's role in obtaining these allegedly misleading photographs, because obtaining such evidence is "not a traditional prosecutorial function" and was "done for the purpose of misleading the second jury." (Pltf. Opp. Br. at 10–11)

Prosecutors' absolute immunity applies "not just for presentation of testimony," however, but also to preparatory conduct "relating to their advocacy." *Dory,* 24 F.3d at 83. The Supreme Court and the Second Circuit have emphasized that ' "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera,* 836 F.2d at 100 (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett,* 798 F.2d at 571 ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....").

**\*8** Chao obtained the photographs at issue after Moye's first trial and in preparation for Moye's second trial. Accordingly, his involvement in obtaining these photographs took place long after formal criminal proceedings had been commenced. *See Deskovic v. City of Peekskill,* Nos. 07–CV–8150 (KMK), 07–CV–9488 (KMK), 2009 WL 2475001, at \*10 (S.D.N.Y. Aug. 13, 2009) ("[i]n assessing how closely connected a prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is relevant") (citing *DiBlasio,* 344 F.3d at 300–01).

Furthermore, in directing that these new photographs be taken, Chao was performing in his role as a prosecutor preparing for trial: he sought to obtain these visual depictions of the crime scene in order to strengthen his case. (Am. Cmplt. ¶ 64 (purpose of second set of photographs was "to show that P.O. Jeselson could see a hand coming out of the car window on the date of plaintiff s arrest")). Although Chao was working with the police, he was acting within his role "as [an] advocate for the State." *Burns,* 500 U.S at 491. Courts have consistently found absolute immunity applicable where, as here, a Section 1983 plaintiff is relying on post-indictment misconduct by a prosecutor aimed at obtaining additional evidence to support pending charges at trial. *See, e.g., Deskovic,* 2009 WL 2475001, at \*5, \*11, \*13 (plaintiff contended that A.D.A. had, post-indictment, conspired to procure false scientific evidence that he later introduced at trial; granting A.D.A.'s motion to dismiss Section 1983 claims on absolute immunity grounds, because the A.D.A.'s alleged misconduct took place after indictment during the "judicial phase of the criminal process"); *Bertuglia v. City of New York,* No. 11 Civ. 2141(JGK), 2012 WL 906958, at \*21 (S.D.N.Y. Mar. 19, 2012) (granting motion to dismiss state law claims against A.D.A. defendant based on post-indictment evidence-gathering activities; absolute immunity applicable because "the Complaint does not allege facts that create a plausible inference that [the prosecutor] was not acting as an advocate seeking to strengthen her case against an indicted defendant"); *Zahrey v. City of New York,* No. 98–4546, 2009 WL 54495, at \*30–\*31 (S.D.N.Y. Jan. 7, 2009) (granting absolute immunity to A.D.A. alleged to have engaged in post-indictment effort to fabricate evidence); *KRL v. Moore,* 384 F.3d 1105 (9th Cir.2004) (granting A.D.A. absolute immunity for alleged misconduct related to his role in obtaining a post-indictment search warrant seeking evidence to corroborate pending charges); *Cousin v. Small,* 325 F.3d 627, 635 (5th Cir.2003) (granting absolute immunity to A.D.A. accused of fabricating evidence post-indictment; "at the time of [A.D.A.] Jordan's ...

conversations with Rowell, in which Jordan allegedly told Rowell to implicate Cousin falsely in the murder and coached him on how to testify, Jordan was acting as an advocate rather than as an investigator. The interview was intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified suspect, not to identify a suspect or establish probable cause. Jordan therefore is entitled to absolute immunity with respect to this claim."); *see also Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006) (affirming dismissal on absolute immunity grounds of Section 1983 claim brought against Assistant State's Attorney based on alleged conspiracy to present false evidence at trial); *Dory,* 25 F.3d at 83 ("absolute immunity protects a prosecutor from § 1983 liability for ... allegedly conspiring to present false evidence at a criminal trial").

**\*9** Because Chao is alleged to have obtained the misleading photographs post-indictment, in preparation for Moye's second trial, and in an effort to strengthen his case as the State's advocate, he is entitled to absolute immunity for this alleged misconduct.

### 3. *Misconduct at Trial*

Moye alleges that Chao elicited false testimony from Officer Jeselson at trial, that he buttressed Jeselson's false testimony through introduction of the misleading photographs, and that he then vouched for the truth of Jeselson's testimony in his summation.

A prosecutor's presentation of false evidence, or subornation of perjury at trial, is protected by absolute immunity. *Jones v. King,* No. 10 Civ. 0897(PKC), 2011 WL 4484360, at \*4 (S.D.N.Y. Sept. 28, 2011) ("The claim that [the prosecutor] 'conspir[ed] to present false evidence at a criminal trial' is barred.... The prosecutor enjoys absolute immunity 'despite allegations of his "knowing use of perjured testimony...." ' ") (citations omitted); *Bertuglia,* 2012 WL 906958, at \*23 (prosecutors are entitled to absolute immunity for allegations that they "coerced and harassed various witnesses into giving false testimony"); *Urrego v. United States,* No. 00 CV 1203(CBA), 2005 WL 1263291, at \*2 (E.D.N.Y.2005) ("It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false."); *Johnson v. Scott,* No. CV–91–1467(CPS), 1993 WL 36131, at \*2 (E.D.N.Y. Feb. 5, 1993) (A.D.A. entitled to absolute immunity related to witness perjury, because this "concern[ed] ... the presentation of the State's case against the plaintiff"); *see Imbler,* 424 U.S. at

430–31 (granting prosecutors absolute immunity for their conduct "in presenting the State's case," including permitting a fingerprint expert to give false testimony, suppressing important evidence, and introducing a misleading artist's sketch into evidence.).

The analysis does not change because Plaintiff alleges a conspiracy to commit these acts. *Shmueli,* 424 F.3d at 237–38 ("principles [of absolute immunity] are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy") (citing *Dory,* 25 F.3d at 83); *Bernard,* 356 F.3d at 503; *Hill,* 45 F.3d at 659 n. 2 (when the underlying activity at issue is covered by absolute immunity, the "plaintiff derives no benefit from alleging a conspiracy").

Plaintiff also argues that Chao acted outside his prosecutorial role when he vouched for Jeselson's testimony during summation. Because a prosecutor's summation is part of presenting the State's case, courts agree that a prosecutor's conduct during summation is protected by absolute immunity. *See Robinson v. Rome,* No. 11–CV–1411(NGG)(LB), 2011 WL 1541044, at *3 (E.D.N.Y.2011) (finding A.D.A.s immune from suit for claims related to, *inter alia,* an improper summation); *Johnson,* 1993 WL 36131, at *2 (granting absolute immunity to prosecutor where plaintiff alleged that A.D.A. "express[ed] to the jury her opinion as to the truth of the testimony of her witnesses during her summation").

**\*10** In sum, to the extent that Moye's claims against Chao are based on his conduct at trial, those claims are covered by absolute immunity.

\* \* \* \*

The Court concludes that Chao has absolute immunity for all of Moye's claims, whether based on federal or state law, and whether founded on theories of malicious prosecution, abuse of process, denial of a fair trial, fabricated evidence, conspiracy, or intentional or negligent infliction of emotional distress.

### CONCLUSION

Chao's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 23).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2569085

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2000 WL 1335865
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Martin JOHNSON, Plaintiff,

v.

THE CITY OF NEW YORK, Assistant
District Attorney Robert Henoch, Captain
of Corrections Martin, Corrections Officer
Schmidt, Corrections Officer Brown and
Unidentified Correction Officers, Defendants.

No. 00CIV.3626(SHS).
|
Sept. 15, 2000.

OPINION AND ORDER

STEIN, D.J.

**\*1** Martin Johnson has brought this action pursuant to 42 U.S.C. § 1983 seeking monetary damages on the grounds that the defendants—the City of New York, an Assistant District Attorney, and certain Corrections Officers—violated his constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution by failing to protect him from an attack by fellow inmates against whom he had arranged to testify. Johnson also asserts two tort claims. The Assistant District Attorney moves to dismiss the complaint as it pertains to him pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. For the following reasons, the motion is granted and the complaint is dismissed as to ADA Henoch.

BACKGROUND

The facts are taken from plaintiff's complaint and are assumed to be true for purpose of this motion. In May of 1998 Johnson was arrested for allegedly selling crack cocaine. Complaint at 4. Shortly after his arrest, he entered into a cooperation agreement with ADA Henoch to testify against several of his co-defendants. [1] *Id.* ADA Henoch allegedly "assured" plaintiff at that time that he "would protect him[ ]" from possible retaliation by his co-defendants. *Id.* Johnson claims that he was being held in Beacon, a housing area on Rikers

Island, which was in "the same general area" as where the people against whom he was to testify were held and that he alerted ADA Henoch of this fact. *Id.* ADA Henoch "explicitly assured [him] that he would be safe" and that "he would be placed in protective custody." *Id.* at 4–5. Plaintiff also alerted defendant Corrections Officers Martin, Schmidt, Brown and "Unidentified Correction Officers" to his danger. *Id.* at 5.

[1]
  The complaint states that plaintiff entered into the cooperation agreement with ADA Henoch on June 18, 1999. Complaint at 4. Plaintiff's opposition, however, states the cooperation agreement was entered into in "June of 1998". Opposition at 2. In addition, plaintiff has recently sought—successfully—to amend the complaint to allege that the agreement was made in June of 1998. Accordingly, this Court will assume that plaintiff entered into the cooperation agreement with defendant in June, 1998.

On February 24, 1999, plaintiff was attacked by fellow inmates "who called him a snitch as they beat and kicked him." *Id.* As a result of the beating, Johnson suffered a fractured ankle, injuries to his head, neck and legs, and damage to his retina that required surgery. *Id.* ADA Henoch, after learning of the attack on plaintiff, "acknowledged [his] prior request for protection." *Id.*

As noted above, Johnson has filed this action against the City of New York, Correction Officers Martin, Schmidt, Brown, and ADA Henoch and the ADA has moved to dismiss the complaint on the grounds that it fails to state a constitutional claim for which relief may be granted and that he is entitled to either absolute or qualified prosecutorial immunity.

DISCUSSION

When reviewing a motion to dismiss, a court must accept as true the factual allegations of the complaint and must view the pleadings in the light most favorable to and draw all reasonable inferences in favor of the non-moving party. *See Jamison v. Dee,* 2000 WL 502871 (S.D.N.Y. April 27, 2000) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993)). Dismissal of the complaint is only proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

### I. *Absolute Immunity*

**\*2** It is well-established that prosecutors are absolutely immune from suits for damages arising from actions which are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). Such functions include the decision to bring charges against a defendant, *see Gan,* 996 F.2d at 530, presenting evidence to a grand jury, *see Barret v. United States,* 789 F.2d 565, 571–72 (2d Cir.1986), and the evaluation of evidence prior to trial. *See Kalina v. Fletcher,* 522 U.S. 118, 126, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Absolute immunity is not available, however, when a prosecutor "undertakes conduct that is beyond the scope of his litigation-related duties." *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987).

*Barbera v. Smith,* 836 F.2d 96, 100, is closely analogous to this action. In *Barbera,* the Second Circuit held that a prosecutor was not entitled to absolute immunity where he twice refused to provide a cooperating witness with police protection. *Id.* at 98. The witness had agreed to testify in return for a more lenient sentence and was murdered by a contract killer hired by the target of the prosecutor's investigation. *Id.* The Court found that "the government was still seeking evidence, including testimony from [the victim], that would enable it to prosecute ..." and that "this task [providing protection] was [not] so intimately associated with the judicial phase of the criminal process ..." as to entitle the prosecutor to absolute immunity. *Id.*

Here, as in *Barbera,* defendant's activities were not "so intimately associated with the judicial phase of the criminal process" as to entitle him to absolute immunity from suit. *See Gan,* 996 F.2d at 531 ("the claim that [the prosecutor] failed to protect [plaintiff] asserts conduct that plainly is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings. Accordingly, if [defendant] is to be accorded immunity ... it can only be qualified immunity ."). Therefore absolute immunity is not available to the district attorney in this action.

### II. *Qualified Immunity*

In general, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983). Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *See Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 72 L.Ed .2d 396 (1982)). Dismissal for failure to state a claim is thus appropriate where the complaint itself presents the qualified immunity defense. *See, e.g., Green,* 722 F.2d at 1019. The United States Supreme Court has also held that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *See also Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987) (citing *Procunier v. Navarette,* 434 U.S. 555, 565 (1978) (prison officials entitled to dismissal of claims of violating prisoner's First and Fourteenth Amendment rights by interfering with mail where such rights had not been clearly established)). Even when viewed in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, *Mills,* 12 F.3d at 1174, Johnson's allegations regarding the District Attorney do not state a violation of a clearly established constitutional right. Thus, dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate. *See, e.g., Molinelli v. Tucker,* 901 F.2d 13, 16 (2d Cir.1990).

**\*3** Qualified immunity shields government actors performing discretionary functions from " 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Lennon v. Miller,* 66 F.3d 416, 420 (2nd Cir.1995) (quoting *Harlow,* 457 U.S. at 818). To determine whether a right was clearly established at the time defendant acted, the Court must consider: "(1) whether the right in question was defined 'with reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Gan,* 996 F.2d at 532 (quoting *Jermosen v.. Smith,* 945 F.2d 547, 550 (2d Cir.1992)).

The District Attorney claims that he is entitled to qualified immunity because, even if he had a constitutional duty to protect Johnson, it was not a clearly established duty. The Due Process Clause itself does not require the State to protect "the

Case 5:21-cv-00085-DNH-TWD   Document 13   Filed 07/21/21   Page 54 of 119
Johnson v. City of New York, Not Reported in F.Supp.2d (2000)
2000 WL 1335865

life, liberty, [or] property of its citizens against invasion by private actors." *Deshaney v. Winnebago County Dep't of Soc. Serves,* 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989). Therefore, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. The only judicially recognized exceptions to this rule are custodial relationships where "the State takes a person into its custody and holds him there against his will," *Id.* at 199–200, 109 S.Ct. at 1005 (the "special relationship" exception), or when the government affirmatively creates or increases the danger an individual is placed in. *See Dwares v. City of N.Y.,* 985 F.2d 94, 98–99 (2d Cir.1993) (the "state-created danger" exception).

Special relationships that have given rise to a governmental duty to protect against third-person attacks include "custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child." *Gan,* 996 F.2d at 532 (citing cases).

The Second Circuit has also recognized the state-created danger exception to *DeShaney's* general rule. *See Dwares,* 985 F.2d at 99 (police officers agreed in advance with members of a group to allow the group to assault the plaintiff, did not interfere during the beating and did not arrest those who assaulted the plaintiff); *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998) (arresting officers returned gun to robbery victim and drove him to the scene of suspect's arrest, where the victim shot the suspect); *see also Freeman v. Ferguson,* 911 F.2d 52, 54 (8th Cir.1990) (reversing dismissal on qualified immunity grounds against police chief who instructed subordinates to ignore victim's request for protection from her husband, who was the chief's friend).

**\*4** Johnson contends that the District Attorney's proffer of the cooperation agreement and assurance that he would protect plaintiff conferred upon the District Attorney a constitutional duty to protect Johnson. [2] Plaintiff claims that the prosecutor's duty to protect him was clearly established by *DeShaney* and by *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison officials may be held liable under Eighth Amendment for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it). However, neither *DeShaney* nor *Farmer* clearly establish the law regarding plaintiff's allegations. While the very action

in question need not have been previously held unlawful for a constitutional right to be clearly established, *Duncan v. Kean,* 1995 WL 649931, *3 (S.D.N.Y. Nov. 6, 1995) (citing *Aveni v. Mottola,* 35 F.3d 680, 686 (2d Cir.1994)), it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

[2]     Johnson does not specify whether he is claiming defendant Henoch owed a duty to protect him based on the special relationship or state-created danger exception to the *DeShaney* rule. For the purpose of this motion, both arguments will be addressed.

The Second Circuit has twice considered and rejected claims against prosecutors for failure to protect a witness from attack by a third party. *See Barbera,* 836 F.2d at 100–01; *Gan,* 996 F.2d at 533–34. In *Gan,* a panel of the Second Circuit wrote that

> "[p]laintiffs have not called to our attention any case before or since [*Barbera* ] ... in which the lodging of a complaint with law enforcement officials, or the complainant's compliance with a request to identify suspects, either singly or in combination, has been held (a) to create a relationship that gives the complaining witness a constitutional right to protection, or (b) to impose a corresponding duty on a prosecutor."

*Id.* at 533–34.

Here, as in *Gan,* plaintiff points to no case, and the Court is aware of none, where it has been held that a prosecutor's alleged promise to protect an inmate who agrees to testify creates a special relationship that gives rise to a constitutional right to protection from a third party. Nor is the Court aware of any decision which has held that the mere proffer of a cooperation agreement by a prosecutor so increases the danger to an inmate that it creates a constitutional duty for the prosecutor to protect the inmate from potential attacks by third persons. A *prison official's* willful failure to protect

2000 WL 1335865

an inmate from another inmate's violent actions violates the Constitution if the officer was "deliberate[ly] indifferen[t] to the consequences of his conduct for those under his control and dependent upon him," *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). However, no corresponding duty has been found to exist between an inmate and prosecutor.

Based on the limited caselaw in existence at the time of the alleged attack, and particularly because of the absence of any caselaw which holds that any state actor other than a prison official owes a duty to protect an inmate from another inmate's violent actions, it cannot be said that it was clearly established that defendant ADA Henoch had created or assumed a special relationship with Johnson imbuing him with a constitutional duty to protect him. Therefore, this Court "need not decide whether [it] would hold that these circumstances create such a right and corresponding duty, for in the absence of any such holdings and in the face of the general rule articulated in *DeShaney,* it could not have been clear to a reasonable prosecutor that his failure to provide protection ... would have violated [plaintiff's] rights under the Constitution." *Gan,* 996 F.2d at 534. Defendant Henoch is therefore entitled to qualified immunity.

### III. *The Pendent State Claims*

**\*5** The ADA's motion to dismiss plaintiff's pendent state law claims is likewise granted. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the state law claims against ADA Henoch are dismissed without prejudice. *See United Mine Workers of America v. Gibbs,* 338 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 98 L.Ed.2d 720 (1988); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 757 (2d Cir.1986).

### IV. *CONCLUSION*

For the reasons set forth above, the prosecutor's motion to dismiss is granted and the complaint is dismissed as against the assistant district attorney.

SO ORDERED:

### All Citations

Not Reported in F.Supp.2d, 2000 WL 1335865

---

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 56 of 119

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 3822112

2017 WL 3822112
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darryl L. HAWTHORNE, Plaintiff,

v.

CITY OF ALBANY, et al., Defendants.

1:17-CV-00716 (GTS/TWD)

|

Signed 07/25/2017

**Attorneys and Law Firms**

DARRYL L. HAWTHORNE, 40 Anne Street, New York,
New York 10038, pro se.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** The Clerk has sent to the Court for initial review
the complaint in this 42 U.S.C. § 1983 civil rights action
brought by Plaintiff Darryl L. Hawthorne against Defendants
Albany Police Officers Tyson Ruecker, Devin Anderson,
Sean Perkins, Alex Cheban, and John Norris, and the City of
Albany. (Dkt. No. 1.) The officers have been sued in both their
individual and official capacities. *Id.* Also before the Court is
Plaintiff's application for leave to proceed *in forma pauperis*
("IFP Application"). (Dkt. No. 2.)

**I. PLAINTIFF'S IFP APPLICATION**

A court may grant *in forma pauperis* status if a party "is
unable to pay" the standard fee for commencing an action. 28
U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP
Application (Dkt. No. 2), the Court finds that Plaintiff meets
this standard. Therefore, Plaintiff's IFP Application (Dkt. No.
2) is granted.

**II. LEGAL STANDARD FOR INITIAL REVIEW OF
COMPLAINT**

Even when a plaintiff meets the financial criteria for *in forma
pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff
proceeds *in forma pauperis*, "the court shall dismiss the case
at any time if the court determines that ... the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which

relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
look to see whether the complaint lacks an arguable basis
either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319,
325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is
frivolous when either: (1) the factual contentions are clearly
baseless such as when the claims are the product of delusion
or fantasy; or (2) the claim is based on an indisputably
meritless legal theory." *Livingston v. Adirondack Beverage
Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal
quotation marks omitted). Although extreme caution should
be exercised in ordering *sua sponte* dismissal of a *pro se*
complaint before the adverse party has been served and the
parties have had an opportunity to respond, *Anderson v.
Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a
responsibility to determine that a claim is not frivolous before
permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*,
943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a
district court has the power to dismiss a complaint *sua sponte*
if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint
must plead enough facts to state a claim that is "plausible
on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173
L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules
of Civil Procedure, which sets forth the general rules of
pleading, "does not require detailed factual allegations, ... it
demands more than an unadorned, the-defendant-harmed-me
accusation." *Id.* In determining whether a complaint states
a claim upon which relief may be granted, "the court must
accept the material facts alleged in the complaint as true and
construe all reasonable inferences in the plaintiff's favor."
*Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert.
denied*, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994)
(citation omitted). "[T]he tenet that a court must accept as true
all of the allegations contained in a complaint is inapplicable
to legal conclusions." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.
"Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." *Id.*

Case 5:21-cv-00085-DNH-TWD   Document 13   Filed 07/21/21   Page 57 of 119

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 3822112

**\*2** Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III. COMPLAINT

#### A. Defendants Anderson and Perkins with Plaintiff at Capitol Green

Plaintiff alleges that on March 16, 2015, he went to Capitol Green, an apartment building located at 400 Central Avenue in Albany, New York, to visit a friend of his on the eleventh floor. (Dkt. No. 1 at 6-7. [1] ) As Plaintiff entered the building, the security guard, who knew Plaintiff was a regular visitor in the building, waved, nodded his head, smiled, and said hello to Plaintiff. *Id.* at 6. The security guard did not stop Plaintiff, tell him he was doing something wrong, or tell him he had to sign a book at the desk when he went in between 3:30 and 4:30pm. *Id.* at 7.

[1]     Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

Plaintiff rode the elevator to the eleventh floor, knocked on his friend's door, and went back to the elevator to leave the building when there was no answer. *Id.* As he was about to get on the elevator, Defendant Albany Police Officers Anderson and Perkins walked out of the elevator and told him he could not get on. They refused to answer when Plaintiff asked why and then engaged in communications with women from the rent/management office. *Id.*

When Plaintiff denied the Officers' request for consent to search his person, Anderson told Perkins to grab Plaintiff, and Perkins grabbed him, slammed him forcibly against the wall, and forcibly handcuffed him. [2]  *Id.* Plaintiff was told to shut the fuck up when he asked what he was being arrested for, and Perkins held him while Anderson searched through Plaintiff's coat pockets. *Id.* When Plaintiff asked again why he was being

arrested, Anderson told him for trespassing because he had not signed the book when he came in. *Id.* at 8. According to Plaintiff, he has known people in the building for over eight years, long before the women from the rent/maintenance office with whom the Officers spoke had begun working there. *Id.* at 13. Plaintiff claims he was not trespassing and that Anderson and Perkins lied about it to give them a legitimate reason to stop him and violate his rights. *Id.*

[2]     There is no indication in the complaint that Anderson and Perkins at any point acted under the authority of a warrant.

When Anderson asked Plaintiff whose apartment he had been seen exiting by the rent/management women a couple of weeks earlier, Plaintiff replied, "A friend. And obviously if the ladies saw me exiting the apartment, then that show (sic) that I know people in the building, and proves I am not a trespasser." *Id.* at 9. Anderson was furious at Plaintiff's response and said "we'll show this porch monkey a lesson." *Id.* Perkins grabbed Plaintiff in a choke hold from behind, lifting him off his feet for a few seconds while he dangled by his neck. *Id.* Anderson then punched Plaintiff in the stomach, and he fell to the floor. *Id.* Anderson told Perkins to pick Plaintiff up and carry him towards the end of the hallway away from the elevators and cameras. *Id.* Anderson was carrying Plaintiff's upper body and Perkins his lower body and they slammed him to the ground when Plaintiff began squirming and moving to keep them from carrying him. *Id.* at 10.

 **\*3** Eventually Plaintiff was carried down the hall and placed in a sitting position on the floor. Anderson and Perkins searched Plaintiff's hat, sneakers, and socks. *Id.* They then took off his pants and searched them. *Id.* Anderson started saying "we need to check his ass." *Id.* When Plaintiff protested, Perkins pulled his gun from the holster, held it up to Plaintiff, and told him "if we have to tell you to shut the fuck up one more time, I will put a bullet in your head." *Id.* Plaintiff made no more protests for fear Perkins would kill him. *Id.* "Anderson and Perkins rolled Plaintiff over on his stomach and put on surgical gloves." *Id.* at 11. Anderson pulled down Plaintiff's underwear and told Perkins to spread apart Plaintiff's butt cheeks while he probed Plaintiff's anus. *Id.* Anderson probed Plaintiff's anus four times shining a flashlight as he did it. *Id.* Nothing was found. *Id.*

#### B. The Precinct
Defendant Police Officer Cheban was contacted by Anderson and Perkins to transport Plaintiff to the precinct. (Dkt. No.

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 58 of 119

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 3822112

1 at 11.) Cheban patted Plaintiff down before putting him in the car, and when they arrived at the precinct, Plaintiff was handcuffed to a chair. *Id.* At the precinct, Perkins went through Plaintiff's cell phone, reading all of his text messages, and looking at his contacts, phone history, and photos and videos, including nude, intimate videos and pictures of Plaintiff with his girlfriend. *Id.* Anderson and possibly others forced Plaintiff to take off every item of clothes one-by-one until he was completely naked. *Id.* He was forced to squat and cough numerous times before another anal cavity search was performed. *Id.*

An officer who had whispered something to Anderson and Perkins earlier returned two hours later with what they said was crack cocaine. *Id.* at 12. Plaintiff alleges that the whispering was about a plot to frame him for drug possession. *Id.* Plaintiff was charged with criminal trespass, criminal possession of a controlled substance, criminal possession with intent to sell, and false impersonation. *Id.*

Plaintiff claims that they deliberately did not document his New York ID at the Albany Police Department so that they could say he had lied about his identity when he had not. *Id.* at 13. According to Plaintiff, when Perkins and Anderson had searched him in the hallway of the Capitol Green, they had found his ID and run it for outstanding warrants and to see if he was on parole or probation. *Id.* Anderson was surprised Plaintiff's name kept coming up clean. *Id.* Plaintiff has alleged that Anderson and Perkins falsified a police document by saying that they had found crack cocaine on Plaintiff as a result of the cavity search. *Id.* Months later, they changed their story and claimed they had found the crack cocaine in the police car. *Id.*

Plaintiff has alleged that he had $4,000 with him when he was stopped by Anderson and Perkins. *Id.* at 13. The officers only documented $776 of it and marked it as evidence to make the drug charges seem more legitimate. *Id.* Plaintiff has no idea where the rest of the money went. *Id.*

Plaintiff has alleged, in conclusory fashion, that Defendant Tyson Ruecker was extremely negligent in not adequately training and supervising the officers he was using in connection with Plaintiff's arrest. [3] Plaintiff also claims that Ruecker falsified police documents in connection with Plaintiff's arrest by deliberately failing to fill out a form called a DD5 at the time he received a tip from a confidential informant because he wanted to wait to find out if they found drugs on Plaintiff. *Id.* at 14. Since they did not, Ruecker

waited to fill out the form until the drugs had been planted on Plaintiff. According to Plaintiff, Ruecker is guilty of conspiring to plant drugs on him and failing to use proper protocol, of being very abusive, and of abusing his authority as a police officer. *Id.* at 14-15.

[3]     Plaintiff has identified Ruecker as a police officer in the Albany Police Department in his complaint. (Dkt. No. 1 at 1.) In *People v. Smith,* 26 N.Y.S.3d 401, 403, 137 A.D.3d 1323 (3d Dep't 2016), Ruecker is identified as a detective assigned to the Community Response Unit of the Albany Police Department.

**\*4** Plaintiff claims that as a result of the actions of Anderson and Perkins he was deathly afraid for his life and felt ashamed, degraded, like less of a man, and like his manhood was taken from him by being penetrated anally. *Id.* at 15. Plaintiff seeks monetary damages in the amount of $500,000,000. *Id.* at 5. There are no allegations in the complaint regarding whether Plaintiff was at any point incarcerated on the trespassing, drug, and false impersonation charges alleged in the complaint or the disposition of the charges.

## IV. ANALYSIS

### A. Anderson and Perkins

The Court construes Plaintiff's complaint as alleging Fourth Amendment claims against Anderson and Perkins under § 1983 for: (1) unreasonable search and seizure of his person and property; (2) excessive force; (3) false arrest/false imprisonment and planting evidence; [4] and (4) malicious prosecution. (Dkt. No 1 at 6.) Liberally construed, Plaintiff's complaint might also be read as asserting a claim for deprivation of property, i.e., the money Plaintiff claims was taken but not listed as confiscated at the time of his arrest, without due process in violation of the Fourteenth Amendment.

[4]     In New York, false arrest and false imprisonment "are two names for the same tort." *Holland v. Poughkeepsie,* 90 A.D.3d 841, 935 N.Y.S.2d 583, 589 (2d Dep't 2011). The Court will use the term "false arrest" herein.

Case 5:21-cv-00085-DNH-TWD  Document 13  Filed 07/21/21  Page 59 of 119

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 3822112

1. Fourth Amendment Unreasonable Search
and Seizure and Fourteenth Amendment
Deprivation of Property without Due Process

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' " *City of Los Angeles, Cal. v. Patel*, —— U.S. ——, 135 S.Ct. 2443, 2451-52, 192 L.Ed.2d 435 (2015) (quoting *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)). "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1 at 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (quoting *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.Ed. 734 (1891)).

Consistent with the Fourth Amendment, "the police can stop and briefly detain a person for investigative purposes." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Such detention requires that "the officer [have] a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Sokolow*, 490 U.S. at 7, 109 S.Ct. 1581 (quoting *Terry*, 392 U.S. at 30, 88 S.Ct. 1868). Reasonable suspicion involves a mixed question of fact and law. *See Hall v. City of White Plains*, 185 F.Supp.2d 293, 301 (S.D.N.Y. 2002). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *see also Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (a seizure has occurred when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen").

Plaintiff has alleged there was no basis for Anderson and Perkins to have a reasonable suspicion that he was engaged in criminal conduct because he knew people living at Capitol Green and had frequented the apartment building for a number of years. Plaintiff has also set forth facts plausibly showing the use of what arguably could constitute excessive physical force by the officers, and that he was not free to leave. According to Plaintiff, he was told by Anderson while still at Capitol Green that he was being arrested for trespassing, his clothing and shoes were searched, and he was subjected to an anal cavity search by Anderson and Perkins. (Dkt. No. 1 at 8, 10-11.) Plaintiff has alleged that he was subjected to a strip search and a second anal cavity search at the precinct. *Id.* at 12, 88 S.Ct. 1868.

**\*5** Fourth Amendment protection includes "individual privacy against certain kinds of government intrusion." *Katz v. United States*, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). There are at least three types of searches that implicate a person's Fourth Amendment right to privacy. *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016). Those are:

> A "strip search," though an umbrella term[,] generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A "visual body cavity search" extends to visual inspection of the anal and genital areas. A "manual body cavity search" includes some degree of touching or probing of body cavities.

*Id.* The most invasive type of search is the manual body cavity search to which Plaintiff was allegedly subjected by Anderson and Perkins while at Capitol Green, after being told by Anderson he was under arrest for trespassing, and again at the precinct. *See U.S. v. Gonzalez*, 111 F.Supp.3d 416, 431 (S.D.N.Y. 2015).

"The Fourth Amendment requires that an individualized 'reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular circumstances of the arrestee, and/ or the circumstances of the arrest' before [he] may be lawfully subjected to a strip search [including a manual cavity search]." [5] *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (citing *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986)). "A reasonable suspicion of wrongdoing is something stronger than a mere hunch, but something weaker than probable cause." *Id.* (quoting *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997)). "To establish reasonable suspicion, [officers] must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience. The standard requires individualized suspicion,

2017 WL 3822112

specifically directed to the person who is targeted for the strip search." *Id.* (quoting *Varrone, 123 F.3d at 79*).

5      According to Plaintiff, Anderson told him he was being arrested for trespass prior to the anal cavity search at Capitol Green. (Dkt. No. 1 at 8.) Criminal trespass in the second degree (Penal Law § 140.15), which provides in relevant part that "A person is guilty of criminal trespass in the second degree when: (1) he or she knowing enters or remains unlawfully in a dwelling[.]" Criminal trespass in the second degree is a class A misdemeanor. *Id.*

Based upon the foregoing, the Court finds that the allegations in Plaintiff's complaint plausibly show a violation of his Fourth Amendment right against unreasonable search and seizure by Defendants Anderson and Perkins and recommends that the claim brought under § 1983 survive initial review, and Anderson and Perkins be directed to respond.

## 2. Excessive Force

In *Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)*, the Supreme Court held that "*all* claims that law enforcement officers have used excessive force deadly or not in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.' " (emphasis in original). The Court explained in *Graham* that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Id.* at 396, 109 S.Ct. 1865 (citation and internal quotation marks omitted). Recognizing that the "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," the Court cautioned that "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation and internal quotation marks omitted).

**\*6** The Court finds that the facts alleged in Plaintiff's complaint, including that Anderson and Perkins slammed

him against the wall, held him off the ground in a choke hold, punched him in the stomach, slammed him to the floor as they were carrying him down the hall, and subjected him to an anal cavity search (Dkt. No. 1 at 9-11), plausibly show that Anderson and Perkins used what might be found to constitute excessive force under the Fourth Amendment. The Court therefore recommends that Plaintiff's § 1983 Fourth Amendment excessive force claim against Defendants Anderson and Perkins survive initial review and that Anderson and Perkins be directed to respond.

## 3. False Arrest

Plaintiff was initially informed that he was being arrested for trespassing. (Dkt. No. 1 at 8.) However, according to Plaintiff, about two hours after he was taken to the precinct an unnamed officer returned to the precinct with what Anderson and Perkins said was cocaine. *Id.* at 12, 88 S.Ct. 1868. Plaintiff has alleged that the drug charges added after he was taken to the precinct were part of a plot by Anderson and Perkins, who falsified police documents with regard to the drugs, to frame him for drug possession. *Id.* at 13, 88 S.Ct. 1868.

The elements of a claim for false arrest under § 1983 are substantially derived from New York law. *See Marshall v. Sullivan, 105 F.3d 47 (2d Cir. 1996)*. A plaintiff claiming false arrest must establish that: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Id.* Probable cause is a complete defense to a false arrest claim. *See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)* ("[t]he existence of probable cause ... is a complete defense to an action for false arrest"). However, "[w]hen planted evidence is the basis for an arrest, officers accused of planting the evidence cannot assert probable cause as a reason to dismiss a claim for false arrest." *Hill v. Melvin*, No. 05 Civ. 6645 (AJP), 2006 WL 1749520, at \* 11 (S.D.N.Y. June 27, 2006), *aff'd*, 323 Fed.Appx. 61 (2d Cir. 2009).

The Court finds that the facts alleged in the complaint support a § 1983 claim for false arrest in violation of Plaintiff's Fourth Amendment rights against Anderson and Perkins sufficient to survive initial review and recommends that they be directed to respond.

Case 5:21-cv-00085-DNH-TWD   Document 13   Filed 07/21/21   Page 61 of 119

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 3822112

### 4. Malicious Prosecution

The elements of a malicious prosecution claim under § 1983 are substantially the same as the elements under New York law. *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003). To state a malicious prosecution claim under New York law, the plaintiff must allege facts plausibly showing: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice. *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010). In addition, the Second Circuit requires that a plaintiff demonstrate that there was a "post arraignment seizure," since a § 1983 malicious prosecution claim is "grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013).

Plaintiff has alleged he was arrested and charged with drug possession and intent to sell, as well as trespass and false impersonation. However, the complaint is devoid of allegations regarding arraignment on the charges, whether there was a post arraignment seizure, whether Plaintiff was ultimately prosecuted on the charges, and, if so, whether or not the outcome was favorable to him. Therefore, the Court finds that Plaintiff has failed to state a claim for malicious prosecution against Anderson and Perkins and recommends dismissal with leave to amend in light of Plaintiff's *pro se* status. [6]

[6]    The Court is unable to determine the applicability, if any, of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) at this point for the same reason.

### 5. Deprivation of Property

**\*7** Plaintiff has alleged that he had $4,000 on his person when Anderson and Perkins stopped him, that the two officers documented $776 to support the drug charges, and that Plaintiff has no idea what happened to the rest of the money, none of which was returned to him. (Dkt. No. 1 at 13.) The Due Process Clause of the Fourteenth Amendment prohibits states from taking property without due process. U.S. CONST. amend XIV, § 1. Where a state provides a post-deprivation remedy for the unauthorized taking, such a remedy constitutes due process and no violation of the Due Process Clause can occur. *Parratt v. Taylor*, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (*overruled on*

*other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

Depending on how the facts develop in the litigation with regard to the allegedly missing $3224 and the confiscated $776, it may turn out that New York provides a post-deprivation remedy to recover the missing finds. However, the Court finds at this juncture that Plaintiff has alleged facts sufficient to survive initial review of his Fourteenth Amendment deprivation of property without due process claim and recommends that Defendants Anderson and Perkins be directed to respond.

### B. Tyson Ruecker

Plaintiff has alleged in conclusory fashion that Ruecker was extremely negligent in not adequately training and supervising the officers he was using in connection with Plaintiff's arrest. (Dkt. No. 1 at 13.) Personal involvement in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). "Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of a subordinate employee will not suffice to establish the requisite personal involvement and support a finding of liability" on a § 1983 claim. *White v. Fischer*, No. 9:09-CV-240 (DNH/DEP), 2010 WL 624081, at \* 6 (N.D.N.Y. Feb. 18, 2010) (citing *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d. Cir. 2009)). However, the Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). [7]

[7]    The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

Plaintiff has alleged in his complaint that Ruecker actively assisted Anderson and Perkins in framing Plaintiff, thereby

Case 5:21-cv-00085-DNH-TWD   Document 13   Filed 07/21/21   Page 62 of 119

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)
2017 WL 3822112

participating directly in Plaintiff's false arrest, by deliberately delaying the filling out of form DD5 regarding a tip from a confidential informant until after Anderson and Perkins had planted the crack cocaine allegedly used to frame Plaintiff. *Id.* at 14, 88 S.Ct. 1868. Plaintiff has also alleged in wholly conclusory fashion that Ruecker conspired to plant drugs on him. *Id.*

Wholly conclusory claims of conspiracy are properly dismissed *sua sponte* on initial review. *See Johnson v. Goord*, 12 Fed.Appx. 22, 23 (2d Cir. 2000); *Smith v. Hochul*, No. 13-CV-1106A (MAT), 2015 WL 1432644, at * 1, *7 (W.D.N.Y. March 26, 2015) (dismissal on initial review of wholly conclusory conspiracy claim). Therefore, the Court recommends that Plaintiff's conspiracy claim against Ruecker under § 1983 be dismissed for failure to state a claim with leave to amend in light of Plaintiff's *pro se* status.

**\*8** Because Plaintiff has alleged facts in his complaint supporting his claim that Ruecker was directly involved in the alleged planting of evidence, thus satisfying one of the *Colon* factors, the Court recommends that Plaintiff's false arrest claim against Ruecker survive initial review and that Ruecker be directed to respond.

### C. Cheban and Norris

Plaintiff has alleged in conclusory fashion that he is seeking damages from Defendants Cheban and Norris for "negligence, recklessness, and intentional conduct including assault and battery, excessive force, false arrest, false imprisonment, and malicious prosecution." (Dkt. No. 1 at 6.) However, the only factual allegations in the complaint regarding Cheban is that he was contacted by Anderson and Perkins to transport Plaintiff to the precinct, and that Cheban patted Plaintiff down before putting him in the car and then drove him to the precinct. *Id.* at 11, 88 S.Ct. 1868. The complaint appears to be devoid of any factual allegations regarding Norris.

Because allegations of personal involvement in constitutional deprivations is a prerequisite to an award of damages under § 1983, *Wright*, 21 F.3d at 501, the Court recommends that Plaintiff's claims against Defendants Cheban and Norris be dismissed for failure to state a claim with leave to amend in light of Plaintiff's *pro* se status.

### D. City of Albany

Plaintiff has named the City of Albany as a Defendant in this action for negligent hiring, retention, and training of its agent, servants, and employees, including the Defendant police officers. (Dkt. No. 1 at 6.) "[M]unicipalities may be held liable under § 1983 only for acts for which the municipality is actually responsible." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

> A municipality may be liable under § 1983 based on: (1) an official promulgated policy sanctioned or ordered by the municipality, *see Pembaur*, 475 U.S. at 480, 106 S.Ct. 1292; (2) a pervasive custom or practice of which the municipality is or should be aware, *see Praprotnik*, 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); (3) a single act by a municipal employee who has final policy making authority with respect to the area in question, *see McMillian v. Monroe Cnty.*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); or (4) the municipality fails to train its employees, where this rises to the level of deliberate indifference to the constitutional right of others, *see City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

*Naravez v. City of New York*, 16 Civ. 1980 (GBD), 2017 WL 1535386, at * 7 (S.D.N.Y. April 17, 2017). In order to state a claim against a municipality regarding training deficiencies, a plaintiff's allegations must specifically identify the training deficiencies that are "closely related to" or "actually caused the plaintiff's injuries." *Canton*, 489 U.S. at 391, 109 S.Ct. 1197; *see also Triano v. Town of Harrison, N.Y.*, 895 F.Supp.2d 526, 539-40 (S.D.N.Y. 2012) (collecting cases and dismissing a failure to train claim where plaintiff did "no more than make conclusory assertions" that the defendant failed to train its employees properly, without "providing any

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 63 of 119

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 3822112

supporting factual detail about alleged deficiencies in the training program.").

Conclusory allegations of failure of a municipality to properly hire, train, and supervise employees "without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fail to state a claim against [a municipality] that is plausible on its face." *Gray-Davis v. New York*, No. 5:14-CV-1490 (GTS/TWD), 2015 WL 2120518, at * 6 (N.D.N.Y. May 5, 2015) (citing *Trombley*, 550 U.S. at 570, 127 S.Ct. 1955); *Hall v. Smith*, 170 Fed.Appx. 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that a municipality had a policy of grossly inadequate supervision and training of its employees).

 *9 Plaintiff's complaint is devoid of the requisite factual allegations to support his claim against the City of Albany for failure to properly hire, supervise, and train its employees, including the police officers named as defendants in this case. Therefore, the Court recommends that his claim against the City be dismissed for failure to state a claim with leave to amend in light of Plaintiff's *pro se* status.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED** that Defendants Anderson and Perkins be required to respond to the Fourth Amendment claims for unreasonable search and seizure, excessive force, and false arrest; and his Fourteenth Amendment Due Process claim for deprivation of property alleged in Plaintiff's complaint (Dkt. No. 1); and it is further

**RECOMMENDED** that Plaintiff's claim for malicious prosecution against Defendants Anderson and Perkins be **DISMISSED** for failure to state a claim with leave to amend; and it is further

**RECOMMENDED** that Plaintiff's conspiracy claim against Ruecker be **DISMISSED** for failure to state a claim with leave to amend, and that Ruecker be required to respond to Plaintiff's § 1983 false arrest claim against him; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendants Cheban, Norris, and the City of Albany be **DISMISSED** for failure to state a claim with leave to amend; and it is further

**RECOMMENDED** that Plaintiff be instructed by the District Court that: (1) any amended complaint filed by him must be a complete document in and of itself and must include all of his claims against each of the Defendants, including both those claims in the original complaint with regard to which Defendants have been ordered to respond by the District Court, and claims with regard to which Plaintiff has been granted leave to amend by the District Court, with no incorporation of a prior pleading by reference; (2) an amended complaint will supersede Plaintiff's original complaint and become the operative pleading in the case; and (3) any amended complaint filed by Plaintiff must comply with the pleading requirements of Rule 10(b) of the Federal Rules of Civil Procedure that claims be set forth in separately numbered paragraphs, with each paragraph including a single set of circumstances to the extent practicable; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[8]     If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 64 of 119

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)
2017 WL 3822112

next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3822112

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 65 of 119

Hawthorne v. Ruecker, Not Reported in Fed. Supp. (2017)

2017 WL 4351520

2017 WL 4351520
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darryl L. HAWTHORNE, Plaintiff,

v.

Tyson RUECKER, Albany Police Officer, in His
Individual and Official Capacities; Devin Anderson,
Albany Police Officer, in His Individual and Official
Capacities; Sean Perkins, Albany Police Officer,
in His Individual and Official Capacities; Alex
Cheban, Albany Police Officer, in His Individual
and Official Capacities; John Norris, Albany
Police Officer, in His Individual and Official
Capacities; and The City of Albany, NY, Defendants.

1:17-CV-0716 (GTS/TWD)
|
Signed 10/02/2017

**Attorneys and Law Firms**

DARRYL L. HAWTHORNE, 40 Anne Street, New York,
New York 10038, Pro Se.

## DECISION and ORDER

HON. GLENN T. SUDDABY, Chief United States District
Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Darryl L. Hawthorne ("Plaintiff") against
the above-captioned police officers of the City of Albany
and the City of Albany, New York ("Defendants") asserting
claims of unreasonable search and seizure, excessive force,
and false arrest under 42 U.S.C. § 1983, is United
States Magistrate Judge Thérèse Wiley Dancks' Report-
Recommendation recommending that certain of Plaintiff's
claims be dismissed with leave to amend (i.e., his malicious
prosecution claim against Defendants Anderson and Perkins,
his conspiracy claim against Defendant Ruecker, and his
claims against Defendants Cheban, Norris and the City of
Albany), and that the remainder of Plaintiff's claims survive
the Court's *sua sponte* review of Plaintiff's Complaint (i.e.,
his Fourth Amendment claims of unlawful search and seizure,
excessive force, and false arrest asserted against Defendants
Anderson and Perkins, his Fourteenth Amendment due

process claim for deprivation of property asserted against
Defendants Anderson and Perkins, and his Plaintiff's Fourth
Amendment false arrest claim against Defendant Ruecker).
(Dkt. No. 4.) Plaintiff has not filed an objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Dancks' thorough Report-
Recommendation, the Court can find no clear-error in
the Report-Recommendation. [1] Magistrate Judge Dancks
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein, and Plaintiff is
granted leave to file an Amended Complaint in accordance
with the recommendations of the Report-Recommendation.

[1]    When no objection is made to a report-
recommendation, the Court subjects that report-
recommendation to only a clear error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a "clear error"
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at *1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-
Recommendation (Dkt. No. 4) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are **DISMISSED
without prejudice and with leave to amend within
THIRTY (30) DAYS of the date of this Decision and
Order**:

(1) Plaintiff's malicious prosecution claim asserted against
Defendants Anderson and Perkins;

(2) Plaintiff's conspiracy claim asserted against Defendant
Ruecker;

*2 (3) Plaintiff's claims against Defendants Cheban, Norris, and the City of Albany; and it is further

**ORDERED** that the following claims **SURVIVE** the Court's *sua sponte* review of Plaintiff's Complaint:

(1) Plaintiff's Fourth Amendment claims of unreasonable search and seizure, excessive force and false arrest asserted against Defendants Anderson and Perkins;

(2) Plaintiff's Fourteenth Amendment due process claim for deprivation of property asserted against Defendants Anderson and Perkins;

(3) Plaintiff's Fourth Amendment false arrest claim asserted against Defendant Ruecker; and it is further

**ORDERED** that any Amended Complaint filed by Plaintiff must be a complete document in and of itself and must not incorporate a prior pleading by reference; any Amended Complaint must include all of Plaintiff's claims against each of the Defendants, including both those claims in the original Complaint with regard to which Defendants have been ordered to respond by the District Court, and claims with regard to which Plaintiff has been granted leave to amend by the District Court; such an the Amended Complaint will supersede Plaintiff's original Complaint in its entirety and become the operative pleading in this case; and such an Amended Complaint must comply with the pleading requirements of Fed. R. Civ. P. 10(b) such that each claim must be set forth in separately numbered paragraphs and each paragraph must include a single set of circumstances or facts to the extent practicable; and it is further

**ORDERED** that the Clerk of Court is directed to issue Summonses and forward them, along with copies of the Complaint, to the U.S. Marshal for service upon Defendants Anderson, Perkins, and Ruecker, and Defendants are directed to respond in accordance with the Federal Rules of Civil Procedure; and it is further

**ORDERED** that, should Plaintiff file an Amended Complaint, that Amended Complaint be referred to Magistrate Judge Dancks for her review.

### All Citations

Not Reported in Fed. Supp., 2017 WL 4351520

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 1024354
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javar MALLOY, Plaintiff,

v.

Jacob SOPCHAK, Matthew Seeber, John/Jane Doe
#1, John/Jane Doe #2, John/Jane Doe #3, Megan
C. Spillane, P. David Soares, Brendan Cox, Albany
County/City, County of Albany District Attorney
Office, and Albany Police Department, Defendants.

Civ. No. 1:18-CV-1460 (BKS/DJS)
|
Signed 01/28/2019

**Attorneys and Law Firms**

JAVAR MALLOY, Plaintiff, Pro Se, Albany County
Correctional Facility, 840 Albany Shaker Road, Albany, NY
12211.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed
by Plaintiff *pro se* Javar Malloy. Dkt. No. 1, Compl. Plaintiff
has not paid the filing fee, but instead submitted a Motion to
Proceed *in forma pauperis* ("IFP"). Dkt. No. 2, IFP App. By
separate Order, this Court granted Plaintiff's Application to
Proceed IFP. Now, in accordance with 28 U.S.C. §§ 1915(e)
and 1915A, the Court will *sua sponte* review the sufficiency
of the Complaint.

**I. DISCUSSION**

**A. Pleading Requirements**

Section 1915(e) of Title 28 of the United States Code directs
that, when a plaintiff seeks to proceed *in forma pauperis*, "the
court shall dismiss the case at any time if the court determines
that ... the action or appeal (i) is frivolous or malicious; (ii)
fails to state a claim on which relief may be granted; or (iii)
seeks monetary relief against a defendant who is immune
from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, under

28 U.S.C. § 1915A, a court must review "a complaint in a civil
action in which a prisoner seeks redress from a governmental
entity or officer or employee of a governmental entity" and
must "identify cognizable claims or dismiss the complaint, or
any portion of the complaint, if the complaint (1) is frivolous,
malicious, or fails to state a claim upon which relief may
be granted; or (2) seeks monetary relief from a defendant
who is immune from such relief." *Id.* at § 1915A(a) & (b).
Thus, it is a court's responsibility to determine that a plaintiff
may properly maintain his complaint before permitting him
to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to
show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912
F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme
caution ... in ordering *sua sponte* dismissal of a *pro se*
complaint *before* the adverse party has been served and both
parties (but particularly the plaintiff) have had an opportunity
to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.
1983) (emphasis in original) (citations omitted). Therefore, a
court should not dismiss a complaint if the plaintiff has stated
"enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing
*Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the
court should construe the factual allegations in the light most
favorable to the plaintiff, "the tenet that a court must accept
as true all of the allegations contained in a complaint is
inapplicable to legal conclusions." *Id.* "Threadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Id.* (citing *Bell Atl.
Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-
pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged
– but it has not 'show[n]'–'that the pleader is entitled to
relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2) ). A
pleading that only "tenders naked assertions devoid of further
factual enhancement" will not suffice. *Id.* at 678 (further
citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the
proposition that Federal Rule of Civil Procedure 8 "demands
more than an unadorned, the-defendant-unlawfully-harmed-
me accusation"). Allegations that "are so vague as to fail
to give the defendants adequate notice of the claims against
them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed.
Appx. 102, 104 (2d Cir. 2009).

Malloy v. Sopchak, Not Reported in Fed. Supp. (2019)

2019 WL 1024354

### B. Allegations Contained in Plaintiff's Complaint

**\*2** The Complaint concerns events relating to Plaintiff's arrest and subsequent legal proceedings before an Albany County Grand Jury. *See generally* Compl. Plaintiff, an African American male, alleges that in the early morning hours of July 5, 2018, he was walking in the City of Albany between a family member's home and a store with two other African American males. *Id.* at ¶¶ 9, 18-19. Plaintiff alleges that he was wearing a white t-shirt, blue and black Hawaiian shorts, and blue and black sneakers. *Id.* at ¶ 23. He further alleges that Defendants Sopchak and Seeber, members of the Albany Police Department, received a dispatch call concerning a single African American male in possession of a gun wearing a white t-shirt, black pants, and black and white sneakers. *Id.* at ¶ 20. Despite the claimed disparity in description, and allegedly as a result of racial bias, Defendants approached Plaintiff with their guns drawn. *Id.* at ¶ 25. Plaintiff then fled into a dark alley. *Id.* at ¶ 26. Defendants Sopchak and Seeber, assisted by two John Doe Defendants, eventually apprehended Plaintiff. *Id.* at ¶¶ 28-29. Plaintiff alleges that excessive force was used during his arrest and that it was made without legal authority. *Id.* at ¶¶ 28-30 & 37.

Plaintiff then alleges that Defendant Spillane, an Assistant District Attorney, at the direction of District Attorney Soares presented false and misleading testimony to a Grand Jury. *Id.* at ¶ 34. Plaintiff alleges that the conduct of all Defendants was enabled by "longstanding perpetual policy, custom or pra[c]tice" of the County and City of Albany, the Albany Police Department, and the Albany County District Attorney's Office to inadequately train and supervise staff to encourage constitutional violations of the sort alleged in the Complaint. *Id.* at ¶¶ 58-63.

The Complaint asserts the following causes of action:

(1) a claim under 42 U.S.C. § 1983 against the individual Defendants;

(2) a state law claim for assault and battery against Defendants Sopchak, Seeber, and John Does # 1 and 2;

(3) claims under 42 U.S.C. §§ 2000d and 3789d against Defendants Sopchak, Seeber, and John Does # 1 and 2;

(4) a claim for false arrest and illegal imprisonment against Defendants Sopchak, Seeber, and John Does # 1, 2, and 3;

(5) a civil conspiracy claim under 42 U.S.C. §§ 1985 and 1986 against Defendants Sopchak, Seeber, Spillane, and John Doe # 3;

(6) a section 1983 claim for retaliatory arrest against Defendants Sopchak, Seeber, and John Does # 1, 2, and 3; and

(7) a municipal liability claim against the City and County of Albany, [1] the Albany County District Attorney's Office, and Albany Police Department.

[1]    The Complaint names "Albany County/City" as a Defendant. The Court construes Plaintiff's allegations to assert claims against both the City of Albany and the County of Albany.

### C. Sufficiency of the Pleading

Plaintiff's specific causes of action are considered below.

Plaintiff's First Cause of Action generally stated seeks relief for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Compl. at ¶ 42. In this particular claim, however, he fails to articulate precisely what constitutional rights are at issue. The Complaint references violations of the First, Fourth, Eighth, Ninth, and Fourteenth Amendments. *See, e.g.*, Compl. at ¶ 39(a). While the Complaint elsewhere specifies the basis of his First and Fourth Amendment claims, it fails to directly state the basis for claims under the other cited provisions. Accordingly, the Court recommends that this cause of action be dismissed with leave to repled so that Plaintiff can specifically identify the factual and legal basis for the remaining violations alleged in the Complaint.

Plaintiff's second claim alleges assault and battery. Compl. at ¶ 44. "To succeed on an assault or battery claim in the law enforcement context, a plaintiff must demonstrate that defendants' conduct was not reasonable within the meaning of the New York statute concerning justification for law enforcement's use of force in the course of performing their duties." *Simmons v. Cowan*, 2015 WL 12513461, at \*5 (N.D.N.Y. Mar. 11, 2015) (internal quotations omitted). The facts as alleged must be accepted as true at this point and in alleging that Defendants tackled, twisted his arm, and caused other harm, Plaintiff has sufficiently alleged a claim for assault and battery to require a response from Defendants.

**\*3**  Plaintiff's third claim is a statutory discrimination claim under 34 U.S.C. § 10228 [2] and 42 U.S.C. § 2000d. Compl. at ¶¶ 47-48. This claim is asserted only against individual Albany Police Department officials and alleges that Defendants' actions on the day in question were motivated by unlawful racial bias. *Id.* These statutes prohibit discrimination against members of protected classes in the administration of programs receiving federal funding. *Mondragon v. Baruch Coll.*, 2018 WL 4689192, at \*3 (E.D.N.Y. Sept. 28, 2018) (section 200d); *Macon v. United States*, 2006 WL 3041104, at \*2 (D. Conn. Oct. 23, 2006) (referencing former section 3789d). The Court recommends that Plaintiff's claim under section 2000d be dismissed with prejudice because there is no individual liability under this provision. *Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018); *Hickey v. Myers*, 852 F. Supp. 2d 257, 267 (N.D.N.Y. 2012).

[2]  The Complaint cites 42 U.S.C. § 3789d but that provision has been recodified as section 10228.

The Court also recommends dismissal of Plaintiff's claim under section 10228 for several reasons. First, that provision contains an exhaustion of administrative remedies provision that is a predicate to the filing of a civil action and the Complaint makes no allegation that Plaintiff has satisfied that requirement. *See* 34 U.S.C. § 10228 (c)(4)(A). Second, the Complaint is devoid of any allegations regarding what, if any, federal funding is at issue in this case or what program Plaintiff claims to have been denied access to. Given that these deficiencies may, in theory, be rectified by better pleading, the Court recommends that dismissal as to this claim be without prejudice to Plaintiff's ability to amend the Complaint.

Next, Plaintiff asserts a false arrest claim. He alleges that his arrest was made without probable cause because at the time no crime had been reported to police, Plaintiff did not match the description of the person police were interested in, and his arrest was motivated by racial animus. Compl. at ¶¶ 22, 24, & 50. The elements of a false arrest claim are "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996). Accepting Plaintiff's allegations as true at this early stage of the litigation, he has sufficiently alleged facts requiring that Defendants respond to this claim.

The Fifth Cause of Action alleges that Defendants Sopchak, Seeber, Spillane, and John Doe # 3 conspired to falsely arrest and prosecute him and are thus liable under 42 U.S.C. §§ 1985 & 1986. "The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

At the outset, this claim should be dismissed as to Defendant Spillane on the ground that she is protected by absolute immunity. [3]  Prosecutors enjoy absolute immunity from suit for actions taken in the performance of their duties. *Hartman v. Moore*, 547 U.S. 250, 261-62 (2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), for the proposition that prosecutors are absolutely immune for actions related to the prosecutorial function). The law is well established that "absolute immunity extends to those acts, whether in or out of the courtroom, which occur in the course of the [prosecutor's] role as an advocate for the State.' " *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) ). Here, the allegations against Spillane are that she introduced false or misleading testimony to a Grand Jury. Compl. at ¶ 34. "The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity under *Imbler*." *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984); *Morris v. Haas*, 2018 WL 5017742, at \*2 (N.D.N.Y. Oct. 16, 2018); *Urrego v. United States*, 2005 WL 1263291, at \*2 (E.D.N.Y. May 27, 2005) ("It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false."). The fact that Plaintiff's claim is premised on an alleged conspiracy does not deprive Spillane of absolute immunity. *Pinaud v. Cty. of Suffolk*, 52 F.3d at 1148. Accordingly, the claim as to Defendant Spillane should be dismissed with prejudice. [4]

[3]  The Court notes that although immunity from suit is a defense that would be raised by a defendant, the Second Circuit has held that, for purposes of an initial review under 28 U.S.C. § 1915, a court may find that a complaint is based on an indisputably

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 70 of 119

Malloy v. Sopchak, Not Reported in Fed. Supp. (2019)

2019 WL 1024354

meritless legal theory if a defense "appears on the face of the complaint," and may validly raise such a claim *sua sponte. Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (collecting cases throughout the various Circuit Courts of Appeal that have upheld § 1915 dismissals based upon defenses that appear on the face of the complaint). The Court notes, as set forth below, that Plaintiff will have an opportunity to present any objections he has to this Court's recommendations to the assigned District Judge.

4        Although Defendant Soares is not specifically identified as a party to this claim, the only factual allegations against him are that he directed Spillane to engage in the challenged conduct. As the District Attorney, Soares is entitled to same absolute immunity and it is recommended he be dismissed as a Defendant.

**\*4**  The Court further recommends that the remainder of Plaintiff's conspiracy claim, that John Doe # 3 endorsed the arresting officers' reports despite knowing them to be untrue in order to "effectuate" a conspiracy, be dismissed with prejudice. Sopchak, Seeber, and John Doe # 3 are all alleged to be employees of the Albany Police Department. Compl. at ¶ 10. "[T]he intracorporate conspiracy doctrine, which provides that officers, agents, and employees of a single corporate entity are legally incapable of conspiring together, applies to § 1985 conspiracy claims." *Dabney v. Sawyer*, 2015 WL 1383828, at \*13 (N.D.N.Y. Mar. 25, 2015) (internal quotation omitted). Here, because the remaining Defendants to this claim are all employees of the Albany Police Department and the alleged conspiracy related to their work activities, Plaintiff's "conspiracy claims are barred by the intracorporate conspiracy doctrine." *Murphy v. City of Stamford*, 634 Fed. Appx. 804, 805 (2d Cir. 2015).

The Court also recommends that Plaintiff's claim under section 1986 be dismissed because liability under section 1985 is a necessary predicate to a claim under section 1986 which Plaintiff cannot satisfy here. *Shakur v. Graham*, 2015 WL 1968492, at \*17 (N.D.N.Y. May 1, 2015) (citing *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000) (claim under § 1986 must be predicated on a valid § 1985 claim) ).

Plaintiff's Sixth Cause of Action alleges a First Amendment claim for retaliatory arrest, *i.e.*, that he was arrested for exercising his right not to be questioned or speak to police. Compl. at ¶ 56. "To prevail on a First Amendment theory of retaliatory arrest, [Plaintiff] must prove that '(1) he has an

interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.' " *Cabrera v. City of New York*, 2018 WL 4636798, at \*8 (E.D.N.Y. Sept. 27, 2018) (quoting *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) ). While there is clearly a constitutional right not to speak, *see Burns v. Martuscello*, 890 F.3d 77, 85 (2d Cir. 2018), it is far from clear that an individual exercises that right by fleeing from police as Plaintiff did here. Compl. at ¶ 26. Considering the special solicitude afforded *pro se* litigants, however, the Court recommends that this claim be permitted to proceed, and that Defendants respond to the allegations. *Williams v. Norris*, 2018 WL 5848851, at \*4 (N.D.N.Y. Oct. 1, 2018), *report and recommendation adopted*, 2018 WL 5843155 (N.D.N.Y. Nov. 8, 2018) (liberally construing pleading on initial review).

Finally, Plaintiff asserts a municipal liability claim against the City and County of Albany, the Albany County District Attorney's Office, and the Albany Police Department. This claim is based on alleged policies and/or customs by these entities. Compl. at ¶¶ 58-63. Generally stated the allegations in the Complaint sufficiently allege a municipal liability claim under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) to require that Defendants answer the Complaint. The claims against the City and County of Albany, therefore, should be allowed to proceed. Claims against the District Attorney's Office and the Albany Police Department, however, should be dismissed as they are not separate suable agencies for purposes of a *Monell* claim. *Cooper v. Proud*, 2018 WL 2729249, at \*4 (N.D.N.Y. Mar. 22, 2018), *report and recommendation adopted*, 2018 WL 2727873 (N.D.N.Y. June 6, 2018); *Eaddy v. City of New York*, 2011 WL 6351866, at \*3 (S.D.N.Y. Dec. 16, 2011); *Griffith v. Sadri*, 2009 WL 2524961, at \*8 (E.D.N.Y. Aug. 14, 2009).

## II. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the following be **DISMISSED with prejudice**:

**\*5**  (1) The Fifth Cause of Action;

(2) Claims under 42 U.S.C. § 2000d;

2019 WL 1024354

(3) Claims against Defendants Albany County District Attorney's Office and Albany Police Department; and it is further

**RECOMMENDED**, that the Plaintiff's First Cause of Action and claim under 34 U.S.C. § 10228 be **DISMISSED without prejudice with leave to amend**; and it is further

**RECOMMENDED**, that Plaintiff's remaining claims be permitted to proceed, and that Defendants answer the Complaint; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days [5] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) ); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[5]    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1024354

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 1025765
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javar MALLOY, Plaintiff,
v.
Jacob SOPCHAK, et al., Defendants.

1:18-CV-1460 (BKS/DJS)
|
Signed 03/04/2019

**Attorneys and Law Firms**

Javar Malloy, Albany County Correctional Facility, 840
Albany Shaker Road, Albany, NY 12211, Plaintiff, pro se.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge

*1 Plaintiff Javar Malloy commenced this action asserting
claims under 42 U.S.C. §§ 1983, 1985 and 1986; 42 U.S.C.
§ 2000d and 3789d; and New York state law arising out
of his arrest by Albany Police Department Officers and
subsequent prosecution. (Dkt. No. 1). Plaintiff sought leave
to proceed in forma pauperis. (Dkt. No. 2). This matter
was assigned to United States Magistrate Judge Daniel J.
Stewart who reviewed the complaint under 28 U.S.C. §§
1915(e) and 1915A and, on January 28, 2019, issued a
Report-Recommendation and Order, granting Plaintiff leave
to proceed in forma pauperis and recommending that certain
of Plaintiff's claims be dismissed. (Dkt. No. 4). Specifically,
Magistrate Judge Stewart recommended that the following
claims be dismissed with prejudice: 1) the Fifth Cause of
Action; 2) claims under 42 U.S.C. § 2000d; and 3) claims
against Defendants Albany County District Attorney's Office
and Albany Police Department. Magistrate Judge Stewart
recommended that Plaintiff's First Cause of Action and
his claim under 34 U.S.C. § 10228 be dismissed without
prejudice with leave to amend, and that Plaintiff's remaining
claims be permitted to proceed. (*Id.*, at 12–13). Magistrate
Judge Stewart advised Plaintiff that under 28 U.S.C. §
636(b)(1), he had fourteen days within which to file written
objections to the report, and that the failure to object to
the report within fourteen days would preclude appellate
review. (Dkt. No. 4, at 13). No objections to the Report-
Recommendation have been filed.

As no objections to the Report-Recommendation have been
filed, and the time for filing objections has expired, the
Court reviews the Report-Recommendation for clear error.
*See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y.
2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983
amendment. Having reviewed the Report-Recommendation
for clear error and found none, the Court adopts the Report-
Recommendation in its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 4) is
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims in the Complaint (Dkt.
No. 1) are **DISMISSED with prejudice**:

(1) The Fifth Cause of Action;

(2) Claims under 42 U.S.C. § 2000d;

(3) Claims against Defendants Albany County District
Attorney's Office and Albany Police Department; and it is
further

**ORDERED** that the Plaintiff's First Cause of Action and his
claim under 42 U.S.C. § 10228 are **DISMISSED without
prejudice with leave to amend;** and it is further

**ORDERED** that Plaintiff's remaining claims are permitted to
proceed; and it is further

**ORDERED** that Plaintiff is granted leave to file an Amended
Complaint **within thirty (30) days** of the date of this Order.
Any Amended Complaint must be a complete pleading which
will replace the current Complaint in total; and it is further

**ORDERED** that if Plaintiff files an Amended Complaint
within thirty (30) days of the date of this Order, the Amended
Complaint shall be referred to Magistrate Judge Stewart for
review; and it is further

*2 **IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1025765

**Malloy v. Sopchak, Not Reported in Fed. Supp. (2019)**

2019 WL 1025765

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

KeyCite Yellow Flag - Negative Treatment
Declined to Follow by  Lewis v. Hanson,    N.D.N.Y.,  April 9, 2020

2011 WL 1453789
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Susan Lee HARE, Plaintiff,
v.
James HAYDEN et al., Defendants.

No. 09 Civ. 3135(RWS).
|
April 14, 2011.

OPINION

SWEET, District Judge.

 **\*1**  Defendants Reverend Maria Lopez ("Lopez"), Deputy Superintendent James Hayden ("Hayden"), and Grievance Supervisor Kim Watson ("Watson") (collectively, "Defendants") have filed motions for summary judgment. For the reasons stated below, these motions are granted.

### Prior Proceedings

Plaintiff Susan Lee Hare ("Hare" or "Plaintiff") filed her complaint on April 1, 2009, alleging misconduct by Superintendant Ada Perez, Superintendant Elizabeth Williams, Hayden, Lopez, and Watson. Defendants Perez, Williams, Hayden, and Watson answered on September 16, 2009. Defendant Lopez answered on August 31, 2010. On November 22, 2010, the Court signed off on the stipulated dismissal of Defendants Perez and Williams.

Defendant Lopez and Defendants Hayden and Watson filed separate motions for summary judgment on December 13, 2010 and December 14, 2010, respectively. These motions were heard on submission on January 19, 2011.

### Statement of Facta

In August 2008, Plaintiff was programmed as a Catholic clerk assisting Father O'Shea, the Catholic Chaplain at Bedford Hills Correctional Facility ("BHCF"). She was programmed for both the morning and afternoon shifts. See

Deposition of Susan Hare, attached to Declaration of John Knudsen ("Knudsen Dec") as Exhibit A ("Hare Dep."), at 15. On August 14, 2008, a meeting occurred between Plaintiff, Father O'Shea, and Hayden. At that meeting, Father O'Shea recommended that Plaintiff remain the Catholic clerk after his retirement on August 15, and Hayden agreed that Plaintiff remain in the position. Affirmation of James Hayden ("Hayden Aff."), ¶ 3, attached to Knudsen Dec. as Exhibit C.

Plaintiff then sent a letter dated August 16, 2008 to Hayden in which she made several allegations against Reverend Lopez, including that Lopez met with Hare on August 15, that Lopez ordered the moving of a cabinet with Catholic items, and that Lopez ordered her clerks to pack up the Catholic items in the Sacristy into bags and put them out for the trash. See Hare Letter dated Aug. 18, 2008, attached to Knudsen Dec. at Exhibit B at Hare 27–31. The underlying theme of Plaintiff's letter appears to have been that Reverend Lopez was using her position to defile the Catholic religion. See Id. at 30 ("the Catholic (sic) have been defiled by this woman and her community.") In response to Plaintiff's letter and to address the allegations, Hayden set up a meeting on August 18, 2008 with Plaintiff, Lopez and two other inmates, Tuttle and Ramsey. Hayden Aff., ¶ 5.

The August 18 meeting between Plaintiff and Reverend Lopez was very contentious. Hayden Aff. ¶ 6. During the meeting, Hayden attempted to verify the allegations made in Plaintiff's August 16 letter. See Hare 110–11. He could not substantiate any of Plaintiff's allegations and determined that they were largely hearsay. Id.; Hayden Aff, ¶ 6. According to Hayden, Lopez did not attempt to attack Plaintiff during that meeting. Hayden Aff. ¶ 7; Affirmation of John Ruiz, ¶ 2, attached to Knudsen Dec as Exhibit D.

 **\*2**  Plaintiff contends that on August 18, Lopez verbally abused and physically threatened her in the chapel. Pl. Opp. Aff., at 4–7. Plaintiff claims that this interaction led to an investigation which prevented her from working as Catholic clerk. Id. at 4. It is unclear whether this interaction was separate from the August 18, 2008 meeting.

Plaintiff filed a grievance alleging that Reverend Lopez verbally harassed her during the August 18 meeting. See Hare 104–105. Hayden notified the Superintendent's Office of his personal observations during that meeting, which were incorporated into the Superintendent's response. See Hare 103; Hayden Aff., ¶ 8. Following the August 18 meeting, Plaintiff did not appear for her program assignment as

Catholic clerk for two weeks, after which time Reverend Lopez forwarded a memorandum to counselor Greenfield on September 2, 2008, requesting that Plaintiff be removed from her position as Catholic clerk and noting that no new Catholic clerk should be named until a Catholic Priest had been hired. *See* Hare 42. Plaintiff contends that this report was false and that she showed up for work but was sent away. Pl. Opp. Aff. at 9. Counselor Greenfield contacted Hayden to discuss Lopez's request for Plaintiff's removal. Hayden Aff., ¶ 9. According to Hayden, Plaintiff was removed from her Catholic clerk position by him on September 8, 2008, at the latest. Hayden Aff., ¶ 11. Plaintiff contends that she was not removed until September 15, 2008. Pl. Opp. Aff. at 9.

Hayden claims to have removed Plaintiff from her position for multiple reasons. Initially, it was reported that plaintiff failed to report for two weeks for programming after Father O'Shea retired. Hayden Aff., ¶ 10; Hare 42. Also, Hayden determined that Plaintiff was being disruptive to the provision of Catholic services at Bedford Hills. Hayden Aff. ¶ 10. Hayden had investigated plaintiffs numerous allegations about Reverend Lopez and her alleged interference with the Catholic programs and could not substantiate any of them. *Id.* For example, Hayden states that Plaintiff was telling inmates and outside civilians in the Catholic community that Lopez had the cabinet with Catholic items in it moved, and had articles removed from the Sacristy. *Id.* Hayden had received a call from Deacon Lou Santore, a civilian volunteer, who had been told these claims by Plaintiff and was upset. Hayden investigated these claims and determined them to be inaccurate. *Id.* Instead, he determined that the cabinet was moved by a volunteer from the long-term inmate committee, and that Plaintiff appeared to be the only person with the combination to the Sacristy. *Id.;* Affirmation of Kowsillia Magoo, ¶ 4, attached to Knudsen Dec. as Exhibit E. As part of his responsibilities as Deputy Superintendent of Programs, Hayden states that he could not allow inmates to use their programming position to disrupt the inmate and civilian volunteer populations. *Id.*

 **\*3**  Additionally, Hayden discussed this issue with all the other chaplains at the facility, who agreed that Plaintiff should no longer remain as the Catholic clerk. Hayden Aff., ¶ 11. This included Sister MaryAnn Collins, who was a part-time employee at the facility and apparently effectively acted as head of the Catholic community there. *Id.* Finally, Hayden determined that Plaintiff and Reverend Lopez were not able to work together. *Id.* Plaintiff drafted a handwritten grievance complaint on September 4, 2008, in which she complained

that Reverend Lopez was retaliating against her because of her prior grievance, and asked that she "stop being harassed and retaliated against by Rev. Lopez." Hare 40–41. Defendant Watson responded to that grievance, noting that Plaintiff no longer worked as a clerk and, thus, Reverend Lopez could no longer be harassing her. Hare 39. Watson states that this was an attempt by her to informally resolve Plaintiff's grievance. Affirmation of Kim Watson ("Watson Aff."), at ¶ 3, attached as Exhibit F to Knudsen Dec. Plaintiff did not request to have the grievance formally processed, but if she had, Watson claims she would have done so. *Id.* Plaintiff contends that she took Watson's response to mean that she could not file a grievance.

### Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." [Fed.R.Civ.P. 56(c).](#) In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inference in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *[Allen v. Coughlin,](#)* 64 F.3d 77, 79 (2d Cir.1995) (internal citations and quotation marks omitted); *see also [Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,](#)* 475 U.S. 574, 587 (1986). Affidavits submitted in opposition to summary judgment must be based on personal knowledge from a competent source, and "set forth such facts as would be admissible in evidence." *[Patterson v. County of Oneida,](#)* 375 F.3d 206, 219 (2d Cir.2004) (quoting [Fed.R.Civ.P. 56(c)](#)). Hearsay or other evidence that would be inadmissible at trial cannot be credited to defeat a summary judgment motion. *See [Id.](#)* at 219 ("an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.").

### Plaintiff's Retaliation Claims are Dismissed

In order to state a valid retaliation claim, a plaintiff must allege that her actions were protected by the Constitution, and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *[Bennett v. Goord,](#)* 343 F.3d 133, 137 (2d Cir.2003) (internal citations omitted). There must be a "causal connection between the protected [conduct] and the adverse action." *[Gill v. Pidlypchak,](#)* 389 F.3d 379, 380 (2d Cir.2004) (internal citation and quotations omitted). "A plaintiff cannot state a retaliation

claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.' " *Anderson v. Lapolt,* No. 07 Civ. 1184, 2009 WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) (quoting *Friedl v. City of New York,* 210 F.3d 79, 85–86 (2d Cir.2000)); *see also Sawyer v. Jowers,* No. 08 Civ. 186, 2008 WL 4791557, at *6 (N.D.Tex. Oct. 31, 2008) ("To state a claim of retaliation, the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred") (internal citations omitted); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (if plaintiff's claim of retaliation had been based on circumstantial evidence alone, and not also supported by direct evidence of defendant's admission, Court would be inclined to grant summary judgment); *Bussey v. Phillips,* 419 F.Supp.2d 569, 585 (S.D.N.Y.2006) ("In order to survive summary judgment on a retaliation claim, a plaintiff bears the burden of showing two genuine issues of material fact: first, that the plaintiff engaged in constitutionally protected conduct, and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials.").

**\*4** Even where a plaintiff meets her burden of establishing a prima facie retaliation claim, it is still subject to dismissal if sufficient other non-retaliatory reasons to take the adverse action were present. *See Bussey,* 419 F.Supp.2d at 585; *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002). Furthermore, inmates have no right, constitutional or otherwise, to any particular job or assignment within a prison. *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987); *Hodges v. Jones,* 873 F.Supp. 737, 745 (N.D.N.Y.1995) (citing *Lane v. Reid,* 575 F.Supp. 37, 39 (S.D.N.Y.1983). Inmates can be removed from prison assignments for virtually any reason, provided that such decisions are not based on the inmate's race or religion. *Bussey,* 419 F.Supp.2d at 589 (S.D.N.Y.2006).

It should be noted that "courts must approach prisoner claims of retaliation with skepticism and particular care," as such claims are "easily fabricated" and run the risk of "unwarranted judicial intrusion into matters of general prison administration." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). *See also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (noting that prisoner retaliation claims are " 'prone to abuse' because prisoners can claim retaliation for every decision they dislike.") (quoting

*Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)); *Colon,* 58 F.3d at 872 ("because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care."); *Gill,* 824 F.2d at 194 (because of the potential for abuse, the Court of Appeals requires a "higher level of detail in pleading [retaliation claims]").

Plaintiff contends that she was removed from her position as Catholic clerk by Hayden in retaliation for her complaints against Lopez. [1] There is no dispute that Plaintiff's complaints against Lopez are protected speech and that her removal from her position as Catholic clerk was an adverse action; however, Plaintiff fails to establish the causal link between her complaints and her dismissal, particularly in light of legitimate non-discriminatory reasons for her dismissal given by Hayden.

[1]    To the extent that Plaintiff's allegations of retaliation are not contained in her complaint, but come from her deposition testimony and other filings, they are dismissed on this independent ground. *Kearney v. County of Rockland,* 373 F.Supp.2d 434,440–41 (S.D.N.Y.2005) ("plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.")

As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant. *See Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about a prior incident by another corrections officer). Here, even giving Plaintiff every reasonable inference, Plaintiff fails to establish that Hayden had a motive to retaliate arising from her complaints against Lopez, and that Hayden's retaliatory motive formed the basis for her dismissal.

**\*5** To the extent Plaintiff contends that Hayden was incompetent or covering up Lopez's misconduct, the evidence before the Court indicates otherwise. Hayden investigated

Plaintiff's claims against Reverend Lopez. The August 18, 2008 meeting between Plaintiff, Hayden and Lopez was called in order for Hayden to investigate Plaintiffs allegations in her August 16 letter, *see* Hayden Aff., ¶ 5, and at that meeting, Hayden questioned both Plaintiff and Lopez to determine the veracity of Plaintiff's allegations. *See* Hare 110–111; Hare Dep., at 73–74. Plaintiff's subsequent grievance on August 21 alleged that Lopez mistreated her during the August 18 meeting, a claim for which there was no need for Hayden to investigate since he was present for the meeting and knew what had and had not occurred. *See* Hayden Aff., ¶ 8. Finally, there is no evidence to indicate that Hayden was "covering up" for Lopez, and the record indicates that Hayden reasonably found Plaintiff's complaints against Lopez to be meritless. Plaintiff's allegations of a cover up are conclusory and are insufficient to meet Plaintiff's burden for a retaliation claim at the summary judgment stage. *See Graham,* 89 F.3d at 79.

Even if the Court were persuaded that there was a causal connection between Plaintiff's complaints against Lopez and her dismissal for her position as Catholic clerk, Hayden had valid, non-discriminatory reasons for dismissing her. "A finding of sufficient permissible reasons to justify state action is 'readily drawn in the context of prison administration where ... prison officials have broad administrative and discretionary authority.' " *Graham,* 89 F.3d at 79 (quoting *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994)). Here, Hayden identified four legitimate reasons for Plaintiff's removal: (1) she failed to show up for work for 2 weeks [2]; (2) her behavior disrupted the overall provision of Catholic services at Bedford Hills; (3) her removal was recommended by all the other chaplains, including the part-time chaplain, Sister MaryAnn Collins; and (4) the inability of Plaintiff and Lopez to work together. Hayden Aff., ¶¶ 10–11.

[2]    Plaintiff contends that she did show up for work but was sent away by Lopez. This claim against Lopez is addressed, infra. Hayden's reliance on Lopez's absence report was reasonable and was a legitimate basis for Hayden's decision to dismiss Plaintiff.

Plaintiff's allegations that Lopez independently retaliated against her, by preventing her from returning to her program assignment, falsely reporting her absence from her job, and otherwise acting inappropriately toward her, are belied by Plaintiff's acknowledgement that Lopez never made any statement revealing that she engaged in any conduct with the intent to retaliate against Plaintiff for writing complaint

letters or for any other act by Plaintiff. (Hare Dep. at 135). Plaintiff can only point to her conclusory assumptions of Lopez's motive and has failed to adequately substantiate her claims to survive this motion for summary judgment.

Furthermore, even if Plaintiff did establish that Lopez filed a false report in retaliation for her complaints, Plaintiff cannot establish that the adverse action of her dismissal from her position as Catholic clerk by Hayden arose from that allegedly false report. As discussed above, Hayden chose to dismiss Plaintiff for three other legitimate reasons and would have done so regardless of the report. Hayden Aff., ¶¶ 10–11. *See Graham,* 89 F.3d at 79 (quoting *Lowrance,* 20 F.3d at 535).

### Plaintiff's Claim that Lopez Filed a False Misbehavior Report is Dismissed

**\*6**  To the extent that Plaintiff claims Lopez falsely reported her absence from work for two weeks, this allegation does not support a claim. "The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process...." [3] *Faison v. Janicki,* No. 03 Civ. 6475, 2007 WL 529310, at \*4 (W.D.N.Y. Feb. 14, 2007) (citing *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997)). *See also Moore v. Casselberry,* 584 F.Supp.2d 580, 582 (W.D.N.Y.2008) ("There is no basis for a constitutional claim alleging the mere filing of a false report"); *Flemings v. Kinney,* No. 02 Civ. 9989, 2004 WL 1672448, at \*3 (S.D.N.Y. Jul. 27, 2004) ("[i]t is well settled that 'a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report' ") (quoting *Boddie,* 105 F.3d at 862). Furthermore, the record does not support Plaintiff's assertion that Lopez's report was false. Officers Ruiz and Magoo both affirm that they were never instructed by Lopez not to allow Plaintiff to enter the chapel. Ruiz Aff., ¶ 3; Magoo Aff., ¶ 3. Lopez denies having falsified the report.

[3]    A plaintiff does have a claim "where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights." *Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988). However, as discussed above, Plaintiff, to the extent she makes such a claim, fails to establish that Lopez was motivated by Plaintiff's complaints when she filed the allegedly false report.

### Plaintiff's Claim that She was Unable to File a Grievance is Dismissed

Plaintiff alleges that she was denied the right to file a grievance when Watson responded to Plaintiff's September 4, 2008 grievance, which requested that Lopez stop retaliating against her, by noting that Plaintiff no longer worked as a clerk and, thus, Reverend Lopez could not retaliate against her. *See* Hare 39–41. Watson claims to have sent this memorandum to Plaintiff in an attempt to informally resolve the grievance, which is part of Watson's responsibilities, Watson Aff. ¶ 3, but Plaintiff alleges she understood the memorandum to indicate that she was not allowed to file a grievance. Watson claims she would have formally filed the grievance if Plaintiff had contacted her and requested that it be formally filed. *Id.*

While there is a dispute of fact as to whether Plaintiff was allowed to file a grievance, Plaintiff has no constitutionally protected right to file a grievance, and thus does not have a cognizable § 1983 claim. *See Shell v. Brzezniak,* 365 F.Supp.2d 362, 370 (W.D.N.Y.2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim") (citing *Cancel v. Goord,* No. 00 Civ.2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001)); *Mastroianni v. Reilly,* 602 F.Supp.2d 425, 437 (E.D.N.Y.2009) ("[T]he grievance procedure or lack thereof cannot itself form the basis of a Section 1983 claim because there is no constitutional right to a grievance mechanism") (citing *Swift v. Tweddell,* 582 F.Supp.2d 437, 445–46 (W.D.N.Y.2008)). Notably, Defendants do not argue that Plaintiff has failed to exhaust her claim of retaliation because this grievance was not processed through the entire grievance system.

### Plaintiff's Claims of Verbal Abuse are Dismissed

**\*7** Plaintiff accuses Lopez of approaching her on August 18, 2008 "in a menacing way, raising her hands toward plaintiff from behind in a motion as if to strangle plaintiff" (Pl. Opp. Aff. at 7) and asserts that Lopez "screamed" at her and called her a "liar" (Hare Dep. at 57) or otherwise spoke to her in an abusive manner. While Lopez denies Hare's allegations regarding her conduct, even when the evidence concerning them is viewed most favorably to Plaintiff, these allegations do not support an action pursuant to § 1983. The Eighth Amendment proscribes the " 'unnecessary and wanton infliction of pain' " on prisoners by prison officials. *Boddie,* 105 F.3d at 861 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). Hare does not claim that any actual physical harm

was caused to her by Lopez, and she acknowledged in her deposition testimony that, on the occasion when she alleges Lopez approached her in a physically threatening manner, "[m]y back was to her" (Hare Dep. at 61), and "I didn't see her ...." (Hare Dep. at 58). According to Plaintiff, Officer Ruiz "stopped the whole incident" before any assault could take place. (Hare Dep. at 57).

It is undisputed that there was no actual assault, and Plaintiff's evidence, viewed most favorably to her, establishes nothing more than verbal abuse. As the Court held in *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y, 1998):

> [V]erbal harassment or profanity alone, "unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem," does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983. *Del Carpio v. Walker,* No. 95 Civ. 1502(RSP) (GJD), 1997 WL 642543, at * 6 (N.D.N.Y. Oct. 15, 1997) (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (per curiam); *Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997)); *see Ramirez v. Holmes,* 921 F.Supp. 204, 210 (S.D.N.Y.1996); *Alnutt v. Cleary,* 913 F.Supp. 160, 165–66 (W.D.N.Y.1996); *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."); *Beal v. City of New York,* No. 92 Civ. 0718(KMW), 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994), *aff'd,* 89 F.3d 826, 1995 WL 722263 (2d Cir.1995); *Hurdle v. Ackerhalt,* No. 92–CV–1673, 1993 WL 71370, at *1–2 (N.D.N.Y. Mar. 8, 1993) (allegations of threats and harassment do not rise to the level of a Constitutional violation).

Plaintiff's claim fails because she does not allege that she suffered any physical injury. *See Bouknight v. Shaw,* No. 08 Civ. 5187, 2009 WL 969932, at *3 (S.D.N.Y. Apr. 6, 2009) ("Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.") (citing *Purcell,* 790 F.2d at 265). *See also Thompson v. Carter,* 284 F.3d 411, 418 (2d Cir.2002) ("We agree with the majority of our sister circuits that [42 U.S.C. § ] 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury.") Rather, Plaintiff contends that she suffered only "mental anguish" as a consequence of the Defendants' actions.

**\*8** "Under certain circumstances, the intentional infliction of psychological pain may constitute an Eighth Amendment violation, so long as the pain is not *de minimus." Shabazz,* 994 F.Supp. at 475. Plaintiff stated in her deposition that she was affected by Lopez's conduct particularly because she was a domestic violence victim and because Lopez came from a position of trust. (Hare Dep. at 139). However, Plaintiff admitted during her deposition that, notwithstanding the availability of mental health services, she never sought such services, but attained sufficient relief from her distress by speaking about it with a chaplain. (Hare Dep. at 139–40). Based on Plaintiff's allegations and record, Plaintiff's mental pain was *de minimus. See Shabazz,* 994 F.Supp. at 475 (mental anguish caused by repeated use of racial slurs was *de minimus* ); *Jermosen v. Coughlin,* No. 87 Civ. 6267, 1993 WL 267357, at \*6 (S.D.N.Y. July 9, 1993), *aff'd,* 41 F.3d 1501 (2d Cir.1994) (*de minimus* psychological harm when correctional officers "approached plaintiff with their nightsticks raised in a threatening position" before conducting a strip frisk).

### *Plaintiff's Claims for Infringement of Her Religious Rights are Dismissed*

#### a. The Alleged Removal of Religious Objects from the Sacristy

Hare's complaint discusses at length the alleged removal of religious articles from the Catholic sacristy at BHCF, but she has acknowledges that she did not observe anyone removing those articles, and that she has no personal knowledge regarding who is responsible for any such conduct. (Hare Dep. at 137; Pl. Opp. Aff. at 7). Lopez, for her part, denies any involvement in or knowledge of this occurrence. (Lopez Aff., ¶¶ 14–15). It appears that Plaintiff's only basis for claiming that Lopez had any involvement in the alleged removal of the articles in question is her assertion that she was told by Officer Magoo and through a grapevine of other inmates that Lopez had authorized other inmates to take this action. (Hare Dep. at 37; Pl. Opp. Aff. at 9). This hearsay claim is not corroborated by Officer Magoo; in fact, he has affirmed that he did not make a statement to Hare. (Magoo Aff., ¶ 4). Likewise, Inmate Rose Ramsey, who allegedly told Lucy Tuttle, who allegedly told Plaintiff, about Lopez's role in the removal of articles for the Catholic service has not provided an affidavit corroborating Plaintiff's contention. Thus, Hare does not present admissible evidence to support her allegation that Lopez caused the removal of items from the Catholic sacristy. *See Finnegan v. Board of Educ. of Enlarged City School Dist. of Troy,* 30 F.3d 273, 274 (2d Cir.1994) (hearsay

that would not be admissible at trial cannot be relied upon in opposition to a motion for summary judgment). Without establishing Lopez's involvement in the alleged removal of Catholic items, Plaintiff has not established a claim. As the Court of Appeals has recognized, "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)).

**\*9** Even if Plaintiff had established that Lopez bears responsibility for the removal of those articles from the sacristy, the conduct she alleges would not establish any violation of Hare's personal rights. She does not claim that any of the articles in question belonged to her, and, in the absence of specific criteria that Hare does not allege here, a plaintiff does not have standing to assert the constitutional rights of others. *Camacho v. Brandon,* 317 F.3d 153, 159 (2d Cir.2003) ("A plaintiff may assert the constitutional claims of a third party if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) 'some hindrance to the third party's ability to protect his or her own interests.' ") (quoting *Campbell v. Louisiana,* 523 U.S. 392, 397 (1998)). *Cf. Hudson v. Palmer,* 468 U.S. 517, 547 n. 13 (1984) (Stevens J., conc. in part and diss. in part) ("A prisoner's possession of ... personal property relating to religious observance, such as a Bible or a crucifix, is surely protected by the Free Exercise Clause of the First Amendment"). Thus, Hare's allegations regarding the alleged removal and desecration of objects from the Catholic sacristy does not give rise to any genuine dispute regarding facts that would be material to her § 1983 action against Lopez.

#### b. The Alleged Denial of Plaintiff's Right to Practice Her Religion

Plaintiff alleges that Lopez impermissibly infringed upon her right to practice religion. She does not allege any involvement in this deprivation by Hayden or Watson, so this claim is dismissed as to them.

In her complaint, Plaintiff asserts denial of "the right to practice Freedom of Religion," but she does not specify how this alleged violation of her civil rights occurred. In her affirmation opposing the summary judgment

motions [4], Plaintiff contends that Lopez prevented Plaintiff from continuing her Catholic video group and curtailed "all Catholic programs, which precluded plaintiff from participating in them, as they no longer were running." Pl. Opp. Aff. at 8. Also, referring to Lopez's alleged verbal abuse of Plaintiff on August 8, 2011, Plaintiff claims that "Lopez's actions effectively precluded any operations of religious programs for Catholic inmates." Pl. Opp. Aff. at 6. These assertions are insufficient to place into issue facts that, if resolved in Plaintiff's favor, would entitle her to relief pursuant to Section § 1983.

[4]    As with her retaliation claims, to the extent that Plaintiff's allegations of infringement on her rights to practice her religions are not contained in her complaint, but come from her deposition testimony and other filings, they are dismissed on this independent ground. Kearney, 373 F.Supp.2d at 440–41.

To establish a free exercise claim under the First Amendment, a plaintiff must demonstrate that state action substantially burdened her observation of a "central religious belief" without a "compelling government interest" justifying the burden. Skoros v. City of New York, 437 F.3d 1, 39 (2d Cir.2006) (quoting Jimmy Swaggart Ministries v. Bd. of Equalization, 493 U.S. 378, 384–85 (1990)). An inmate's right to the free exercise of religion is "subject to limitations that arise both as a consequence of being incarcerated and from 'valid penological objectives.' " Harris v. Lord, 957 F.Supp. 471, 474 (S.D.N.Y.1997) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987)).

*10  With regard to the alleged curtailment of programs such as the "Praise Dance" or the video activities that she sought to organize, Plaintiff does not claim that these programs were "central or important" to the practice of her religion, an essential component of a claim that her religious beliefs were "substantially burdened." Ford v. McGinness, 352 F.3d 582, 593–94 (2d Cir.2003).

Hare's claims regarding the "suspension" of Catholic programs appear to be linked with her role in leading such programs. Plaintiff's papers and testimony recognize, however, the Catholic Chaplain, Father O'Shea, retired in August of 2008. The subsequent temporary suspension of programs that he had supervised cannot be deemed an unreasonable infringement on Plaintiff's practice of her religion, but simply a consequence of the institution's

temporary lack of a Catholic Chaplain. Plaintiff's claim appears to be premised on her assumption that, even in Father O'Shea's absence, she should have been permitted to continue running these programs. (See Hare Dep. at 105 ("Even if I was not a clerk, I should have been allowed to run the program")). However, as discussed above, inmates have no right to any particular position or assignment at a correctional institution. See Gill, 824 F.2d at 194.

Plaintiff's claim that Lopez prevented her from attending Catholic Mass and other religious programming, to the extent that she asserts it, is not supported by the record and does not survive summary judgment even when all reasonable inferences are made in her favor. At her deposition she testified as follows:

Q. In general, do you recall at any time when you were trying to go to Catholic mass where you were not allowed to go?

A. If [Lopez] knew I was in there, then I was harassed. If she told the officer this Sunday she found out, she would tell that officer. If that officer was there, then I would be harrassed.

Q. How were you harassed?

A. Because I was told to leave, I'm not allowed to be there.

Q. How many times, to the best of your recollection, were you told that you had to leave the Catholic mass?

A. I would say a couple of times. Like I said, I got tired of being harassed, and I just stopped going.

...

Q. What about programming, were you allowed to go to Catholic programming?

A. No. Those were during the day. That's when she really got me. Then on Tuesday night she was there late. She was there until 8 o'clock at night. That was her late night. She made sure that the officer knew I was not supposed to be there.

(Hare Dep. at 106–07).

Plaintiff does not identify the officers involved or specify the dates on which she was allegedly told to leave the chapel. Plaintiff also provides no basis for her claim that, when they allegedly told her to leave, the officers were acting at the

direction of Lopez, and does not claim to have observed Lopez giving any officer such instructions. Officers Ruiz and Magoo, who were stationed outside the 112 Chapel during the period in question, have affirmed that they never received any such instruction from Lopez. Ruiz Aff. ¶ 3; Magoo Aff. ¶ 3. Thus, Plaintiff has not presented any admissible evidence that would support her claim that Lopez prevented her from attending Mass or other religious services, and the record suggests that she was not denied entry to Mass.

 **\*11** Moreover, it is unclear whether being told to leave the chapel "a couple of times" (Hare Dep. at 107)—even when the evidence is viewed most favorably to Plaintiff—rises to the level of a "substantial burden" on Hare's religious freedom. It is undisputed that Hare's right to free exercise of religion includes the right to attend religious services. *O'Lone,* 482 U.S. 342, 348 (1987). However, that right is not unlimited or absolute, but is subject to limitations that arise both as a consequence of being incarcerated and from "valid penological objectives." *Id.* Because Plaintiff provides no particulars as to the dates and times when she was allegedly prevented from attending Mass, and does not identify the officers who allegedly prevented her from doing so, her claims are too vague to permit the Court to determine both that the alleged removal actually occurred and, if it did, whether it was justified by a compelling government interest. *See Skoros,* 437 F.3d at 39.

In view of all of these circumstances, the Court concludes that Hare's claim that her freedom of religion was infringed is not based on facts that would entitle her to relief pursuant to § 1983. *See Salahuddin v. Coughlin,* 781 F.2d 24, 29 (2d Cir.1986)* (summary judgment stage is appropriate juncture for *pro se* plaintiffs to make clear the facts that they believe support their claims, and for a court to grant summary judgment where the underlying facts are insufficient).

### *Plaintiff's Reference to Additional Witnesses Does Not Merit a Denial of Summary Judgment*
Plaintiff claims that Defendants' motions for summary judgment should be denied on the grounds that two witnesses have yet to file affidavits. Four months have passed since Defendants filed their motions for summary judgment, and Plaintiff has not attempted to submit these additional affidavits. Furthermore, Plaintiffs' description of what their witnesses will say demonstrates that they would not rescue her claims.

Plaintiff contends that Inmate Lucy Tuttle observed Lopez verbally abuse and physically threaten her in the chapel on August 18, 2008 and in the subsequent meeting on that same day (to the extent that these are separate instances). As was discussed above, Lopez's alleged verbal abuse does not support a § 1983 claim for cruel and unusual punishment, as Plaintiff alleges.

Plaintiff also contends that Lieutenant Collins was Sergeant Collins at BHCF at the time Lopez prevented Plaintiff from entering her work assignment as Catholic Chaplain's Clerk, again without specifying when this occurred. Lopez's alleged refusal to allow Plaintiff to work as Catholic clerk is insufficient to support a § 1983 claim, as Lopez holds no right to her prison assignment. To the extent that Collins's affidavit would support Plaintiff's allegation that Lopez falsely reported her absent from work in retaliation for the Plaintiff's complaints, Plaintiff has not established that her complaints motivated the allegedly false reporting. Furthermore, Plaintiff cannot establish that the adverse action of her removal from her position as Catholic clerk was caused by the allegedly false reports, as Hayden cited other valid reasons for his decision to remove her.

### *Conclusion*
 **\*12** For the reasons stated above, Defendants' motions for summary judgment are granted.

It is so ordered.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 1453789

---

**End of Document**                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 82 of 119

Quick v. Minale, Not Reported in Fed. Supp. (2016)

2016 WL 6124495

2016 WL 6124495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Desmond QUICK, Plaintiff,
v.
John MINALE, et al., Defendants.

9:16-CV-0807 (BKS/DJS)
|
Signed 10/20/2016

**Attorneys and Law Firms**

DESMOND QUICK, 03-B-1945, Great Meadow
Correctional Facility, Box 51, Comstock, NY 12821,
Plaintiff, pro se.

**DECISION AND ORDER**

BRENDA K. SANNES, United States District Judge

**I. INTRODUCTION**

 *1  The Clerk has sent to the Court an amended civil rights
complaint and application to proceed in forma pauperis filed
by pro se plaintiff Desmond Quick pursuant to 42 U.S.C.
§ 1983 ("Section 1983"). Dkt. No. 14 ("Am. Compl."); [1]
Dkt. No. 7 ("IFP Application"). [2] Plaintiff is currently
incarcerated in the custody of the New York State Department
of Corrections and Community Supervision ("DOCCS") at
Great Meadow Correctional Facility ("Great Meadow C.F.")
and has not paid the statutory filing fee. Plaintiff has also
filed a motion for preliminary injunctive relief and a motion
to preserve evidence in support of his request for preliminary
injunctive relief. Dkt. Nos. 4, 10.

[1]     After plaintiff submitted his complaint, he
        submitted an amended complaint, which the Court
        will review in place of the original complaint.
        "It is well established that an amended complaint
        ordinarily supersedes the original and renders it of
        no legal effect." Arce v. Walker, 139 F.3d 329, 332
        n.4 (2d Cir. 1998) (quoting Int'l Controls Corp. v.
        Vesco, 556 F.2d 665, 668 (2d Cir. 1977)).

[2]     Plaintiff has one other civil action pending in
        the Northern District of New York. See Quick v.

Annucci, No. 9:16-CV-0958 (GTS/CFH) (filed on
August 1, 2016).

**II. DISCUSSION**

  **A. IFP Application**
Upon review of plaintiff's IFP Application (Dkt. No. 7),
the Court finds that plaintiff has demonstrated sufficient
economic need and may commence this action without
prepayment of the filing fee. Plaintiff has also filed the
inmate authorization form required in this District. Dkt. No.
3. Accordingly, plaintiff's IFP Application is granted. [3]

[3]     "28 U.S.C. § 1915 permits an indigent litigant to
        commence an action in a federal court without
        prepayment of the filing fee that would ordinarily
        be charged." Cash v. Bernstein, No. 09-CV-1922,
        2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).
        "Although an indigent, incarcerated individual
        need not prepay the filing fee at the time of filing,
        he must subsequently pay the fee, to the extent
        he is able to do so, through periodic withdrawals
        from his inmate accounts." Id. (citing 28 U.S.C. §
        1915(b) and Harris v. City of New York, 607 F.3d
        18, 21 (2d Cir. 2010)).

  **B. Initial Screening**
Section 1915(e) directs that, when a plaintiff seeks to proceed
in forma pauperis, "(2) ... the court shall dismiss the case at
any time if the court determines that – ... (B) the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B). [4] Thus, even if a plaintiff meets the financial
criteria to commence an action in forma pauperis, it is the
court's responsibility to determine whether the plaintiff may
properly maintain the complaint that he filed in this District
before the court may permit the plaintiff to proceed with this
action in forma pauperis. See id.

[4]     To determine whether an action is frivolous, a court
        must look to see whether the complaint "lacks an
        arguable basis either in law or in fact." Neitzke v.
        Williams, 490 U.S. 319, 325 (1989).

 *2  Likewise, under 28 U.S.C. § 1915A, a court must review
any "complaint in a civil action in which a prisoner seeks
redress from a governmental entity or officer or employee of a
governmental entity" and must "identify cognizable claims or

Case 5:21-cv-00085-DNH-TWD Document 13 Filed 07/21/21 Page 83 of 119

Quick v. Minale, Not Reported in Fed. Supp. (2016)

2016 WL 6124495

dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### C. Summary of the Amended Complaint

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Great Meadow C.F. *See generally* Am. Compl. The following facts are set forth as alleged by plaintiff in his amended complaint. In 2013, prior to his transfer to

Great Meadow C.F., plaintiff filed a Section 1983 action in the Southern District of New York against the Executive Director of the Central New York Psychiatric Center and the Superintendent of Green Haven Correctional Facility alleging that they had denied him adequate mental health treatment. Am. Compl. at 7. Plaintiff also filed several civil lawsuits in the Northern District of New York against DOCCS staff. *Id.* at 7-9. [5]

[5]
  A review of plaintiff's litigation history in the Northern District of New York indicates that, in addition to this case and another action that plaintiff currently has pending which was filed after this action, *see* n.2, *supra*, plaintiff filed three other Section 1983 actions in this District. *See Quick v. Quinn*, No. 9:12-CV-1529 (DNH/DEP) (filed October 9, 2012 against staff at Auburn Correctional Facility); *Quick v. Graham*, No. 9:12-CV-1717 (DNH/ATB) (filed November 21, 2012 against staff at Auburn Correctional Facility); and *Quick v. Omittee*, No. 9:14-CV-1503 (TJM/CFH) (filed December 12, 2014 against staff at Marcy Correctional Facility).

**\*3** On June 5, 2016, plaintiff was placed in the Behavioral Health Unit ("BHU") at Great Meadow C.F. Am. Compl. at 10. [6] Defendant Minale was assigned to be plaintiff's mental health therapist. *Id.* Defendant Minale diagnosed plaintiff with two new conditions, namely Impulse Control Disorder and Child Abuse. *Id.* About two weeks later, plaintiff was assigned a new mental health therapist, defendant Maleski. *Id.* Plaintiff told defendant Maleski that defendant Minale had not even spoken to plaintiff before labeling him as suffering from Impulse Control Disorder and Child Abuse. *Id.* Defendant Maleski "told plaintiff she was not changing the diagnosis that Minale gave" him. *Id.* Plaintiff believes that defendants Minale and Maleski gave him the new diagnoses "to make Plaintiff seem unruly and uncontrollable so that correctional security officers ... can beat plaintiff by attacking [him] first saying that Plaintiff attacked them." *Id.* at 10-11

[6]
  It appears that plaintiff was already at Great Meadow C.F. prior to this date. *See Quick v. Graham*, No. 9:12-CV-1717 (DNH/ATB), Dkt. No. 136 (plaintiff's notice dated January 10, 2016, that he was transferred to Great Meadow C.F.).

On February 11, 2016, plaintiff was threatened by defendant Wood because Wood believed that plaintiff had engaged in

Case 5:21-cv-00085-DNH-TWD   Document 13   Filed 07/21/21   Page 84 of 119

Quick v. Minale, Not Reported in Fed. Supp. (2016)
2016 WL 6124495

lewd conduct. Am. Compl. at 11. On February 19, 2016, defendant Clarke stepped on plaintiff's toes "extremely hard;" told plaintiff "how he would fuck [plaintiff] up" and described how he could arrange it. *Id.* [7] Defendant Clarke also said that he "hates people who do lewd conduct", plaintiff should be in an exposure suit, and plaintiff needs to "stop coming out of [his] cell." *Id.*

[7]    The caption and the party listing in the amended complaint refer to this defendant as "Clarke" but in the body of the amended complaint, plaintiff spells this defendant's name as "Clark." The Court will refer to this defendant as he is listed in the caption.

On February 19, 2016, defendant Gibbs was escorting plaintiff from the program area and "made his entire body fall into Plaintiff['s]" and told plaintiff that he "better stay in [his] fucking cell." Am. Compl. at 12. On February 22, 2016, when plaintiff was leaving the program area in the BHU, defendant Jenkins "started bending [plaintiff's] wrist and shoving [him]." *Id.* Defendant Jenkins told plaintiff to "shut the fuck up" and said that he was tired of plaintiff coming out to program, and that plaintiff needed to be in an exposure suit. *Id.* Defendant Jenkins then forced plaintiff against the wall and threatened him saying "Don['t] worry you like to come out to program we[']ll get you off the unit and fuck you up." *Id.* Plaintiff was escorted back to his cell by defendant Hart, who stepped on plaintiff's foot, claiming that he was sorry that he stepped on plaintiff's foot by accident. *Id.* Defendant Gibbs told plaintiff that "this will happen every time" if you keep coming out of your cell. *Id.*

Defendant Jenkins pushed and tripped plaintif f repeatedly on August 4, 2016, and said that he wanted plaintiff "to go off the BHU camera so he could beat [plaintiff's] ass." Am. Compl. at 13.

On August 24, 2016, defendants Gibbs and Hart grabbed plaintiff as he was leaving his cell to go to programs "and used force throwing plaintiff in his cell" without any provocation in order "to deny Plaintiff his daily Office of Mental Health programs." Am. Compl. at 14. Since the August 24, 2016 incident, defendant Hart continues to threaten plaintiff with harm whenever he tries to escort plaintiff to his "Mental Health Programs." *Id.* As a result, on August 31, 2016, and September 6, 2016, plaintiff refused to leave his cell to attend programs when defendant Hart came to escort him. *Id.*

Plaintiff requests monetary damages and injunctive relief. Am. Compl. at 16. For a more complete statement of plaintiff's claims, refer to the amended complaint.

**\*4** Construing the amended complaint liberally, plaintiff alleges the following claims: (1) Eighth Amendment medical indifference claims against defendants Minale, Maleski, Wood, Hart, Clarke, Gibbs, and Jenkins; (2) Eighth Amendment excessive force claims against defendants Clarke, Gibbs, Jenkins, and Hart; and (3) claims that defendants Minale, Maleski, Wood, Hart, Clarke, Gibbs and Jenkins conspired to deprive plaintiff of his constitutional rights and retaliated against him. [8]

[8]    Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims). Plaintiff names "McDonald" in his causes of action. Am. Compl. at 15. Plaintiff does not however include "McDonald" as a defendant in the caption of his amended complaint or in the list of parties. The Court does not consider McDonald to be a party to this action. Moreover, plaintiff alleges only that McDonald told plaintiff that "we don't fight fair." Am. Compl. at 12. Even accepting this allegation as true, plaintiff alleges at best that McDonald harassed or threatened him, which by itself fails to state a claim under Section 1983. " 'Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.' " *McCarroll v. Matteau*, No. 9:09-CV-0355 (NAM/GHL), 2010 WL 2346327, at *5 (N.D.N.Y. May 17, 2010) (quoting *Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995)).

### D. Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing

Case 5:21-cv-00085-DNH-TWD   Document 13   Filed 07/21/21   Page 85 of 119

Quick v. Minale, Not Reported in Fed. Supp. (2016)

2016 WL 6124495

*Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Eighth Amendment Medical Indifference Claims

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference has two necessary components, one objective and the other subjective. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The objective component of an Eighth Amendment deliberate indifference claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway*, 99 F.3d at 553) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66. To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'"). An "inadvertent failure to provide adequate medical care"

does not constitute "deliberate indifference." *Estelle*, 429 U.S. 97, 105-06 (1976).

### a. Defendants Minale and Maleski

**\*5** "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*; *Graham v. Gibson*, No. 04-CV-6088, 2007 W L 3541613, at *5 (W.D.N.Y. Nov. 14, 2007) ("Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation."); *Jones v. Westchester Cnty. Dept. of Corrs. Med. Dept.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008) (The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' "). Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists ... are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also Estelle*, 429 U.S. at 107 (noting that medical decisions such as whether or not to order X-rays or other "diagnostic techniques" do not rise to the level of cruel and unusual punishment but are, at most, indicative of medical malpractice). Here, plaintiff does not allege that defendants Minale and Maleski denied him mental health treatment. Instead, plaintiff expresses his dissatisfaction with the new mental health diagnoses that he received from them. Am. Compl. at 10-11. Construed liberally, the amended complaint alleges at best, a disagreement with the care given to him by defendants Minale and Maleski, which does not state a claim under Section 1983.

The Eighth Amendment medical indifference claims against defendants Minale and Maleski are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Defendants Wood, Clarke, Gibbs, Jenkins, and Hart

Plaintiff alleges that defendants Wood, Clarke, Gibbs, Jenkins, and Hart have "interfered" with plaintiff's medical

Quick v. Mihailo, Not Reported in Fed. Supp. (2016)

2016 WL 6124495

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 86 of 119

and mental health treatment by "harassing, threatening, and intimidating" when he tried to go for medical or mental health treatment. Am. Compl. at 15. With respect to defendants Clarke, Gibbs, Jenkins, and Hart, plaintif f alleges among other things that each of these defendants threatened that plaintif f should stop coming out of his cell and/or threatened to harm him if he did. *See* Am. Compl. at 11-14. At this early stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintif f's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment medical indifference claims against defendants Clarke, Gibbs, Jenkins, and Hart survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

With respect to defendant Wood, plaintiff only alleges that he harassed plaintiff because he believed that plaintiff had engaged in lewd conduct. Am. Compl. at 11. This allegation is insufficient to plausibly suggest that defendant Wood interfered with plaintiff's medical or mental health treatment. Thus, the Eighth Amendment medical indifference claim against defendant Wood is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Eighth Amendment Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle*, 429 U.S. at 104. This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[9]

[9]    In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir.

1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

**\*6**  The amended complaint alleges that (1) defendant Clarke stepped on plaintiff's toes "extremely hard" and told plaintiff "how he would fuck [plaintiff] up" and how he could arrange it; (2) defendant Gibbs "made his entire body fall into plaintiff['s]" and told plaintiff that he'd "better stay in [his] fucking cell;" (3) defendant Jenkins bent plaintiff's wrist, shoved him, forced him against the wall, and threatened to "fuck plaintiff up;" and (4) defendants Gibbs and Hart threw plaintiff into his cell without any justification. Am. Compl. at 11-14. At this early stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff*, 537 F.3d at 191, the Court finds that plaintiff's Eighth Amendment excessive force claims against defendants Clarke, Gibbs, Jenkins, and Hart survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. Conspiracy Claims

A conspiracy claim under Section 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Vag ue and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta*, 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief). To state a

Case 5:21-cv-00085-DNH-TWD   Document 13   Filed 07/21/21   Page 87 of 119

Quick v. Minale, Not Reported in Fed. Supp. (2016)
2016 WL 6124495

conspiracy claim, plaintiff "must provide some factual basis supporting a meeting of the minds." *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).

Here, plaintiff does not assert any facts giving rise to a conspiracy, but instead states in wholly conclusory fashion that defendants "have conspired to deprive [his] rights guaranteed by Federal Statute 42 U.S.C. § 1983." Am. Compl. at 15. Aside from this conclusory statement, the amended complaint alleges no facts upon which it may be plausibly inferred that the defendants came to an agreement, or a "meeting of the minds," to violate plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 680-81 (allegations that the defendants "willfully and maliciously agreed to subject" the plaintiff to harsh conditions of confinement "solely on account of his religion, race, and/or national origin" found conclusory); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

The conspiracy claims against defendants Minale, Maleski, Wood, Hart, Clarke, Gibbs, and Jenkins are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

#### 4. First Amendment Retaliation Claims

Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation– can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must

advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

*7 Construed liberally, plaintiff alleges that defendants retaliated against him by "giving [him a] false Mental Health Diagnosis" and by interfering with his access to mental health programs and medical treatment. Am. Compl. at 15. Plaintiff appears to claim that defendants' alleged misconduct was in retaliation for lawsuits that plaintiff had filed in the Southern District of New York in 2013 and in the Northern District of New York in 2012 and 2014. Am. Compl. at 7-9; *see also* n.5, *supra*. The filing of a lawsuit is a constitutionally protected activity, thus plaintiff meets the first prong of the retaliation standard. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citing cases).

The amended complaint contains no facts whatsoever to suggest there is any causal connection between the misconduct of the defendants named in the amended complaint and the lawsuits plaintiff filed over two years before. Plaintiff fails to allege any facts that would support a finding that any of the defendants were personally motivated by civil lawsuits filed by plaintiff with which they have no apparent connection. None of the defendants were parties to the earlier lawsuits and the events alleged in those lawsuits did not arise at Great Meadow C.F. where the defendants are employed. *See* Am. Compl. at 7 (noting that the 2013 Southern District of New York lawsuit was against the Executive Director of the Central New York Psychiatric Center and the Superintendent of Green Haven Correctional Facility); *see also* n.5, *supra* (describing plaintiff's previous civil actions filed in the Northern District of New York as asserting claims against employees of Auburn Correctional Facility and Marcy Correctional Facility). Indeed, plaintiff alleges nothing to plausibly suggest that the defendants even knew of the previous lawsuits. Generally, alleged retaliation motivated by an action the prisoner took which did not personally involve the prison officials is insufficient for a retaliation claim. *See Ortiz v. Russo*, No. 13 CIV. 5317, 2015 WL 1427247, at *12 (S.D.N.Y. Mar. 27, 2015) (granting motion to dismiss retaliation claim where plaintiff "fail[ed] to allege any facts that would support a finding that [the

Quick v. Minale, Not Reported in Fed. Supp. (2016)

Case 5:21-cv-00085-DNH-TWD   Document 13   Filed 07/21/21   Page 88 of 119

2016 WL 6124495

defendants] were personally motivated by the dismissal of an earlier grievance they have no apparent connection with") (citing, *inter alia, Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing a pro se prisoner's claim that he was assaulted by the defendant in retaliation for an earlier letter he wrote which did not name or address defendant)*; Hare v. Hayden*, No. 09 CIV. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.")). Finally, plaintiff claims that defendants' alleged retaliatory actions occurred at least two years and up to four years after the lawsuits that plaintiff refers to were filed, diminishing any suggestion of a causal connection. *See Ortiz*, 2015 WL 1427247, at *12 (granting motion to dismiss retaliation claim citing protected activity that occurred three years before the alleged misconduct as "generally insufficient to satisfy the causal connection requirement for a retaliation claim") (citing *Spavone v. Fischer*, No. 10 CIV. 9427, 2012 W L 360289, at *5 (S.D.N.Y. Feb. 3, 2012) (finding fifteen months inadequate to establish a causal connection through temporal proximity); *Crawford v. Braun*, No. 99 CIV 5851, 2001 W L 127306, at *6 (S.D.N.Y. Feb. 9, 2001) (describing a lapse of seven months as too "attenuated" for purposes of temporal proximity)).

**\*8** The First Amendment retaliation claims against defendants Minale, Maleski, Wood, Hart, Clarke, Gibbs, and Jenkins are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E. Motion for Preliminary Injunctive Relief

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a

clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted)); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaint f seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 W L 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir 2005). [10]

[10]    Under the Prison Litigation Reform Act, preliminary injunctive relief in any civil action with respect to prison conditions must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct that harm. *See* 18 U.S.C. § 3626(a)(2). In considering an application for prospective relief, the court is required to give substantial weight to any adverse impact such relief may have on public safety or on the operation of the criminal justice system. *See* 18 U.S.C. § 3626(a)(1) (A).

Plaintiff claims that he has been continuously "threatened [with assault and with being set up]" by corrections security staff on numerous occasions." Dkt. No. 4 at 7; *see also* Dkt. No. 16 (submission in support of request for preliminary injunctive relief). Plaintiff alleges that at the last three correctional facilities that he was housed at, there were "numerous threats" and "numerous incidents." Dkt. No. 4 at 8. Plaintiff claims that he "is at high risk to be assaulted and [to] have excessive force used on him." *Id.* at 3. Plaintiff requests a court order directing Anthony Annucci, the Commissioner of DOCCS; Christian Miller, Superintendent, Great Meadow C.F.; and Rod Eastman, Deputy Superintendent, Great Meadow C.F., to record all of plaintiff's movements by handheld audio-video camera whenever plaintiff is not in range of the facility security cameras. *Id.* at 1. [11]

Case 5:21-cv-00085-DNH-TWD   Document 13   Filed 07/21/21   Page 89 of 119

Quick v. Miraie, Not Reported in Fed. Supp. (2016)
2016 WL 6124495

[11]   Plaintiff's caption for this motion names Annucci, Miller, and Eastman as purported defendants, but they are not parties to this action. *Compare* Dkt. No. 4 at 1 *with* Am. Compl. at 1-3.

**\*9**   Construed liberally, plaintiff claims that has been denied the right to reasonable safety in violation of Eighth Amendment. Because an alleged violation of a constitutional right "triggers a finding of irreparable harm," the Court **will assume for purposes of this motion only** that plaintiff satisfies the requirement that a party applying for a preliminary injunction demonstrate irreparable harm. *Jolly v. Coughlin,* 76 F.3d 468, 482 (2d Cir. 1996); *see also Stataros v. New York City Taxi and Limousine Comm'n,* 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary.").

Initially, the Court notes that plaintiff seeks injunctive relief against three persons who are not parties to this action. *See* Dkt. No. 4 at 1, 11; *see also* n.11, *supra.* However, injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Assoc., Inc. v. Reinert & Duree, P.C.,* 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan,* 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama,* 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Moreover, plaintiff has failed to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Res., Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Additionally, since no defendants have answered and, indeed, have not been served, the Court cannot ascertain plaintiff's likelihood of success, or whether he has otherwise met the standard for issuance of preliminary injunctive relief.

Thus, plaintiff's motion for preliminary injunctive relief (Dkt. No. 4) is denied.

As a final matter, plaintiff seeks a court order "to preserve the audio/video camera CD's" that he has sought through a Freedom of Information Law request "to use as evidence" in support of his request for preliminary injunctive relief. Dkt. No. 10. Because plaintiff's motion for preliminary injunctive relief has been denied, the request to preserve alleged evidence is support thereof is denied.

Despite denying plaintiff's request to preserve evidence, the Court notes that "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary. 'While a litigant is under no duty to keep or retain every document in its possession ... it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.' " *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (citing *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (quoting *William T. Thompson Co. v. Gen. Nutrition Corp.,* 593 F. Supp. 1443, 1455 (C.D. Cal. 1984))). In this instance, def endants have not been served with a summons and amended complaint and have not appeared. However, defendants are likely to be represented by the Office of the New York State Attorney General, which will receive a courtesy copy of this Decision and Order, and which should take note of its potential clients' obligation to preserve relevant evidence.

### III. CONCLUSION

**\*10  WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 7) is **GRANTED**. [12] The Clerk shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

[12]   Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

2016 WL 6124495

**ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the amended complaint (Dkt. No. 14) is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the Eighth Amendment medical indifference claims and the Eighth Amendment excessive force claims against defendants Clarke, Gibbs, Jenkins, and Hart survive sua sponte review and require a response; and it is further

**ORDERED** that all remaining claims are **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; [13] and it is further

[13] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file a second amended complaint. Any second amended complaint, which shall supersede and replace the amended complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. A second amended complaint must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that defendants Minale, Maleski, and Wood are **DISMISSED without prejudice** as defendants; and it is further

**ORDERED** that the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon defendants Clarke, Gibbs, Jenkins, and Hart. The Clerk shall forward a copy of the summons and amended complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the amended complaint be filed by defendants Clarke, Gibbs, Jenkins, and Hart, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff's motion for preliminary injunctive relief (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED** that plaintiff's motion to preserve evidence (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so may result in the dismissal of this action; and it is further

 **\*11**  **ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: October 20, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6124495

---

**End of Document**          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 360289
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Steven SPAVONE, Plaintiff,
v.
Mr. Brian FISCHER, Commissioner (DOCS),
Mr. Kenneth Pearlman, Deputy Commissioner
Program Services, Ms. Jean King, Deputy
Superintendent of Programs—Woodbourne
C.F., and Mr. Nick Chalk, Supervising Senior
Counselor—Woodbourne C.F., Defendants.

No. 10 Civ. 9427(RJH)(THK).
|
Feb. 3, 2012.

***MEMORANDUM OPINION AND ORDER***

RICHARD J. HOLWELL, District Judge.

**\*1** *Pro se* plaintiff Steven Spavone brings this action alleging that defendants violated the Civil Rights Act, 42 U.S.C. § 1983 (" § 1983") by denying his application for a limited credit time allowance ("LCTA") while plaintiff was in prison and seeks monetary damages against defendants in their official and individual capacities. Specifically, plaintiff seeks monetary damages for the alleged deprivation of his liberty interest in violation of his constitutional right to due process under the Fourteenth Amendment, the LCTA denial's exacerbating effect on his preexisting mental health condition, future medical costs, and loss of consortium. Defendants' motion to dismiss the complaint pursuant to Rules 12(b) (1) and 12(b)(6) of the Federal Rules of Civil Procedure is unopposed. For the reasons set forth below, defendants' motion is GRANTED in its entirety and plaintiff's claims are dismissed without prejudice. Plaintiff is given leave to amend his complaint.

**BACKGROUND**

Under N.Y. Corr. Law § 803–b, a LCTA allows eligible inmates to qualify for conditional release or parole eligibility six months earlier than they would have been otherwise. *See* N.Y. Corr. Law §§ 803–b(1)(b)(ii)(A) and 803–b(1)(b)

(ii)(B). N.Y. Corr. Law § 803–b(2) sets out the eligibility criteria for a LCTA, one of which is the inmate's successful completion of one or more "significant programmatic accomplishments", including but not limited to the inmate's successful participation "as an inmate program associate for no less than two years". *See* N.Y. Corr. Law § 803–b(1) (c)(iii). In May 2010, plaintiff's application for a limited credit time allowance ("LCTA") pursuant to N.Y. Correction Law § 803–b was allegedly denied at the facility level by defendants King and Chalk while he was incarcerated at the Woodbourne Correctional Facility. (Compl. 2 and Ex. A.) Plaintiff claims that he appealed the denial to defendant Fisher, the Commissioner of the Department of Correctional Services (DOCS) at the time, who designated defendant Pearlman to respond. Defendant Pearlman allegedly upheld the denial on July 29, 2010. (Compl.2.) Defendants Chalk and Fisher are also named defendants in a separate litigation filed by plaintiff and pending before this Court, [1] and defendant Chalk is alleged to have "on numerous occasions, with the conspiratorial assistance of Defendant King, retaliated against" the plaintiff. Plaintiff allege that the denials of his LCTA application and appeal were made in retaliation for his previous complaint. (Compl.3.)

[1]    *See Spavone v. New York State Dept. of Correctional Services,* No. 09 Civ. 969 (S.D.N.Y. filed Feb. 4, 2009).

Plaintiff claims that at the time of the underlying action, he had held a position of inmate program associate for over two years and was therefore entitled to a LCTA under N.Y. Corr. Law § 803–b. He further alleges that his entitlement to a LCTA is a constitutional right under the Fourteenth Amendment rather than a discretionary privilege, and that the denial of his LCTA application deprived him of his liberty interest in violation of the Fourteenth Amendment. Additionally, the LCTA denial supposedly exacerbated plaintiff's preexisting condition of post traumatic stress disorder by depriving him of "effective, essential and required therapies" as well as medical treatment that he could not receive while in incarceration. (Compl.4.) Lastly, plaintiff claims a loss of consortium because he "will now and in the future require medications, which hinder and interfere, through side effects, with the personal and intimate relationship between husband and wife". (Compl.6.)

**DISCUSSION**

## I. Standard of Review

**\*2** When ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or failure to state a claim under Rule 12(b)(6), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff. *See Natural Res. Def. Council v. Johnson,* 461 F.3d 164, 171 (2d Cir.2006); *Bolt Elec. Inc. v. City of New York,* 53 F.3d 465, 470 (2d Cir.1995). "A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation marks and citations omitted).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' ... [T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 544–45, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 129 S.Ct. at 1940. The Supreme Court has set out the following pleading standards for overcoming a motion to dismiss in *Iqbal:*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570) (internal citations omitted).

For purposes of a motion to dismiss, the Court deems "a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" and "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit". *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) (internal citations omitted). Allegations in a complaint that are contradicted by documents incorporated therein need not be accepted as true by the court. *Barnum v. Millbrook Care Ltd.,* 850 F.Supp. 1227, 1232–33 (S.D.N.Y.1994).

## II. The Eleventh Amendment Bars Claims Against Defendants in Their Official Capacities

Plaintiff claims that defendants "in their official and individual capacities" under the color of state law violated his right to due process by depriving him of his liberty interest in the LCTA. (Compl.2.) In a § 1983 action, a suit for damages against a state official in his official capacity is deemed to be a suit against the state, thereby entitling the official to invoke the sovereign immunity reserved for states under the Eleventh Amendment. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993). In the absence of consent or congressional abrogation of the state's sovereign immunity, the state as well as its agencies and departments are immune under the Eleventh Amendment from suits brought in federal court by its citizens. *Coll. Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.,* 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). A state's immunity under the Eleventh Amendment may be waived by the state's consent to suit against it in federal court or by congressional abrogation, but such state consent and congressional intent to abrogate must be unequivocally expressed. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Congress has not expressly stated any intent to override state sovereign immunity for § 1983 claims, *see Quern v. Jordan,* 440 U.S. 332, 343, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and neither has the state of New York consented to suits in federal court, *see Gross v. New York,* 428 Fed.Appx. 52, 53 (2d Cir.2011) (noting that the state of New York has waived its immunity by consenting only to being sued in the New York Court of Claims but not in federal court). Accordingly, plaintiff's § 1983 claim against defendants in their official capacities is dismissed.

## III. Denial of Plaintiff's LCTA Application Does Not Violate His Right to Due Process under the Fourteenth Amendment

**\*3** A convicted person has no constitutional right in conditional release from prison or parole prior to the expiration of a valid sentence. *Greenholtz v. Inmates of Neb.*

Spavone v. Fischer, Not Reported in F.Supp.2d (2012)

2012 WL 360289

*Penal and Corr. Complex,* 422 U.S. 1, 7, 95 S.Ct. 2016, 44 L.Ed.2d 643 (1979); *Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001). The Second Circuit has held that while "inmates have a liberty interest in good time credit they have *already* earned," they have no such interest "in the opportunity to earn good time credit where ... prison officials have *discretion* to determine whether an inmate or class of inmates is eligible to earn good time credit." *Abed v. Armstrong,* 209 F.3d 63, 66–67 (2d Cir.2000) (emphasis added) (citations omitted); *see Lighthall v. Vadlamudi,* No. 9:04–CV–0721, 2006 WL 721568, at *15 (N.D.N.Y. Mar.17, 2006) (the state of New York has not created a protected liberty interest in merit time or participation in a program that has implications on good time credit); *Scarola v. Goord,* 266 A.D.2d 598, 698 N.Y.S.2d 60, 62 (3d Dep't 1999) (enactment of the merit time legislation N.Y. Corr. Law § 803 did not create a "constitutionally protected liberty interest" and "[p]articipation in the merit time allowance program is a privilege, not a right").

The LCTA is essentially a type of merit time, [2] and therefore plaintiff has no constitutionally protected liberty interest to it. N.Y. Corr. Law § 803–b explicitly states that no inmate has the right to demand a LCTA, and that the commissioner *"may* revoke at any time such credit for any disciplinary infraction committed by the inmate or for failure to continue to participate successfully in any assigned work and treatment program after the certificate of earned eligibility has been awarded." N.Y. Corr. Law § 803–b (3) (emphasis added). Accordingly, plaintiff's claim of liberty interest deprivation under the Fourteen Amendment is dismissed.

[2]    *See* Richard A. Greenberg, 6 N.Y. Practice, Criminal Law § 3:3 (Apr.2011) (A LCTA "may be earned by certain inmates who are generally ineligible to earn the merit time credit authorized by N.Y. Correct. Law § 803(1)(d).").

### IV. The Retaliation Claim Is Dismissed for Being Insufficiently Pled

"Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike", *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (internal quotation marks and citations omitted), and "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). To survive a motion to dismiss, a prisoner's retaliation claim must be "supported by specific and detailed factual

allegations" and not stated "in wholly conclusory terms." *Friedl v. City of New York,* 210 F.3d 79, 85–86 (2d Cir.2000) (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

To prevail on a First Amendment retaliation claim under § 1983, plaintiff must establish the following three components with non-conclusory allegations: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech or conduct and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (internal quotation marks and citations omitted). In other words, "[plaintiff] bears the burden of showing, first, that he engaged in constitutionally protected conduct, and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted). Once plaintiff makes these showings, defendants can avoid liability by demonstrating that they would have taken the same adverse actions even if plaintiff had never engaged in the protected conduct. *Id.* Lastly, "even if the plaintiff shows that the defendant was motivated at least in part by retaliatory animus and the defendant *fails* to prove that, absent that retaliatory animus, he would have taken the same action, the plaintiff must still demonstrate that the causal connection between the defendant's action and the plaintiff's injury is sufficiently direct." *Gierlinger v. Gleason,* 160 F.3d 858, 872 (2d Cir.1998) (emphasis added).

*4  There is no dispute that plaintiff's earlier lawsuit against defendants Chalk and Fischer was protected conduct, *see Espinal v. Goord,* 558 F.3d 119, 128–29 (2d Cir.2009), so at issue are only the last two elements of a retaliation claim—namely (2) whether defendants King, Chalk, and Fischer's involvements, if any, in the LCTA denial at the facility level and the subsequent upholding of that denial on administrative appeal constituted adverse actions; and (3) if so, whether there was a causal connection between plaintiff's earlier lawsuit and said adverse actions. Plaintiff's retaliation claim against defendant King, supported solely by a one-sentence allegation in the complaint that King provided "conspiratorial assistance" to defendant Chalk "on numerous occasions" (Compl.3), is dismissed for being wholly conclusory. *See Flaherty,* 713 F.2d at 13 ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."). King was not a party in plaintiff's earlier lawsuit, so even if her denial of plaintiff's LCTA application can constitute an adverse action, plaintiff has failed to demonstrate that his

2012 WL 360289

earlier lawsuit was a "substantial and motivating factor" for King's action, or that any causal connection existed between plaintiff's earlier lawsuit against different defendants and King's denial of plaintiff's LCTA application.

As for defendants Chalk and Fischer, the only remaining defendants in plaintiff's retaliation claim, it is not clear from the pleadings what personal involvement on their part, if any, could have constituted adverse actions. When money damages are sought under § 1983, a defendant's personal involvement in alleged deprivations of plaintiff's right is a prerequisite. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Plaintiff claims that his LCTA application was denied by defendants Chalk and King on May 26, 2010 (Compl.2), but the corresponding notification of LCTA determination from the Department of Correctional Services to plaintiff (Compl.Ex.A) only bears King's signature and does not indicate Chalk's personal involvement in anyway.

Defendant Fischer's only alleged connection to plaintiff's LCTA application process was that he received plaintiff's appeal and designated defendant Pearlman to respond to this appeal (Compl. 2; Compl. Ex. "Administrative Appeal"). In a § 1983 action, a defendant in his supervisory role cannot be held liable solely under the general doctrine of *respondeat superior* absent some showing of personal responsibility. *Dunn v. Carrier,* 137 Fed.Appx. 387, 389 (2d Cir.2005). A supervisory defendant's personal involvement can be established with one of the following types of evidence:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

**\*5** *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). [3]

[3]

Post-*Iqbal* opinions issued by this Court have questioned whether all five types of evidence establishing a supervisory defendant's personal involvement as outlined in *Colon* are still relevant. *See, e.g., Young v. State of N.Y. Office of Mental Retardation and Developmental Disabilities,* 649 F.Supp.2d 282, 293–94 (S.D.N.Y.2009) ( "Precisely what remains of the Second Circuit rule [set out in *Colon* ] in light of *Iqbal* is not entirely clear."); *Bellamy v. Mount Vernon Hosp.,* No. 07 Civ. 1801(SAS), 2009 WL 1835939, at \*6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal'* s muster- a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."). Under either the *Colon* or post-*Iqbal* framework, **p**laintiff fails to demonstrate defendant Fischer's personal involvement in any retaliatory action against plaintiff.

The receipt of a prisoner's letter of grievance by a DOCS Commissioner who delegates to other prison officials the task of responding to such complaints is insufficient to establish the Commissioner's personal involvement. *See, e.g., Hernandez v. Goord,* 312 F.Supp.2d 537, 547 n. 6 (S.D.N.Y.2004); *Amaker v. Goord,* No. 98 Civ. 3634, 2002 WL 523371, \*16 (S.D.N.Y. Mar.29, 2002); *Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736, at \*4 (S.D.N.Y. April 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violation.")

Finally, plaintiff fails to establish the third element of a retaliation claim, namely that there was a sufficiently direct causal connection between the lawsuit he filed previously and the LCTA denial or the upholding of that denial on appeal. The Second Circuit has found that a causal connection may be established by the temporal proximity between an inmate's lawsuit and an adverse action, evidence of the inmate's prior good behavior, and vindication in a proceeding arising from the alleged retaliation. *See Colon,* 58 F.3d at 873; *Gayle v. Gonyea,* 313 F.3d 677, 683 (2d Cir.2002). The Second Circuit has "not drawn a bright line to define

Spavone v. Fischer, Not Reported in F.Supp.2d (2012)

2012 WL 360289

the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action", and this allows the Court "to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal, 558 F.3d at 129* (internal quotation marks and citations omitted).

Plaintiff's prior lawsuit against Chalk and Fischer was filed on February 4, 2009, and the denial of plaintiff's LCTA application and alleged subsequent upholding of that denial on administrative appeal happened on May 26, 2010 and July 29, 2010 respectively. More than fifteen months had elapsed between the protected conduct and the first allegedly adverse action, which is not likely to establish, through temporal proximity, the required element of causal connection in a retaliation claim. *Compare Figueroa v. Weisenfreund, 255 Fed.Appx. 595, 597 (2d Cir.2007)* (fifteen months between employee's complaints about employer and employer's termination of employment did not establish the require element of causal connection in a prima facie § 1983 retaliation claim) *and Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)* (employer's adverse action taken twenty months after employee's filing of a complaint with the EEOC suggests "no causality at all" in a retaliation claim), *with Espinal, 558 F.3d at 129* (passage of six months between dismissal of prisoner's lawsuit and alleged act of retaliation by prison officers, one of whom was a defendant in the prior lawsuit, sufficiently supports an inference of causal connection in a First Amendment retaliation claim). Additionally, there has been no subsequent proceeding vindicating the denial of plaintiff's LCTA application, and plaintiff does not make any claims of prior good behavior to support the inference that the LCTA denial and the appeal upholding the denial were retaliatory acts. Even if the inmate progress reports showing above average marks and appended to the complaint (Compl.Ex.F.) can be construed as evidence of plaintiff's prior good behavior, the totality of circumstances -given the lack of vindication or temporal proximity between plaintiff's prior lawsuit and defendants' actions-fails to plausibly allege the causal connection that is essential to a retaliation claim.

**V. Claims of Deprivation of Medical Treatment and Loss of Consortium Are Not Actionable**

*\*6* "To state a claim under § 1983 for deprivation of medical treatment in violation of the Eighth Amendment, [a *pro se* prisoner plaintiff] must show that the defendants acted with 'deliberate indifference to serious medical needs.' " *Sauls v. New York City Dep't of Corrections, 151 Fed.Appx. 38, 39 (2d Cir.2005)* (quoting *Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)*). "Allegations of mere negligence are not sufficient." *Sauls, 151 Fed.Appx. at 39.* "The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the charged official must act with a sufficiently culpable state of mind." *Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994)* (internal quotation marks and citations omitted). "This requires that the prisoner prove that the charged official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Johnson v. Wright, 412 F.3d 398, 403 (2d Cir.2005)* (quoting *Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)*). Plaintiff fails to allege that any of the defendants was aware of his medical conditions, let alone acted with "deliberate indifference" to these conditions. Lastly, " § 1983 does not support derivative claims for loss of consortium." *Wahhab v. City of New York, 386 F.Supp.2d 277, 292 (S.D.N.Y.2005)* (citation omitted); *see Harrison v. Harlem Hosp., No. 05 Civ. 8271(WHP), 2007 WL 2822231, at \*4 (S.D.N.Y. Sept.28, 2007)* ("While the Second Circuit has not addressed whether a plaintiff may bring a loss of consortium claim pursuant to federal civil rights statutes, the weight of authority holds they may not.") (citations to numerous other Circuit court decisions omitted).

**CONCLUSION**

For the foregoing reasons, defendants' Motion to Dismiss **[19]** is GRANTED in its entirety and plaintiff's claims are dismissed without prejudice. Plaintiff is given leave to amend his complaint.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 360289

WESTLAW    © 2021 Thomson Reuters. No claim to original U.S. Government Works.                    5

Cabrera v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 4636798

2018 WL 4636798
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Johans CABRERA, Plaintiff,

v.

CITY OF NEW YORK; and
Claire Lindner, Defendants.

16-CV-2298 (RRM) (RER)
|
Signed 09/26/2018
|
Filed 09/27/2018

**Attorneys and Law Firms**

Johans Cabrera, Albion, NY, pro se.

Colin M. Ceriello, Evan F. Jaffe, Office of the Corporation Counsel New York City Law Department, New York, NY, for Defendants.

**MEMORANDUM AND ORDER**

ROSLYNN R. MAUSKOPF, United States District Judge

  **\*1**  Johans Cabrera brings this *pro se* action, pursuant to 42 U.S.C. § 1983, alleging false arrest, malicious prosecution, and a host of other civil rights violations. The defendants – the City of New York and arresting officer Claire Lindner – moved for summary judgment. (Defs. Mot. (Doc. No. 40).) For the reasons set forth below, the Court grants the defendants' motion.

**BACKGROUND** [1]

[1]   The facts are taken from the record and are undisputed unless otherwise noted.

The events underlying this action took place in a roughly 24-hour period. On June 6, 2015, Cabrera went to a party hosted by Cabrera's friend, Kel-V, with his then-girlfriend KateLynn Abreu. (Cabrera Dep., Ex. F to Defs. Aff./Decl. (Doc. No. 42-6) at 65:3–24.) Cabrera and Abreu left that party in the early evening to go to another friend's backyard barbecue about a block away from the first party. (*Id.* at 75:3–25.) While at this second party, Abreu began fighting with Cabrera after she thought he was flirting with other women. (*Id.* at 77:2–23; 79:7–9.) They left the party after midnight and caught a cab, but were ejected because they were still arguing. (*Id.* at 76:2–4; 79:11–24.) Cabrera and Abreu exited the cab and continued arguing on the street as they walked to a nearby cabstand. (*Id.* at 79:15.) They soon left the stand without calling a cab and continued their argument as they walked down the street. (*Id.* at 79:17–22.)

Abreu then approached two police officers on the street and told them that Cabrera would not leave her alone and had hit her. (*Id.* at 80:3–13.) The officers told Cabrera to remain nearby as they radioed for assistance. (*Id.* at 101:7.) Cabrera, denying that he had hit Abreu, walked toward Kel-V's house, about one and a half blocks from where the police had instructed him to stay. (*Id.* at 102:13; 105:6–22.) The police caught up to Cabrera, arrested him in front of Kel-V's house for assault, obstructing governmental administration, resisting arrest, and harassment. (Ex. G (Doc. No 42-7) at 1.) Cabrera was then taken to the 115th precinct for processing. (Cabrera Dep. at 80:16–22; 105:20–22.)

In the afternoon of June 7, Cabrera appeared in criminal court for his arraignment. (*Id.* at 116:19–20.) The court ordered Cabrera released and issued a temporary order of protection (the "First Order"), which required Cabrera to stay at least 100 yards away from Abreu, and to refrain from either communicating with or assaulting Abreu. The First Order indicated that it was issued on June 7, 2015, and was to remain in force until December 4, 2015. Cabrera signed the Order indicating receipt of its terms. (Ex. H to Defs. Aff./Decl. (Doc. No. 42-8) at 1; Ex. F at 122:8–9.)

After the court entered the First Order, Cabrera told his defense attorney that Abreu, who was present in the courtroom, was willing to tell the prosecutor that Cabrera had never hit her. (Ex. F 123:5–21.) Cabrera's attorney then informed the judge that Abreu had recanted. (*Id.* at 118:17–19.) In response, the judge second-called the case and issued a second temporary order of protection (the "Second Order"). The Second Order directed Cabrera not to assault Abreu, but, unlike the First Order, did not include any stay-away provision. (Ex. I to Defs. Aff./Decl. (Doc. No. 42-9) at 1.) The Second Order was, like the first, dated June 7, 2015, and was to remain in effect until December 4, 2015. Once again, Cabrera signed it. The court provided Cabrera with copies of both Orders, and Cabrera was then released on his own recognizance. (Ex. F at 129:17–25.)

**\*2** Together with Abreu, Cabrera left the courthouse, and the two went to Kel-V's house to recount the events of the night before. (*Id.* at 131:15–25.) They then continued to the 115th precinct to pick up some of Cabrera's belongings that he had left behind following his arrest. (*Id.* at 130:1–3.) Once at the station, a sergeant recognized Cabrera from the night before and asked what Cabrera was doing there with Abreu. (*Id.* at 133:7–10; 134:9–18.) Cabrera told him that he had come to gather his belongings and handed over the copies of the two Orders to a male officer at the precinct. (*Id.* at 134:20–21; 135:7–12.) The sergeant and the officer read the Orders, and, according to Cabrera, the officer appeared to do some type of computer search. (*Id.* at 135:15–17.) The sergeant and officer then went into another room and "grabbed a bunch of officers," who entered the waiting area where Cabrera was sitting. (*Id.* at 135:22–23.)

Officer Claire Lindner then arrested Cabrera for violating a temporary order of protection. (Lindner Aff. (Doc. No. 43) ¶ 10.) In her sworn affidavit, Officer Lindner explains that the desk sergeant told her that Cabrera was in violation of an active order of protection. (*Id.* ¶ 3.) She read the Order that required Cabrera to remain at least 100 yards away from Abreu and noted that the Order had been issued that very day, June 7, and that it was to remain in effect until December 4, 2015. (*Id.* ¶¶ 5–7.) Officer Lindner was informed that the Order was still active. (*Id.* ¶ 9.) She does not mention anything about the Second Order. She then arrested Cabrera for criminal contempt because he was at the precinct with Abreu. (*Id.* ¶ 10.) In response to the arrest, Cabrera "really didn't say anything," except to note that, "this is crazy, I didn't even have an order of protection against me, I just walked out the courtroom with her." (Ex. F at 139:15–19.)

Officer Lindner handcuffed Cabrera with a single cuff behind his back. (*Id.* at 146:10.) Cabrera related at his deposition that, during the booking process, he "told [Officer Lindner] exactly how it happened, exactly what – exactly how it happened" and told her "about what happened in court." (*Id.* at 142:3–5; 146:20–23.)

Cabrera claims that while getting into the van to go to Central Booking, he told Officer Lindner that his handcuffs were too tight. (*Id.* 144:14–22.) Officer Lindner disputes this. (Lindner Aff. ¶¶ 13, 15.) Cabrera also claims that, once he was at Central Booking, he told Officer Lindner that his arm, shoulder, and wrists hurt and that the handcuffs were too tight. (*Id.* at 147:9–15.) Officer Lindner told Cabrera that there

was nothing she could do. (*Id.* at 150:11–12.) As a result of the handcuffs, Cabrera says that his wrist is "messed up," "cracks," and hurts more when it is cold outside. (*Id.* at 155:7–10.)

Cabrera was eventually transferred to Department of Correction custody, where he told a corrections officer that he was in pain. (*Id.* at 151:16–19.) The officer responded that if Cabrera requested medical attention, then he would be held longer in order to obtain medical care. (*Id.* at 151:20–22.) Cabrera decided not to seek medical help. (*Id.* at 151:22.) Cabrera was released from custody at Central Booking. He received a letter from the criminal court apologizing for the court's error in imposing two conflicting temporary orders of protection. (*Id.* at 153:15–18.) He did not appear in court and was not criminally charged. (*Id.* at 154:22–24.)

About a month after Cabrera's arrest, Cabrera saw Doctor Steven Struhl at the urging of his then-attorney Kenneth Richardson. (*Id.* at 158:1–8.) Dr. Struhl found that Cabrera's wrist exhibited "no swelling" and had a "nearly full" range of motion. (Ex. J to Defs. Aff./Decl. (Doc. No. 42-10) at 2.) He noted some tenderness and "pain with resisted supination." (*Id.*) He directed Cabrera to get an MRI of his wrist, which Cabrera did not do. (*Id.* at 1.)

**\*3** Cabrera was represented by counsel at the time the complaint was filed, and counsel drafted both the complaint and amended complaint. Cabrera's counsel then moved to withdraw, and Magistrate Judge the Honorable Ramon E. Reyes, Jr. granted that request. (*See* 4/4/2017 Order.) The defendants filed an unopposed motion for summary judgment. The Court granted Cabrera additional time to oppose the defendants' motion should he wish to do so. The defendants promptly served that Order on Cabrera. (*See* Doc. No. 50.) Cabrera then filed a brief opposition, and the defendants replied. (Pl. Opp'n (Doc. No. 51); Defs. Reply (Doc. No. 52).) For the reasons set forth below, defendants' motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 98 of 119

Cabrera v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 4636798

genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R. Civ. P. 56(e) ) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548) (internal quotation marks omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505).

## DISCUSSION

### I. § 1983 Claims of False Arrest and False Imprisonment

The elements of a Section 1983 claim for false arrest are "substantially the same" as those of a "claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), *cert. denied*, 528 U.S. 946, 120 S.Ct. 363, 145 L.Ed.2d 284 (1999). "Under New York state law, to prevail on a claim of false arrest a plaintiff must show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.' " *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975), *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975) ). "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). The same is true for false imprisonment claims. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

**\*4** An officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jocks*, 316 F.3d at 135 (internal quotation marks omitted). Probable cause is not negated simply because there may be an innocent explanation for the facts alleged, and "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006).

Here, Officer Lindner had probable cause to arrest. Under New York law, the crime of criminal contempt in the second degree requires that (1) a valid order of protection existed; (2) the defendant knew about that order; and (3) the defendant intended to violate the order. N.Y.P.L. § 215.50(3). It is undisputed that both Officer Lindner and Cabrera knew about the First Order. It is also undisputed that Cabrera showed up to the precinct with Abreu, in violation of the terms of the First Order. Officer Lindner could infer Cabrera's intent to violate the First Order from his presence at the precinct with Abreu. *Carthew v. Cty. of Suffolk*, 709 F.Supp.2d 188, 198 (E.D.N.Y. 2010). Typically, an "arresting officer's awareness of the protective order is itself a significant factor in establishing probable cause." *Id.* at 197 (collecting cases); *see also Otero v. Jennings*, 698 F.Supp. 42, 45 (S.D.N.Y. 1988) ("New York equates an order of protection with a showing of probable cause.").

In his amended complaint, Cabrera alleges that he was arrested for violating an "Order of Protection that was no longer in effect." (Am. Compl. ¶ 23.)[2] Though the Second Order superseded the First, Officer Lindner had probable

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 99 of 119
Cabrera v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 4636798

cause to arrest Cabrera. On numerous occasions, courts have found that the arresting officer had probable cause where the officer "acted reasonably and in good faith in relying upon" what ultimately turns out to be mistaken information. *Welch v. City of New York*, No. 95-CV-8953 (RPP), 1997 WL 436382, at *5 (S.D.N.Y. Aug. 4, 1997) (internal quotation marks omitted). In *Welch*, for instance, the officer arrested the plaintiff for violating what turned out to be an expired order of protection. The court there held that the officer nevertheless had probable cause to arrest because the order appeared valid on its face, and the officer was told that arrest, under the circumstances, was mandatory. *Id.*; *see also Little v. Massari*, 526 F.Supp.2d 371, 375 (E.D.N.Y. 2007) (finding that because "the face of the Orders of Protection did not necessarily give defendants notice that plaintiff might be relieved of some of the specific prohibitions that it included," the officer had probable cause to arrest for violation of the order).

[2]    Cabrera's opposition to the motion for summary judgment says only that there remain "clear issues of facts." (Pl. Opp'n at 1.) Besides stating that "[t]here was no crime, nor justification for the police conduct," Cabrera cites no law or fact to support his claims.

Here, nothing on the face of the First Order indicated that it had expired. Officer Lindner inspected the First Order and found that it was facially valid. (Lindner Aff. ¶ 7.) It bore a judge's signature and court seal and was to remain in effect until December 4. (Ex. H.) Nothing on the face of the First Order indicated that it had been superseded, and, in fact, another officer did a computer check and informed Officer Lindner that the Order was still active. (Lindner Aff. ¶ 9.) The facial validity of the First Order plus the confirmation from the second officer that the First Order was still valid gave Officer Lindner probable cause to arrest Cabrera.

**\*5** Officer Lindner's failure to undertake a more thorough investigation into the validity of the First and Second Orders does not alter the conclusion that probable cause existed to arrest Cabrera. As explained above, the First Order's facial validity, coupled with the information that the Order remained active, gave Officer Lindner probable cause to arrest, and "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (internal citation omitted); *see also Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir.

1989) ("Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury.").

However, even if Officer Lindner knew about the Second Order prior to arresting Cabrera, she still would have had probable cause to arrest. In *Valcarcel v. City of New York*, for instance, the plaintiff told the arresting officer that the temporary order of protection had been vacated, but the officer arrested him anyway. No. 13-CV-1740 (KAM) (CLP), 2014 WL 4370814, at *2 (E.D.N.Y. Jul. 29, 2014), *report and recommendation adopted by*, 2014 WL 4370858 (E.D.N.Y. Sept. 2, 2014). The court there found that "the officer was under no obligation to investigate further simply on the basis of plaintiff's statement and that it would have been unreasonable to release the plaintiff in the absence of clear evidence that the [temporary order of protection] was not still extant." *Id.* at *9. Here, as in *Valcarcel*, it was not obvious from the face of the First Order that it was superseded, and, as a result, Officer Lindner had probable cause to arrest Cabrera on the basis of the First Order.

Alternatively, if Officer Lindner had been aware of the Second Order prior to arresting Cabrera, she, at the very least, would have had arguable probable cause. Officers have arguable probable cause, and therefore are shielded from liability, where "it was objectively reasonable for the officer to believe that probable cause existed" or "officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Here, nothing on the face of the First Order suggested that it had been superseded. A database appeared to confirm that the First Order was still active. Both Orders were issued on the same day and were to remain in effect until December.

The amended complaint suggests that Officer Lindner should have further investigated by calling the court where the Orders were issued. (Am. Compl. ¶ 29.) However, "the role of the court is not to overly scrutinize the decisions of police officers from its vantage in chambers ... but to determine whether the officers acted reasonably ..." *Rae v. Cty. of Suffolk*, 693 F.Supp.2d 217, 225 (E.D.N.Y. 2010) (internal citation omitted).

Here, Officer Lindner's actions were reasonable. Without knowing which Order superseded the other, and based on the information that the First Order was in fact valid, it was reasonable for Officer Lindner to arrest Cabrera. *See Carthew*, 709 F.Supp.2d at 204 ("Qualified immunity protects from

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 100 of 119

Cabrera v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 4636798

personal liability under § 1983 officers who make reasonable judgment calls under the circumstances – particularly when, as here, the officer is put in the middle of a heated and potentially volatile familial dispute."); *Little*, 526 F.Supp.2d at 377. The Second Circuit has repeatedly emphasized that qualified immunity protects all but the 'plainly incompetent and those who knowingly violate the law.' " *Moore v. Andreno*, 505 F.3d 203, 214 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ). Here, there is no such evidence of misconduct.

**\*6** As acknowledged by the letter sent to Cabrera, the state court apparently made a mistake and kept open two active, but conflicting, orders of protection. This administrative slip-up led to Cabrera's arrest. The ordeal, however trying for Cabrera, does not give rise to liability of Officer Lindner because she had probable cause – or at least arguable probable cause – to arrest. Cabrera's claims for false arrest and false imprisonment are dismissed.

## II. Excessive Force

Cabrera alleges that Officer Lindner used excessive force by handcuffing him "to the point of causing him pain," and did not accommodate Cabrera's pleas that the handcuffs be loosened. District courts in this circuit have developed a three-prong analysis to evaluate an excessive force claim based exclusively on tight handcuffing. The court considers whether: "(1) the handcuffs were unreasonably tight; (2) the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *Wang v. Vahldieck*, No. 09-CV-3783 (ARR) (VVP), 2012 WL 119591, at \*7 (E.D.N.Y. Jan. 9, 2012) (internal quotation marks omitted). This last requirement is especially important because "to be effective, handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Esmont v. City of New York*, 371 F.Supp.2d 202, 214 (E.D.N.Y. 2005).

There is consensus in the Second Circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort. *See, e.g.,* *Wilder v. Vill. of Amityville*, 288 F.Supp.2d 341, 344 (E.D.N.Y. 2003) ("Plaintiff's allegation of sore, yet uninjured, wrists simply does not rise to the level of objective excess that reasonable police officers would consider to be unlawful conduct in an arrest situation."); *see also Hamlett v. Town of Greenburgh*, No. 05-CV-3215 (MDF), 2007 WL 119291, at \*3 (S.D.N.Y. Jan. 17, 2007); *Drummond v. Castro,* 522 F.Supp.2d 667, 679 (S.D.N.Y. 2007); *Grant v. City of New York*, 500 F.Supp.2d 211, 217 (S.D.N.Y. 2007); *Golio v. City*

*of White Plains*, 459 F.Supp.2d 259, 265 (S.D.N.Y. 2006). As one court explained, "handcuffing can give rise to a § 1983 excessive force claim where plaintiff suffers an injury as a result. However, if the application of handcuffs was merely uncomfortable or caused pain, that is generally insufficient to constitute excessive force." *Gonzalez v. City of New York*, No. 98-CV-3084 (ILG), 2000 WL 516682, at \*4 (E.D.N.Y. Mar. 7, 2000) (internal citations omitted). Indeed, "the most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage." *Usavage v. Port Auth. of New York and New Jersey*, 932 F.Supp.2d 575, 592 (S.D.N.Y. Mar. 26, 2013) (collecting cases).

The record here does not reveal any injury sufficiently severe to survive summary judgment. Courts have routinely found that allegations like Cabrera's – that he was kept in handcuffs for several hours – do not amount to excessive force. *See Selvaggio v. Patterson*, 93 F.Supp.3d 54, 74–75 (E.D.N.Y. 2015) (collecting cases). Cabrera has not shown any injury to his wrist that the handcuffs may have caused, apart from his vague assertion that his wrist "cracks" and is "messed up." (Ex. F at 155:7–10.) His refusal to seek medical attention further suggests that Cabrera's discomfort did not rise to the level of excessive force in violation of the Fourth Amendment. At Central Booking, Cabrera underwent medical screening but declined medical attention for his wrist. Furthermore, Cabrera did not see a doctor about his wrist until a month after he had been handcuffed and only after his attorney instructed him to do so. Cabrera apparently told Dr. Struhl that an officer had "twisted his arm." (Ex. J at 2.) Dr. Struhl was unable to determine what injury Cabrera had sustained and directed Cabrera to get an MRI, which he never did. (*Id.* at 1.)

**\*7** Thus, the Court concludes that any injury Cabrera sustained was *de minimis*, and thus warrants summary judgment. *See, e.g., Lemmo v. McKoy*, No. 08-CV-4264 (RJD), 2011 WL 843974, at \*5 (E.D.N.Y. Mar. 8, 2011) ("Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches with a cut inside the mouth.") (internal citations omitted) (collecting cases). [3]

[3]      Alternatively, Officer Lindner is entitled to qualified immunity on Cabrera's excessive force claim. She did not violate any "clearly established rights" by handcuffing Cabrera, and based on the

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 101 of 119

Cabrera v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 4636798

minimal degree of injury sustained, "officers of reasonable competence could disagree" whether the tightness was reasonable. *Escalera*, 361 F.3d at 743.

### III. Malicious Prosecution[4]

[4]     Cabrera does not address his malicious prosecution claims, or any of his remaining causes of action, in his opposition. However, in an abundance of caution and in light of Cabrera's *pro se* status, the Court will address the remaining claims and not deem them abandoned.

To succeed on a malicious prosecution claim under § 1983, a plaintiff must show (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) (internal citation omitted). In addition, to maintain such a claim, the "deprivation of liberty – the seizure – must have been effected pursuant to legal process." *Singer*, 63 F.3d at 117 (internal quotation marks omitted). Typically, the legal process "will be either in the form of a warrant, in which case the arrest itself may constitute the seizure ... or a subsequent arraignment, in which case any post-arraignment deprivations of liberty ... might satisfy this constitutional requirement." *Id.* A "warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest ... while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty." *Id.* (internal citation omitted).

Here, Cabrera's malicious prosecution claims fails for several reasons. First, as explained above, there was probable cause for his arrest. Second, Cabrera was neither arrested pursuant to a warrant, nor was he arraigned and charged with a crime. Accordingly, there was no prosecution that could have been malicious, nor any proceeding that could terminate in Cabrera's favor. The defendants' motion for summary judgment on Cabrera's malicious prosecution claim is therefore granted.

### IV. Additional Claims

Cabrera alleges numerous additional claims, all detailed below. Each fails because Cabrera has not alleged any facts to support these claims.

#### a. Eighth Amendment Violation

Cabrera brings an Eighth Amendment challenge. (Am. Compl. ¶¶ 36, 69D.) The Eighth Amendment, however, does not apply until "after conviction and sentence." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ). Because Cabrera was never arraigned, his excessive force claim is governed by the Fourth, not the Eighth, Amendment. Accordingly, Cabrera's Eighth Amendment claim is dismissed.

#### b. First Amendment Violation

**\*8** Cabrera brings a First Amendment violation and alleges that the defendants violated his right "[t]o be free to exercise free speech." (Am. Compl. ¶ 69F.) To prevail on a First Amendment theory of retaliatory arrest, Cabrera must prove that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (quoting *Curley*, 268 F.3d at 73). The Second Circuit has held that probable cause is a complete defense to a claim of retaliatory arrest. *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012).[5] The Court has already concluded that Officer Lindner had probable cause, or at least arguable probable cause, to arrest Cabrera. Furthermore, with respect to the third element, Cabrera has not shown that his First Amendment rights were "actually chilled." *Curely v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (quoting *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir. 1978) ). Thus, his First Amendment retaliatory arrest claim is dismissed.

[5]     The Supreme Court's recent ruling in *Lozman v. City of Riviera Beach*, 585 U.S. ——, 138 S.Ct. 1945, 201 L.Ed.2d 342 (2018) does not alter this conclusion. In *Lozman*, the Court held that under certain circumstances, where a plaintiff alleges that his arrest was prompted by an official municipal retaliatory policy, probable cause is not a defense to retaliatory arrest. Such circumstances are not present here.

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 102 of 119

Cabrera v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 4636798

### c. Equal Protection Violation

Cabrera alleges in his amended complaint that the defendants discriminated against him on the basis of his race in violation of the Equal Protection Clause. (Am. Compl. ¶¶ 51–54.) "To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Here, Cabrera has offered nothing beyond the bare assertion that he was arrested because he is Latino. He has not alleged any disparity in treatment between himself and another person, and besides mentioning in the amended complaint that he identifies as Latino, he alleges no other facts related to his ethnicity or national origin. *See Gordon v. City of New York*, No. 10-CV-5148 (CBA) (LB), 2012 WL 1068023, at *9 (E.D.N.Y. Mar. 29, 2012) (dismissing an equal protection violation claim where the plaintiff offered only bare assertions that the actions taken against him were because he "is of a minority race").

### d. *Monell* Liability

Cabrera also brings a *Monell* challenge against the City of New York. (Am. Compl. ¶ 63.) He asserts that New York and the New York Police Department have a policy of: fabricating evidence against innocent persons; arresting innocent persons notwithstanding the existence of credible evidence exonerating the accused; violating the free speech rights of persons; assaulting and battering persons for no reason and without provocation; committing all of the above disproportionately against people of color. (*Id.*)

A municipality may be held liable under § 1983 only if the constitutional violation at issue results from the municipality's official policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This policy may be an express policy or "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (internal quotation marks omitted).

Under Second Circuit law, a "prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Claudio v. Sawyer*, 675 F.Supp.2d

403, 408 (S.D.N.Y. 2009); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."). Here, the Court has not found any underlying constitutional violation, and therefore, Cabrera's *Monell* claim could be dismissed on this ground alone. In addition, as the defendants accurately point out, Cabrera's conclusory allegations about the City's alleged policies are insufficient to state a valid *Monell* claim. *See, e.g., Ngemi v. Cty. of Nassau*, 87 F.Supp.3d 413, 419 n.6 (E.D.N.Y. 2015) (noting that conclusory allegations of a policy and practice are insufficient to state a plausible *Monell* claim).

### e. Due Process Violations

**\*9** Cabrera alleges violations of the Fifth and Fourteenth Amendments.[6] He alleges that the defendants' actions violated his right "[n]ot to be deprived of liberty without due process of law." (Am. Compl. ¶ 69(A).) As noted above, Cabrera's allegations that the City fabricates evidence against the innocent are simply too speculative to state a plausible Fourteenth Amendment violation. *See, e.g., Rutigliano v. City of New York*, No. 07-CV-4614 (JSR), 2008 WL 110946, at *4 (S.D.N.Y. Jan. 2, 2008) ("Mere conclusory allegations of a deprivation cannot support a claim for a procedural due process violation.").

6        The Due Process provision of the Fifth Amendment applies in actions against the federal government, not against state or local governments and officials. *Viteritti v. Inc. Vill. of Bayville*, 831 F.Supp.2d 583, 592 (E.D.N.Y. 2011). Additionally, the Fifth Amendment provides guarantees to the right to a grand jury, prohibits double jeopardy and taking private property without just compensation, and protects the privilege against self-incrimination. None of these are relevant here.

### f. State Law Claims

The amended complaint also appears to allege a number of state law violations, including intentional infliction of emotional distress, false arrest, negligent supervision, and negligent training. Because the Court dismisses all the federal claims, the Court declines to exercise its supplemental

Cabrera v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 4636798

jurisdiction over Cabrera's state law claims. 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons stated herein, the defendants' motion for summary judgment (Doc. No. 40) is granted. The Clerk of Court is directed to enter judgment accordingly, mail a copy of this Order to *pro se* plaintiff Johans Cabrera, note the mailing on the docket, and close the case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4636798

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 2537312

2019 WL 2537312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence DELANEY, Jr., Plaintiff,

v.

CITY OF ALBANY, et al., Defendants.

No. 1:18-CV-1193 (DNH/CFH)
|
Signed 06/20/2019

**Attorneys and Law Firms**

Clarence Delaney Jr., 17-A-0236, Fishkill Correctional
Facility, P.O. Box 1245, Beacon, New York 12508, Plaintiff
pro se.

**REPORT-RECOMMENDATION AND ORDER**

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

 **\*1** Plaintiff pro se Clarence Delaney, Jr. commenced this
action on October 4, 2018 against defendants City of Albany,
Detective ("Det.") Brace, Det. DiGiuseppe, and John Doe
police officers 1-4. See Dkt. No. 1. Presently pending
before the Court is a review of plaintiff's second amended
complaint pursuant to § 1915(e)(2)(B). Dkt. No. 17 ("Sec.
Am. Compl.").

**I. Background**

Following a review of the amended complaint pursuant to
28 U.S.C. § 1915(e), the undersigned granted plaintiff's In
Forma Pauperis ("IFP") application and recommended that
(1) to the extent that plaintiff sought to bring his claims
against Det. Brace, Det. DiGiuseppe, and the John Doe
police officer defendants in their official capacities, these
claims be dismissed with prejudice; (2) plaintiff's official
misconduct claim be dismissed with prejudice; (3) plaintiff's
false imprisonment, false arrest, and defamation claims,
insofar as they are brought against the individual defendants
in their individual capacities, be dismissed without prejudice
and with opportunity to amend to specify (i) the charges
brought against plaintiff and whether any conviction or
sentence has been declared invalid, or whether there are any
charges pending arising out of the incident set forth in the

Amended Complaint, and (ii) whether the alleged defamatory
statement was published to a third party; (4) plaintiff's
municipal liability claim be dismissed without prejudice and
with an opportunity to specify a custom or policy set forth
by the City of Albany and demonstrate an affirmative link
between that policy and defendants' alleged constitutional
violations; and (5) plaintiff's Fourth Amendment excessive
force and intentional infliction of emotional distress ("IIED")
claims against the individual defendants proceed. See Dkt.
No. 15 at 16, 19-20.

On April 30, 2019, District Judge David N. Hurd adopted
the Report-Recommendation and Order in its entirety. Dkt.
No. 16. In that Decision and Order, Judge Hurd directed that
if plaintiff filed a timely second amended complaint, it be
forwarded to the undersigned for review. Id. at 3. On May
8, 2019, plaintiff filed a second amended complaint. See
generally Sec. Am. Compl.

**1. Additional Factual Background** [1]

[1]     For a full review of the facts alleged in this matter,
        reference is made to this Court's prior Report-
        Recommendation and Order (Dkt. No. 15) and to
        the second amended complaint. Sec. Am. Compl.

Plaintiff contends that he was charged with two counts of
felony grand larceny in the fourth degree for stealing credit
cards, and felony criminal possession of stolen property in
the fourth degree for his possession of stolen credit cards and
"makita drills." Sec. Am. Compl. at 6. Plaintiff maintains that
the "makita drills" were never in his possession. Id. Five days
later, at the preliminary scheduling hearing, the prosecutor
reduced plaintiff's charges and added a separate charge
of obstruction to governmental administration concerning
plaintiff's alleged refusal to be fingerprinted during booking.
Id. Plaintiff pleaded guilty to the obstruction charge on
February 7, 2019 and was sentenced to time served. Id.;
Dkt. No. 17-1 at 2. [2] Plaintiff states that Albany City
Court Judge Stilgmeier dismissed "all other charges related
to [his] initial unlawful arrest ... on record as a way to
protect defendants from testifying at [his] February 7, 2019
probable cause hearing[.]" Sec. Am. Compl. at 6. Plaintiff
suggests that the records in his criminal file were inaccurate
because the prosecutor's information incorrectly named the
owner of the allegedly stolen "makita drills", and the actual
owner was a friend and/or relative of Det. Brace. Id. at 7.
Plaintiff argues this amounts to malicious prosecution. Id.

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 105 of 119

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 2537312

Plaintiff also contends that the $ 117.00 that Det. DiGiuseppe allegedly took during his arrest has not been returned. Id. Judge Stilgmeier ordered the return of the money during the February 7, 2019 hearing. Id. [3] Plaintiff "believes this whole matter to be a big conspiracy ... by the defendants." Id. at 8.

[2]     Plaintiff does not set forth any claims in this action relating to the obstruction charge.

[3]     The undersigned has considered the documents in Dkt. No. 18.

**\*2** Plaintiff further contends that the "City of Albany failed to train, supervise, and discipline its employees, specifically the defendants because the City and Chief of Police [were] informed by the plaintiff through a [letter complaint] and through the Civilian Complaint Review Board[.]" Sec. Am. Compl. at 8. Plaintiff alleges that the City of Albany has an ongoing practice wherein police officers "violat[e] citizens constitutional rights through illegal search and [seizure] and excessive force[.]" Id. Plaintiff contends that he has had "problems" with Det. DiGiuseppe in the past and argues that "there apparently appears to be a problem with the City of Albany failing to properly train, supervise and discipline their police officers." Id. at 9. Plaintiff argues that the City of Albany is liable because the defendants were deliberately indifferent to his constitutional rights "by law that is clearly established and their actions multiple times prior which triggered a civil rights action in the past by other police officers and one of the part[ies] in this present action Detective DiGiuseppe [.]" Id.

### II. Review of Second Amended Complaint [4]

[4]     Any unpublished decisions cited within this Report-Recommendation and Order have been provided to plaintiff pro se.

### 1. False Imprisonment, False Arrest, and Malicious Prosecution

In the April 4, 2019, Report-Recommendation and Order, the undersigned recommended that plaintiff be granted the opportunity to amend his complaint to specify whether plaintiff's false imprisonment and false arrest claims were barred by Heck v. Humphrey, 512 U.S. 477 (1994). See Dkt. No. 15 at 19. Plaintiff alleges that, in connection with

the August 2018 incident, he was initially charged with two counts of felony grand larceny in the fourth degree for stealing credit cards, and felony criminal possession of stolen property in the fourth degree for his possession of stolen credit cards and "makita drills, but that these charges were dismissed in Albany City Court on February 7, 2019." [5] See Sec. Am. Compl. at 6. At this early stage in the litigation, because plaintiff sufficiently alleges that the charges against him were dismissed on February 7, 2019, he has demonstrated that his causes of action for false imprisonment and false arrest would not otherwise render his sentence invalid because his charges resulting from the August 2018 arrest have been vacated. See Heck, 512 U.S. at 486-87; cf. Godley v. Onondaga Cnty., No. 6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at *6 (N.D.N.Y. Jan. 6, 2017) ("Here, because Plaintiff has failed to show that his conviction has been overturned (and, in fact, declares he is currently incarcerated as a result of the above-referenced constitutional violations for a crime he did not commit) his § 1983 claims are barred under Heck unless and until such time as Plaintiff's conviction is overturned or his sentence is invalidated."). The undersigned notes that plaintiff's guilty plea to the obstruction charge does not impact the Heck analysis as the incident occurred in the booking room at the City of Albany Police Station after plaintiff had been arrested. See Sec. Am. Compl. at 6. As such, the obstruction charge does not stem from plaintiff's August 9, 2018 arrest and his conviction for obstruction would not be called into question by plaintiff's claims of false arrest and false imprisonment. See id.

[5]     Plaintiff proffers documents concerning the disposition of his charges, which seem to suggest that the charges from the August 2018 incident were consolidated into a separate case in Albany City Criminal Court. See Dkt. No. 17-1 at 1, 3.

As to the merits of plaintiff's causes of action, the elements for false arrest and false imprisonment under either § 1983 or New York law require a plaintiff to demonstrate that " '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (quoting Broughton v. State, 37 N.Y. 2d 451, 456 (1975) (setting forth the standard for false imprisonment)); Corye v. Michel, No. 1:16-CV-00887 (GTS/TWD), 2016 WL 11477503, at *4 (N.D.N.Y. Oct. 4, 2016), report and recommendation adopted 2016 WL 6820377 (N.D.N.Y. Nov. 18, 2016) (citation omitted) (setting forth the standard for

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 2537312

false arrest). "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." Vasquez v. City of New York, No. 99 Civ. 4606(DC), 2000 WL 869492, at *3 (S.D.N.Y. June 29, 2000) (quoting Covington v. City of New York, 171 F.3d 117, 125 (2d Cir. 1999)); see also Kilburn v. Vill. of Saranac Lake, 413 F. App'x 362, 363 (2d Cir. 2011) (summary order) (stating that, under New York law, a false imprisonment "claim is identical to a false arrest claim").

**\*3** Plaintiff contends that Det. Brace, Det. DiGiuseppe, and the John Doe police officers "unlawfully arrested and detained [him] without probable cause" for a crime that he did not commit. See Sec. Am. Compl. at 10-11. As such, at this stage in the litigation, plaintiff has adequately pleaded that (1) Det. Brace, Det. DiGiuseppe, and the John Doe police officers intended to confine him; (2) plaintiff was conscious of that confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. See Singer, 63 F.3d at 118. The undersigned notes that probable cause is a complete defense to claims of false arrest and false imprisonment. See Hawthorne v. City of Albany, No. 1:17-CV-00716 (GTS/TWD), 2017 WL 3822112, at *6 (N.D.N.Y. July 25, 2017), report and recommendation adopted sub nom. Hawthorne v. Ruecker, 2017 WL 4351520 (N.D.N.Y. Oct. 2, 2017) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "However, '[w]hen planted evidence is the basis for an arrest, officers accused of planting the evidence cannot assert probable cause as a reason to dismiss a claim for false arrest.'" Id. (quoting Hill v. Melvin, No. 05 Civ. 6645 (AJP), 2006 WL 1749520, at *11 (S.D.N.Y. June 27, 2006), aff'd 323 F. App'x 61 (2d Cir. 2009) (summary order)). Thus, because plaintiff contends that he was not in possession of the "makita drills" or the credit cards, and seems to suggest that defendants may have planted the allegedly stolen items nearby because of his "problems" with Det. DiGiuseppe, see Sec. Am. Compl. at 5-6, at this early stage in the litigation, plaintiff's allegations are sufficient to establish plausible false imprisonment and false arrest claims, and it is recommended that plaintiff's claims be permitted to proceed.

To the extent that plaintiff attempts to set forth a malicious prosecution claim, see Sec. Am. Compl. at 7, the undersigned reaches the same result. The elements of a malicious prosecution claim are "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (quoting Colon v. City of New York, 60

N.Y.2d 78, 82 (1983) (internal quotation marks omitted)). "In addition, the Second Circuit requires that a plaintiff demonstrate that there was a 'post arraignment seizure,' since a § 1983 malicious prosecution claim is 'grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures.'" Hawthorne, 2017 WL 3822112, at *6 (quoting Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013)).

Plaintiff has alleged that in August 2018, he was arrested and charged with two counts of felony grand larceny in the fourth degree for stealing credit cards, and felony criminal possession of stolen property in the fourth degree for his possession of stolen credit cards and "makita drills," which were ultimately reduced at his preliminary hearing. Sec. Am. Compl. at 6. Plaintiff contends that the charges were dismissed on February 7, 2019, indicating not only a favorable termination for plaintiff, but also a post-arraignment seizure. See id.; Savino, 331 F.3d at 72; Hawthorne, 2017 WL 3822112, at *6. Moreover, plaintiff contends that defendants targeted him due to prior interactions with them, and that he was not in possession of the "makita drills" or stolen credit cards and that they may have been planted, suggesting a lack of probable cause and malice. See id. at 6-7; Savino, 331 F.3d at 72; Hawthorne, 2017 WL 3822112, at *6. Accordingly, at this early stage, plaintiff sufficiently sets forth a plausible malicious prosecution, and it is recommended that plaintiff's claim be permitted to proceed. See Hawthorne, 2017 WL 3822112, at *1, 6 (allowing a malicious prosecution claim to proceed against the police officer defendants); Frederique v. Cnty. of Nassau, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) ("[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or when she withholds relevant and material information.").

**2. Defamation**

In the April 4, 2019, Report-Recommendation and Order, the undersigned recommended that plaintiff be granted the opportunity to amend his complaint to specify whether his defamation claim was barred by Heck, and whether the alleged defamatory statement was published to a third party. Dkt. No. 15 at 19. For the reasons set forth above, the undersigned finds that plaintiff's defamation claim is not subject to a Heck bar because he sufficiently alleges that the charges against him were dismissed. See supra, at 5-6.

**\*4** With respect to defamation's publication requirement, the undersigned previously noted that "[u]nder New York defamation law, 'publication is a term of art.... A defamatory writing is not published if it is read by no one but the one defamed. Published is, however, as soon as read by any one else.' " Albert v. Loksen, 239 F.3d 256, 269 (2d Cir. 2001) (quoting Ostrowe v. Lee, 256 N.Y. 36, 38 (1931)). Still, the undersigned notes that "it is well-established that a statement is generally 'subject to a qualified privilege when it is fairly made by a person in the discharge of some public or private duty, legal or moral.' " Frederique, 168 F. Supp. 3d at 488 (quoting Chandok v. Klessig, 632 F.3d 803, 814 (2d Cir. 2011)). "Qualified privilege exists where communications are: '(1) made by an individual who has an interest in the subject, or a moral or societal duty to speak; and (2) sent to a person who has a corresponding interest or duty.' " Id. (quoting Nicholas v. Cty. of Binghamton, No. 10-CV-1565, 2012 WL 3261409, at \*19 (N.D.N.Y. Aug. 8, 2012). The undersigned notes that although plaintiff argues that Det. Brace "lied in a written report to [his] parole officer that [he] was in possession of makita drills that had been reported stolen ... which was untrue and defamation to my name, status as a parolee, and reputation," Sec. Am. Compl. at 5, such communication constitutes internal correspondence between a police officer and a parole officer. By nature of their positions in law enforcement, it is clear that Det. Brace had a legal obligation to inform plaintiff's parole officer that plaintiff had been charged with certain crimes. See Frederique, 168 F. Supp. 3d at 488 (concluding that the plaintiff's defamation claims against the defendant police officer must fail because the alleged defamatory document was an internal communication between the defendant police officer and a commanding officer of the Internal Affairs Unit). However, a plaintiff may overcome the qualified privilege defense if he or she establishes that the defendant "acted beyond the scope of the privilege, with common law malice, or with knowledge that the statement was false or with reckless disregard as to its truth." Id. (citation omitted). As plaintiff maintains that he was not in possession of the goods he allegedly stole at the time of his arrest and that defendants targeted him due to prior "problems" with Det. DiGiuseppe, the undersigned concludes that, at this early stage in the litigation, plaintiff adequately pleaded sufficient information to overcome this privilege. Accordingly, it is recommended that plaintiff's defamation claim pursuant to New York State law proceed.

### 3. Assault and Battery

In addition to his constitutional claims, plaintiff's second amended complaint raises claims for assault and battery under New York State law. See Sec. Am. Compl. at 12. "To succeed on an assault or battery claim in the law enforcement context, a plaintiff must demonstrate that defendants' conduct was not reasonable within the meaning of the New York statute concerning justification for law enforcement's use of force in the course of performing their duties." Simmons v. Cowan, No. 5:12-CV-1851, 2015 WL 12513461, at \*5 (N.D.N.Y. Mar. 11, 2015) (citation and internal quotations omitted). Further, "the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York law." Id. (citing Humphrey v. Landers, 344 F. App'x 686, 688 (2009) (summary order) ("Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical.")). [6]

[6]

N.Y. Penal Law § 35.50(1) states:

1. A police officer or a peace officer, in the course of effecting or attempting to effect an arrest, or of preventing or attempting to prevent the escape from custody, of a person whom he or she reasonably believes to have committed an offense, may use physical force when and to the extent he or she reasonably believes such to be necessary to effect the arrest, or to prevent the escape from custody, or in self-defense or to defend a third person from what he or she reasonably believes to be the use or imminent use of physical force; except that deadly physical force may be used for such purposes only when he or she reasonably believes that:

(a) The offense committed by such person was:

(i) a felony or an attempt to commit a felony involving the use or attempted use or threatened imminent use of physical force against a person; or

(ii) kidnapping, arson, escape in the first degree, burglary in the first degree or any attempt to commit such a crime; or

(b) The offense committed or attempted by such person was a felony and that, in the course of resisting arrest therefor or attempting to escape

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 2537312

from custody, such person is armed with a firearm or deadly weapon; or

(c) Regardless of the particular offense which is the subject of the arrest or attempted escape, the use of deadly physical force is necessary to defend the police officer or peace officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force.

As to whether defendants' alleged conduct was reasonable, plaintiff alleges that defendants "manhandl[ed] [him] causing injuries to [his] right arm," and that he informed defendants that their actions were aggravating his "disabling right arm" condition. Sec. Am. Compl. at 4, 10. There is no indication in the second amended complaint that plaintiff acted in a manner to cause the defendants to reasonably believe that such force was necessary to effectuate the arrest. See N.Y. PENAL LAW § 35.50(1). As such, at this stage in the litigation, the undersigned finds that plaintiff has set forth a colorable claim for assault and battery, and its recommended that plaintiff's claims be permitted to proceed.

### 4. Municipal Liability

 *5  In the April 4, 2019, Report-Recommendation and Order, the undersigned recommended that plaintiff be granted the opportunity to amend his complaint to identify a custom or policy set forth by the City of Albany and demonstrate an affirmative link between that policy and defendants' alleged constitutional violations. Dkt. No. 15 at 16. "Pursuant to the standard for establishing municipality liability laid out in [Monell v. Dept. of Soc. Serv., 436 U.S. 658, 658 (1978)], in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights 'was caused by a governmental custom, policy, or usage of the municipality.' " Schisler v. Utica Police Dep't., No. 6:16-CV-01051 (MAD/ TWD), 2016 WL 11265987, at *2 (N.D.N.Y. Sept. 9, 2016) (quoting Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012)); see Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer."). "[P]laintiff must establish that an identified municipal policy was the 'moving force [behind] the constitutional violation.' " Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (quoting Monell, 436 U.S. at 694) (emphasis added).

In his second amended complaint, plaintiff argues that the "City of Albany failed to train, supervise, and discipline its employees, specifically the defendants[.]" Sec. Am. Compl. at 8. Plaintiff alleges that the City of Albany has an ongoing custom, wherein police officers "violat[e] citizens constitutional rights through illegal search and [seizure] and excessive force[.]" Id. Plaintiff states that the actions of the City of Albany police officers are in violation of "clearly[-]established law," and that their alleged conduct in effectuating illegal searches and seizures has "triggered" multiple civil rights lawsuits in the past. See id. at 9. Although it is unclear if plaintiff is referencing civil rights actions that he has brought against the City of Albany, or civil rights actions commenced by others, the undersigned concludes that, at this early stage in the litigation, plaintiff has set forth "supporting factual allegations" to show that defendants detained, searched, and used excessive force against plaintiff pursuant to an ongoing custom of inadequately training police officers to promote such constitutional violations. Gray-Davis v. New York, No. 5:14-CV-1490 (GTS/TWD), 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015); see Malloy v. Sophak, No. 1:18-CV-1460 (BKS/DJS), 2019 WL 1024354, at *2, 4 (N.D.N.Y. Jan. 28, 2019), report and recommendation adopted 2019 WL 1025765 (N.D.N.Y. Mar. 4, 2019) (citation and internal quotation marks omitted) (allowing the plaintiff's municipal liability claim to proceed where the plaintiff alleged that the City of Albany "inadequately train[ed] and supervise[d] staff to encourage constitutional violations" such as false arrest and excessive force).

Therefore, plaintiff's allegations that the City of Albany maintains an ongoing practice of inadequately training staff in order to promote excessive force and illegal searches and seizures are sufficient to demonstrate, at this early stage, that such actions were the "moving force [behind] [his] constitutional violation." Plair, 789 F. Supp. 2d at 468; Malloy, 2019 WL 1024354, at *2, 4. Accordingly, it is recommended that plaintiff's municipal liability claim proceed.

### 5. Conspiracy

Plaintiff appears to allege that defendants, nonparty prosecutors, and unnamed Albany City Court personnel conspired against him. See Sec. Am. Compl. at 8. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 2537312

a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). Plaintiff conclusorily states that he "believes this whole matter to be a big conspiracy ... by the defendants," Sec. Am. Compl. at 2, but fails to demonstrate any agreement between two or more state actors, or how defendants acted in concert to allegedly falsely arrest him. See id. [7] The undersigned notes that "[w]holly conclusory claims of conspiracy are properly dismissed sua sponte on initial review." Hawthorne, 2017 WL 3822112, at *7 (citation omitted). Accordingly, to the extent that plaintiff attempts to set forth a conspiracy claim against defendants, it is recommended that this claim be dismissed without prejudice. [8]

[7]    Plaintiff's alleged false arrest constitutes an overt act. See Pangburn, 200 F.3d at 72.

[8]    To the extent that plaintiff is permitted to file a third amended complaint in an attempt to correct this deficiency, he is reminded that he must seek to identify and add as defendants the unnamed nonparty prosecutor and Albany City Court personnel who he alleges conspired against him to this action.

### 6. First Amendment Retaliation

**\*6** Plaintiff's second amended complaint may also be interpreted as attempting to plead a First Amendment retaliatory arrest claim against Det. DiGiuseppe. See generally Sec. Am. Compl. Specifically, plaintiff seems to suggest that Det. DiGiuseppe sought to arrest him because he has had "problems with [him] in the past and filed complaints" against him. Id. at 5, 13. Plaintiff also alleges that, on the day of the incident, Det. DiGiuseppe stated to him, "you like to file complaints, huh?" Id. at 13.

"To prevail on a First Amendment theory of retaliatory arrest, [Plaintiff] must prove that (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Malloy, 2019 WL 1024354, at *4 (citation and internal quotation marks omitted). Although plaintiff appears to suggest that Det. DiGiuseppe arrested him because of prior complaints and/or "problems," Sec. Am.

Compl. at 5, 13, there is no indication that plaintiff stopped filing lawsuits and/or complaints against Det. DiGiuseppe or that his speech was otherwise "actually chilled." Cabrera v. City of New York, No. 16-CV-2298 (RRM/RER), 2018 WL 4636798, at *8 (E.D.N.Y. Sept. 27, 2018) (quoting Curely v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)) ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."). In fact, the undersigned notes plaintiff filed at least two lawsuits, including the underlying action, against Det. DiGiuseppe after his alleged false arrest. See Delaney v. City of Albany, No. 1:18-CV-1259 (LEK/ATB), 2019 WL 125769 (N.D.N.Y. Jan. 7, 2019). Accordingly, because plaintiff has not adequately demonstrate the elements of a retaliatory arrest claim, it is recommended that this claim be dismissed with prejudice.

### 7. Fourth and Fifth Amendment Seizure Claims

Plaintiff alleges that Det. DiGiuseppe "violated [his] right to be free from the deprivation of property without due process of law ... when he seized" $ 170.00 from him during the arrest. Sec. Am. Compl. at 14. "[T]he Supreme Court has held that a 'seizure' under the Fourth Amendment 'occurs when there is some meaningful interference with an individual's possessory interests in that property.' " Heidorf v. Town of Northumberland, 985 F. Supp. 250, 257 (N.D.N.Y. 1997) (quoting Soldal v. Cook Cnty., Illinois, 505 U.S. 56, 61 (1992) (additional internal quotation marks omitted)).

Although the undersigned acknowledges that plaintiff has proffered evidence demonstrating that defendants seized at least some monetary funds from plaintiff during his arrest, plaintiff's exhibits also establish that Judge Stilgmeier ordered on February 7, 2019 that the funds be returned. See Dkt. No. 17-1 at 41-42, 45, 47. To the extent that plaintiff suggests that the seizure of his property was improper under the Fourth Amendment, the undersigned notes that as long as the initial seizure of property was lawful, the fact that plaintiff's property was seized does not, without more, state a Fourth Amendment claim of unreasonable seizure. See Shaul, 363 F.3d at 185 (citing Jacobsen, 466 U.S. at 113). Because the record indicates that def endants seized plaintiff's money pursuant to a belief that it had previously been stolen in relation to "ongoing car larceny investigation[s]," see Dkt. No. 17-1 at 7, 41, plaintiff cannot argue that the initial seizure of his property was not lawful. See Shaul, 363 F.3d at 185; Dkt. No. 17-1 at 41 (noting in the Albany Police Department Investigation

Case 5:21-cv-00085-DNH-TWD   Document 13   Filed 07/21/21   Page 110 of 119

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 2537312

Report that "the amount of change in the victim's pocket is not a normal amount that is usually carried on ones person and is likely taken from vehicle's [sic] while the defendant was committing the crime of larceny," as a reason why the money was seized and placed into evidence). [9] Accordingly, it is recommended that, insofar as plaintiff's complaint may be read as attempting to set forth a Fourth Amendment claim for improper seizure of his property, such claim be dismissed with prejudice.

[9]   Unlike the credit cards and "makita drills," which plaintiff maintains that he did not possess at the time of his arrest, plaintiff contends that he had the money on his person, but that defendants improperly seized it in connection with the investigation. See Sec. Am. Compl. at 14.

*7   As to plaintiff's Fifth Amendment claim, this Court has recognized that the Fifth Amendment protects against the seizure or theft of property. See Center v. Catholic Charities, No. 15-CV-597 (LEK/ATB), 2015 WL 4067559, at *5 n.7 (N.D.N.Y. July 2, 2015) ("Theft or destruction of property, if appropriate, could be protected by the Due Process Clause of the Fourteenth Amendment (state) or the Fifth Amendment (federal)."); Stegemann v. Rensselaer Cnty. Sheriff's Office, No. 1:15-CV-21 (TJM/CFH), 2017 WL 4350517, at *3 (N.D.N.Y. Apr. 17, 2017), report and recommendation adopted 2017 WL 2628872 (N.D.N.Y. June 16, 2017), reconsideration denied 2017 WL 4350518 (N.D.N.Y. July 6, 2017) (assessing the plaintiff's claims for improper seizure of property under the Fifth Amendment). It appears plaintiff is contending that his rights were violated under the Fifth Amendment insofar as his money was seized without due process. See Sec. Am. Compl. at 14. The undersigned notes that plaintiff cites to the Fifth Amendment, "but '[t]he Fifth Amendment governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors.' " Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 336-37 (E.D.N.Y. 2014) (quoting Viteritti v. Inc. Vill. of Bayville, 831 F. Supp. 2d 583, 592 (E.D.N.Y. 2011)). As plaintiff has commenced this action against the City of Albany and various police officers and not against the federal government or federal employees, it is recommended that, to the extent plaintiff is alleging a Fifth Amendment seizure of property claim, this claim be dismissed with prejudice. The undersigned recommends that in light of special solicitude, the second amended complaint be read as if plaintiff brought his claim pursuant to the Fourteenth

Amendment. See Schweiker v. Wilson, 450 U.S. 221, 226 n.6 (1981) (noting that the Fifth Amendment imposes the same standard on the federal government as does the Fourteenth Amendment on state governments).

Plaintiff's claim that his money was seized without due process is analogous to his Fourth Amendment claim that defendants improperly seized his funds. The Supreme Court of the United States has held that if "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process" must be the guide for analyzing these claims.' " Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The undersigned "may not apply [a] substantive due process analysis if Plaintiff's claims are 'covered by' the Fourth Amendment; in other words, if [the plaintiff's] claims arise from a search or a seizure." Campbell v. City of New York, No. 16-CV-7201 (NGG/SMG), 2019 WL 569768, at *8 (E.D.N.Y. Feb. 11, 2019) (citation omitted). In Robinson v. Velasquez, the Eastern District of New York agreed that "the key question in determining whether plaintiff's allegations sound under the Fourth or the Fourteenth Amendment is whether [the plaintiff] was seized within the meaning of the Fourth Amendment at the time he sustained his injuries. If he was seized, then the Fourth Amendment applies." Robinson v. Velasquez, No. 07-CV-3645(KAM)(LB), 2010 WL 1010733, at *5 (E.D.N.Y. Mar. 15, 2010) (internal quotation marks and citation omitted). If the plaintiff was not seized, however, his or her claims should be assessed pursuant to the Fourteenth Amendment's substantive due process clause. See id. (citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 844-45 (1998) (holding that the Fourteenth Amendment, not the Fourth Amendment, applied where police car unintentionally struck a fleeing motorcycle causing injury to its passenger because the passenger was not seized)).

The second amended complaint is clear that defendants seized approximately $ 170.00 in conjunction with his arrest on August 9, 2018. See Sec. Am. Compl. at 14. As such, plaintiff was "seized within the meaning of the Fourth Amendment at the time he sustained his injuries," Robinson, 2010 WL 1010733, at *5, and any such claim must be assessed under the Fourth Amendment. See Biswas v. City of New York, 973 F. Supp. 2d 504, 524 (S.D.N.Y. 2013) ("Just like the plaintiff in Albright, the plaintiff in this case can seek a remedy under the Fourth Amendment through § 1983. Accordingly, no separate cause of action exists under the rubric of

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 111 of 119

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 2537312

substantive due process with respect to the deprivation of her liberty interest."). As plaintiff was "seized" when defendants confiscated his money, and his claims arise from that seizure, the undersigned finds that plaintiff's claim "fall[s] squarely within the ambit of the Fourth Amendment." Campbell, 2019 WL 569768, at *8. Thus, plaintiff cannot raise an independent claim for improper seizure of funds under the Fourteenth Amendment. Accordingly, it is recommended that (1) plaintiff's Fifth Amendment claim be read as a Fourteenth Amendment claim; and (2) to the extent that plaintiff attempts to set forth a Fourteenth Amendment claim for improper seizure of his property without due process, this claim be dismissed with prejudice.

### III. Motion to Appoint Counsel

 **\*8**  On May 28, 2019, plaintiff filed a letter motion requesting a "court[-]appointed attorney in this matter due to the complexity of [the] case." Dkt. No. 18 at 1. On June 13, 2019, plaintiff filed a second motion to appoint counsel and attached responses from attorneys and not-for-profit agencies in his effort to seek counsel. See Dkt. No. 20. For the reasons set forth in the April 4, 2019 Report-Recommendation and Order, the Court denies plaintiff's motions. Although plaintiff has proffered evidence that he has attempted to find an attorney on his own, the Court reiterates that the case is at its earliest stages, and plaintiff has not demonstrated that appointment of counsel is warranted at this time. See Dkt. No. 15 at 18.

Accordingly, it is ordered that plaintiff's motion for counsel be denied without prejudice and with opportunity for plaintiff to renew his motion for appointment of counsel at a later date should plaintiff demonstrate a change in his circumstances. The undersigned reminds plaintiff that any future motion for counsel must be accompanied by evidence of the efforts that plaintiff has taken to retain counsel on his own, either in the public or private sector. Financial need or status as an incarcerated person, without more, does not suffice for appointment of pro bono counsel in a civil action.

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, to the extent that plaintiff attempts to set forth a conspiracy claim against defendants, this claim be **DISMISSED WITHOUT PREJUDICE** and with opportunity to amend to demonstrate an agreement between defendants, and how defendants acted in concert to allegedly falsely arrest him; and it is further

**RECOMMENDED**, insofar as plaintiff's second amended complaint may be read as attempting to set forth Fourth, Fifth and Fourteenth Amendment claims for improper seizure of his property or a First Amendment claim for retaliatory arrest, such claims be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, plaintiff be provided thirty (30) days from the date of any order adopting this Report-Recommendation and Order to file a third amended complaint limited to claims not otherwise dismissed with prejudice by this Court,[10] and (1) should plaintiff decline to file a third amended complaint within that time, the Clerk return the case to the Magistrate Judge for service of the second amended complaint with the unamended claims deemed stricken; or (2) should plaintiff file a third amended complaint within the time frame set forth herein, the Clerk of the Court is to return the case to the Magistrate Judge for review of the third amended complaint; and it is

10      Any third amended complaint must be a complete pleading and include all facts and claims not otherwise dismissed by the Court with prejudice. If accepted by the Court for filing, the third amended complaint will supersede and replace the amended complaint in its entirety; thus, the third amended complaint becomes the operative pleading and the second amended complaint will no longer be considered. See Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

**ORDERED**, that plaintiff's Motions to Appoint Counsel (Dkt. Nos. 18, 20) be **DENIED**, but the denial is without prejudice and with opportunity to renew such request in the future should plaintiff demonstrate a change in circumstances; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**\*9 IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72. [11]

[11]   If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2537312

---

**End of Document**                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:21-cv-00085-DNH-TWD    Document 13    Filed 07/21/21    Page 113 of 119
Delaney v. City of Albany, Slip Copy (2019)
2019 WL 3454618

2019 WL 3454618
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence DELANEY, Jr., Plaintiff,

v.

CITY OF ALBANY; Police Officer Brace, Detective
for the City of Albany/CIU; Police Officer
Digiuseppe, Detective for the City of Albany/
CIU; Police Officer John Doe 1, Police Officer for
City of Albany; and Police Officer John Doe 2,3,4,
Police Officers for the City of Albany, Defendants.

1:18-CV-1193 (DNH/CFH)
|
Signed 07/31/2019

**Attorneys and Law Firms**

CLARENCE DELANEY, JR., Plaintiff pro se, 17-A-0236,
Fishkill Correctional Facility, P.O. Box 1245, Beacon, NY
12508.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

 **\*1** Pro se plaintiff Clarence Delaney Jr. brought this
civil rights action pursuant to 42 U.S.C. § 1983. On June
20, 2019, Magistrate Judge Hummel advised by Report-
Recommendation that some of plaintiff's claims be dismissed
with prejudice and some without prejudice, and that the
remaining claims be permitted to proceed. Magistrate Judge
Hummel recommended providing plaintiff an opportunity
to file a third amended complaint to attempt to cure the
deficiencies noted in some of his claims. No objections to the
Report-Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of the Magistrate Judge, the Report-

Recommendation is accepted in whole. See 28 U.S.C. §
636(b)(1).

Therefore, it is

ORDERED that

1. To the extent plaintiff attempts to set forth a conspiracy
claim, that claim is DISMISSED WITHOUT PREJUDICE
and with opportunity to amend to demonstrate an agreement
between defendants, and how defendants acted in concert to
allegedly falsely arrest him;

2. Insofar as plaintiff's second amended complaint may be
read as attempting to set forth Fourth, Fifth, and Fourteenth
Amendment claims for improper seizure of his property or a
First Amendment claim for retaliatory arrest, such claims are
DISMISSED WITH PREJUDICE;

3. Plaintiff is provided thirty (30) days from the date of this
Decision and Order to file a third amended complaint limited
to claims not otherwise dismissed with prejudice;

4. If plaintiff fails to file a third amended complaint within
thirty (30) days from the date of this Decision and Order, the
Clerk shall return the case to Magistrate Judge Hummel for
service of the second amended complaint with the unamended
claims deemed stricken; and

5. If plaintiff files a third amended complaint within thirty
(30) days from the date of this Decision and Order, the Clerk
shall return the case to Magistrate Judge Hummel for review
of the third amended complaint.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2019 WL 3454618

---

2014 WL 3858398
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Shariff ABBAS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 10–CV–0141S.
|
Signed Aug. 1, 2014.

**Attorneys and Law Firms**

Shariff Abbas, Flushing, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, Chief Judge.

### INTRODUCTION

 **\*1** Plaintiff Shariff Abbas commenced this *pro se* action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., and other federal laws, alleging violation of his rights while detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, the Albany County Jail and the Perry County Correctional Center ("PCCC") in Uniontown, Alabama. Currently before the Court for review pursuant to 28 U.S.C. § 1915(e)(2)(B) is plaintiff's amended complaint [1], submitted in response to the Court's Order filed on August 16, 2013 ("August 16 Order") (Docket No. 6), which reviewed plaintiff's original complaint (Docket No. 4), dismissed several of the claims asserted therein, and granted plaintiff leave to file an amended complaint. For the reasons set forth below, plaintiff's FTCA claims against the United States related to his treatment at the BFDF may proceed and his remaining claims will be dismissed.

---

[1]    Plaintiff's amended complaint is accompanied by two voluminous bound volumes of exhibits captioned "Exhibit [sic] Part 1", containing a Table of Contents and exhibits 1–18 and "Exhibit Part 2", containing a Table of Contents and exhibits 19–40. Given the voluminous nature of the exhibits, numbering hundreds of pages, and

the manner in which they are bound, which would make scanning them very difficult, the Court has not required the Clerk's Office to scan them into the court's electronic filing system. They will instead be maintained in paper form in a separate file in the Clerk's Office. *See* note to Docket No. 6.

### DISCUSSION

A. *Bivens Claims*

The August 16 Order directed, *inter alia,* that plaintiff's FTCA claims stemming from his detention at the Albany County Jail and the PCCC be dismissed; that plaintiff be granted leave to file an amended complaint adding *Bivens* [2] or other federal claims against individual deportation officers and other personnel at BFDF who he alleges violated his rights; and that in the even he failed to timely file an amended complaint as directed, the Court would issue an Order directing service of the complaint upon the United States as the sole defendant to his medical malpractice claims brought under the FTCA. (Docket No. 5).

---

[2]    *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The August 16 Order noted that in addition to his FTCA claims, plaintiffs original complaint asserted a variety of violations of his constitutional rights by individual deportation officers and other personnel during his periods of detention at BFDF and that these claims would be actionable against individual defendants under the *Bivens* doctrine, which allows a plaintiff to pursue constitutional claims against federal officials in their individual capacities for actions taken under color of federal law. *See Lombardi v. Whitman,* 485 F.3d 73, 78 (2d Cir.2007) ("[W]here an individual 'has been deprived of a constitutional right by a federal agent acting under color of federal authority,' the individual may bring a so-called *Bivens* action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents 'no special factors counseling hesitation in the absence of affirmative action by Congress.' ") (internal citations omitted) (*quoting Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir.2006). The Court determined, however, that the *Bivens* claims could not proceed because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in

the caption of the complaint, as required by Rule 10(a) of the Federal Rules of Civil Procedure:

**\*2** The Court cannot allow such *Bivens* claims to proceed, however, because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in the caption of the complaint. Rule 10 of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties" Fed.R.Civ.P. 10(a). Therefore, a party that is not named in the caption of a complaint or amended complaint is not a party to the action.

(August 16 Order at 16) (citations omitted). The Court proceeded to note that plaintiff's failure to name in the caption of the complaint the individual defendants against whom he wished to assert *Bivens* claims would make it infeasible for the Court to determine which of the individual custody officers mentioned in the body of the complaint should be deemed to be defendants to such claims, given the often ambiguous nature of his reference to such individuals. (*Id.* at 16–17). The Court therefore concluded that "[t]he way to remedy plaintiff's failure to name as defendants in the caption of his complaint those individuals against whom he may seek to assert *Bivens* claims, as suggested by the allegations set forth in the body of the complaint, is to afford him leave to file an amended complaint which conforms to the requirements of Rule 10(a)." (*Id.* at 17) (citations omitted). "Accordingly, plaintiff will be afforded the opportunity to file, as directed below, an amended complaint in which he shall name in the caption of the complaint, each of the individuals against whom he intends to assert a *Bivens* claim or claims, in a manner that conforms to the requirements of Rules 8(a) and 10(a) of the Federal Rules of Civil Procedure." (*Id.*).

The Court accordingly directed, in the Conclusion of the August 16 Order, that plaintiff be given leave to file an amended complaint conforming to the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, and the Court again explicitly advised plaintiff of his duty to list all defendants in the caption of the complaint:

> Plaintiff is reminded, as explained above, that if he wishes to assert *Bivens* or other claims against defendants other than the United States in the amended complaint, *he must name those individuals in the caption of the amended complaint* and set forth

specific allegations with respect to how those individuals violated his rights.

(*Id.* at 21). (emphasis added).

While plaintiff's amended complaint contains allegations that would support *Bivens* claims (*see* Amended Complaint, ¶¶ 17–42 *passim* ),[3] it does not name in the caption of the complaint any individuals against whom plaintiff is seeking to assert *Bivens* clams, nor does the section of the complaint captioned "PARTIES" list any individual defendants. While plaintiff does, in the section of the amended complaint captioned "CONCLUSION," set forth a list of "Federal Employees from (BFDF) Health Division" (Amended Complaint ¶ 57), which includes individuals mentioned elsewhere in the amended complaint in connection with plaintiff's allegations that would be relevant to *Bivens* claims, the individuals named therein are not listed as defendants in the caption of the amended complaint or in plaintiff's recital of the parties to this action at the beginning of the amended complaint; as noted *supra,* plaintiff lists only one defendant-the United States-in the complaint caption and in his recital of the parties. Moreover, plaintiff's statement of relief sought at the end of the amended complaint (captioned "PRAYER") demands judgment "against *the defendant.*" (*Id.* at p. 16) (emphasis added).[4]

3    Plaintiff divides his claims into two sections of the amended complaint, namely "Medical Malpractice" (Amended Complaint, p. 3–5, ¶¶ 8–16), which contains allegations supportive of his FTCA claims, and "U.S. D.H.S.-ICE Agency and Custody Officers Abuses" (*Id.* at p. 5–14, ¶¶ 17–56), which contains allegations supportive of his *Bivens* constitutional claims. The Court notes, however, that a number of the allegations set forth in the "Federal Agency and Custody Officers Abuses" section of the complaint are relevant to his FTCA malpractice claims. *See, e.g.,* Amended Complaint, ¶ 21.

4    Plaintiff's failure to include in the caption of the amended complaint the names of any defendants against whom he is asserting *Bivens* claims is not the only instance of his disregard of the Court's directives regarding the form and content of his

amended complaint. The August 16 Order noted that many of the *Bivens* claims that plaintiff's allegations would support against individuals identified in the body of the complaint appeared to be barred by the statute of limitations. August 16 Order at 18. The Court accordingly directed as follows:

> In the amended complaint that plaintiff will be given leave to file, as provided below, in which he must demonstrate either that his *Bivens* claims stemming from his incarceration at BFDF are timely or, if any such Bivens claims are untimely, he must allege facts demonstrating why equitable tolling should be applied to the statute of limitations periods for such claims.

(August 16 Order at 19). As noted *supra,* the August 16 Order provided that plaintiff would be given leave to file an amended complaint with respect to his *Bivens* claims, and plaintiff was further advised, in this regard, "that he should address the timeliness of any *Bivens* claims that he asserts in the amended complaint and any argument as to why the limitations period applicable to such claims should be equitably tolled." (August 16 Order at 21). However, plaintiff's amended complaint does not address the timeliness issue or offer any basis for equitable tolling of the limitations period. Given the Court's dismissal herein of the *Bivens* claims based upon plaintiff's failure to identify the defendants against whom he seeks to assert such claims, the Court need not further address the timeliness issue.

Plaintiff further disregarded the August 16 Order to the extent that he reasserts claims stemming from his detention at the Albany County Jail from February 21, 2006–March 21, 2006, and the Perry County Correctional Center ("PCCC") in Uniontown Alabama from August 5, 2006– February 9, 2007. (Amended Complaint at ¶¶ 14, 15, 28–40). The August 16 Order dismissed the claims stemming from plaintiff's incarceration at those facilities pursuant to [28 U.S.C. § 1406(a)](link) for improper venue. (August 16 Order at 13–14). Those claims remain dismissed.

**\*3** The Court's duty to construe liberally the pleadings of *pro se* litigants does not absolve *pro se* litigants from the duty to comply with the requirements of the Federal Rules of Civil Procedure and court orders issued pursuant to those rules. *See, e .g., Caidor v. Onondaga County,* [517 F.3d 601, 605 (2d Cir.2008)](link) (noting that *pro se* litigants are required to familiarize themselves with procedural rules and comply with such rules); *McDonald v. Head Criminal Court Supervisor Officer,* [850 F.2d 121, 124 (2d Cir.1988)](link) ("[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses,* have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.")). As discussed *supra,* this Court's previous order explained to plaintiff the requirement of [Rule 10(a)](link) that all defendants to an action be named and identified as such in the caption to the complaint, and the Court afforded him the opportunity to cure the defect in his initial complaint by filing an amended complaint naming all defendants. Plaintiff has inexplicably failed to comply with the Court's order and the requirement of [Rule 10(a).](link) Accordingly, to the extent that plaintiff seeks to bring *Bivens* claims against individual Custody Officers and other BFDF officials, *see* Amended Complaint, ¶ 58 ("Plaintiff want [sic] this Court to bring Justice against Federal Agency Employees who Violate constitutional law against Plaintiff's rights"), such claims must be dismissed in light of his failure to name those individuals as defendants in the caption of the amended complaint. *See, e.g., Ferdik v. Bonzelet,* [963 F.2d 1258, 1262–63 (9th Cir.1992)](link) (dismissing action for refusal to comply with court orders to name defendants in the caption as required by [Rule 10(a)](link)).

Moreover, as explained in the August 16 Order (pp. 14– 15), constitutional claims under *Bivens* cannot be brought against the only defendant named in the complaint, the United States. *See Robinson v. United States Bur. Of Prisons,* [244 F.Supp.2d 57, 66 (N.D.N.Y.2003)](link) ("[A] *Bivens* action may not be maintained against the United States.") (citing *Washington v. DEA,* [183 F.3d 868, 872 n. 8 (8th Cir.1999).](link) Nor can constitutional claims be asserted against the United States under the FTCA. *See Washington,* [183 F.3d at 873;](link) *Russ v. United States,* [62 F.3d 201, 204 (7th Cir.1995)](link) ("[C]onstitutional wrongs cannot be remedied through the FTCA,") (citing *FDIC v. Meyer,* [510 U.S. 471, 476, 114 S.Ct. 996, 1001–02, 127 L.Ed.2d 308(1994)](link)).

Plaintiff having thus having failed to name a proper defendant to his *Bivens* claims, the Court concludes that his *Bivens* claims must be dismissed pursuant to [28 U.S.C. § 1915(e)(2)(B)](link) for failure to state a claim on which relief can be granted.

Abbas v. U.S., Not Reported in F.Supp.3d (2014)

2014 WL 3858398

B. *Treaty Claims*

The Conclusion section of the amended complaint invokes, as a basis for relief against defendant United States not raised in plaintiffs original complaint, treaties to which the United States is a signatory. Specifically, the amended complaint states "At such time and places the United States violates International Laws as A[sic] result the United States are not in compliance with Refugee Convention Requirements or The United Nations Convention against Torture Prohibitions." (Amended Complaint, § 57). It is well established that the United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, ("CAT") does not give rise to a private right of action. *Renkel v. United States,* 456 F.3d 640, 644 (6th Cir.2006) ("As the Articles [of CAT] are not self-executing, they do not create private rights of action; therefore, any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law."); *Wolinski v, Junious,* 2012 U.S. Dist. LEXIS 65889, at *18–19,2012 WL 1657576 (E.D.Cal. May 10, 2012) ("The CAT does not give rise to a private right of action because it is not self-executing.) (citing *Akhtar v. Reno,* 123 F.Supp.2d 191, 196 (S.D.N.Y.2000),

**\*4** The United Nations Convention Relating to the Status of Refugees, adopted July 28, 1951, art. 26, 19 U.S.T. 6259, 6576, 189 U.N.T.S. 150, 172 ("Refugee Convention") likewise does not create a private right of action. *United States v. Casaran–Rivas,* 311 Fed. Appx. 269, 272 (11th Cir.2009) (unpublished) ("[A]rgument that the indictment violated the refugee Convention and CAT Treaty is without merit, as the Refuge[e] Convention and CAT Treaty are not self-executing, or subject to relevant legislation, and, therefore, do not confer upon aliens a private right of action to allege a violation of their terms."); *Reyes–Sanchez v. Ashcroft,* 261 F.Supp.2d 276, 288–89 (S.D.N.Y.2003) ("Because the Refugee Convention is not self-executing, it does not create individual rights.").

Accordingly, plaintiff's claims against the United States under CAT and Refugee Convention are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

C. *FTCA Claims*

The medical malpractice-related claims under the FTCA asserted by plaintiff in the amended complaint and stemming from his detention at BFDF may go forward against defendant United States. [5]

[5]    As explained in the August 16 Order, plaintiff's allegations of medical malpractice and the failure to properly treat his serious medical condition are clearly cognizable under the FTCA when asserted against the United States. (August 16 Order at 6).

### *ORDER*

IT IS HEREBY ORDERED, that plaintiff's *Bivens* claims are dismissed with prejudice;

FURTHER, that plaintiff's claims under CAT and the Refugee Convention are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to complete, on plaintiff's behalf, and to issue, a summons for service of process on defendant United States of America;

FURTHER, the Clerk of the Court is directed to send copies of the Summons, Amended Complaint, [6] and this Order by certified mail to the following, pursuant to Rule 4(i) of the Federal Rules of Civil Procedure:

[6]    As explained in n. 1, *supra,* plaintiff's voluminous exhibits to the amended complaint are maintained in paper form in a separate file folder in the Clerk's Office.

• Attorney General of the United States, Main Justice Building, 10th and Constitution Avenues N.W., Washington, DC 20530;

• Civil Process Clerk, United States Attorney for the Western District of New York, United States Attorney's Office, USAO/WDNY, 138 Delaware Avenue, Buffalo, New York 14202.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3858398

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2375814
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Vidal WHITLEY, Plaintiff,
v.
Major KRINSER, Sgt. Robin Brown, Captain
Winters, Corporal Conklin, Deputy Johnson,
Lt. Prinzi, Corporal Carlo, Lt. Santillo,
Sgt. Garcia, Major Kasacey, Corporal
Peck, and Deputy Galling, Defendants.

No. 06-CV-0575F.
|
Aug. 15, 2007.

**Attorneys and Law Firms**

Vidal Whitley, Willard, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, United States District Judge.

**INTRODUCTION**

*1 By an Order dated February 8, 2007, plaintiff *pro se* Vidal Whitley was granted permission to file a second amended complaint in this action pursuant to 42 U.S.C. § 1983 to specifically address issues relating to defendants Kasacey, Krinser and Peck. For the reasons stated below, plaintiff's second amended complaint is dismissed and the amended complaint is allowed to go forward at this stage against all named defendants except as to defendants Krinser, Kasacey and Peck.

**DISCUSSION**

Section 1915(e) (2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action "(ii) fails to state a claim upon which relief may be granted." Based on its evaluation of the complaint, the Court finds that plaintiff's claims against defendants Krinser, Kasacey and Peck must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)

(B)(ii) because they fail to state a claim upon which relief may be granted. Despite direction to specify what Krinser, Kasacey and Peck were responsible for, plaintiff's second amended complaint does not allege sufficient facts to state claims against Krinser, Kasacey and Peck.

In addition, plaintiff was directed that his second amended complaint "should name in the caption all of the people plaintiff wishes to hold responsible for each violation. Plaintiff has alleged that people who are not named in the caption were responsible for violation his rights. However, if these people are not also named in the caption of the second amended complaint, they will not be defendants in the case." (Docket No. 11.) Because plaintiff has not named any additional defendants in the second amended complaint, has not included the allegations against the remaining defendants named in his amended complaint, and has failed to state a claim against Krinser, Kasacey and Peck, the second amended complaint is dismissed in its entirety. However, because of plaintiff's *pro se* status and his minimal literacy, the Court will deem the amended complaint the operative pleading in this case and allow it to proceed against all named defendants except Krinser, Kasacey and Peck.

**CONCLUSION**

For the reasons set forth above, plaintiff's claims against defendants Krinser, Kasacey and Peck are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and the amended complaint shall be served on the remaining defendants set forth in the caption above.

**ORDER**

IT HEREBY IS ORDERED, that the claims against Krinser, Kasacey and Peck are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B); and,

FURTHER, the Clerk of the Court is directed to correct the docket to reflect that Sgt. Robin Brown, Captain Winters, Corporal Conklin, Deputy Johnson, Lt. Prinzi, Corporal Carlo, Lt. Santillo, Sgt. Garcia and Deputy Galling are defendants in this action; and,

FURTHER, the Clerk of the Court is directed to cause the U.S. Marshal to serve the amended complaint (Docket No. 10) and this Order upon the remaining defendants, Sgt. Robin Brown,

2007 WL 2375814

Captain Winters, Corporal Conklin, Deputy Johnson, Lt. Prinzi, Corporal Carlo, Lt. Santillo, Sgt. Garcia and Deputy Galling.

**\*2** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2375814

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.