UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RODERICK GOLDEN,

                    Plaintiff,

           -v-                          5:21-CV-85

JOHN GAGNE,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

RODERICK GOLDEN
Plaintiff, Pro Se
208 Melrose Avenue
Syracuse, NY 13206

HON. LETITIA JAMES              MARK J. DOLAN, ESQ.
New York State Attorney General  Ass't Attorney General
Attorneys for Defendant
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I.  INTRODUCTION

On January 25, 2021, *pro se* plaintiff Roderick Golden ("plaintiff") filed

this action alleging that, *inter alios*, defendant John Gagne, an Investigator

for the New York State Department of Motor Vehicles ("Investigator Gagne")

and defendant William Root, a Detective with the Onondaga County Sheriff's Department ("Detective Root"), violated his civil rights in connection with a "spurious felony prosecution commenced against him in 2016."  Dkt. No. 1. Plaintiff also moved to appoint counsel and to proceed *in forma pauperis* ("IFP Application").  Dkt. Nos. 2, 3.

On April 21, 2021, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application but denied his motion to appoint counsel.  Dkt. No. 6.  At that time, Judge Dancks advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend.  *Id.*

As Judge Dancks explained, plaintiff's pleading failed "to provide sufficient information for the Court to review or for Defendants to have notice of the claims against them."  Dkt. No. 6.  After this Court adopted the April 21 R&R, Dkt. No. 7, plaintiff filed an amended complaint, Dkt. No. 11, and another motion to appoint counsel, Dkt. No. 12.

On July 21, 2021, Judge Dancks conducted an initial review of plaintiff's amended complaint and advised by R&R that the pleading be accepted for filing in part and dismissed in part.  Dkt. No. 13.  This R&R recommended that plaintiff's (1) Fourth Amendment false arrest claim against Investigator Gagne and Detective Root should survive initial review.  *Id.*  The R&R further recommended that plaintiff's (2) Fourth Amendment malicious prosecution against Investigator Gagne should survive initial review.  *Id.*

However, the R&R recommended that all of the other claims asserted in plaintiff's amended complaint be dismissed for failure to state a claim. Dkt. No. 13. The R&R also denied plaintiff's second motion for the appointment of counsel. *Id.* This Court adopted the July 21, 2021 R&R over plaintiff's objections on August 27, 2021. Dkt. Nos. 14, 15.

On December 31, 2021, Investigator Gagne moved under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the remaining claims alleged against him in the amended complaint for lack of subject matter jurisdiction and/or failure to state a claim. Dkt. No. 34. Plaintiff opposed. Dkt. No. 35.

On February 10, 2022, this Court granted in part and denied in part Investigator Gagne's motion to dismiss. Dkt. No. 36. The February 10 Order dismissed the Fourth Amendment false arrest claim against Investigator Gagne because it was time-barred. *Id.* at 10.[1] The February 10 Order also *sua sponte* dismissed the Fourth Amendment false arrest claim against Detective Root because it was time-barred for the same reason. *Id.* at 15.

However, the February 10 Order denied Investigator Gagne's motion to dismiss the Fourth Amendment malicious prosecution claim. Dkt. No. 36 at 13–15; *see also* Dkt. No. 49 (clarifying that the only remaining claim in this litigation is the Fourth Amendment malicious prosecution claim against

---

[1] Pagination corresponds to CM/ECF.

Investigator Gagne).[2]   Thereafter, Investigator Gagne answered the amended

complaint, Dkt. No. 37, and the parties completed discovery into plaintiff's

Fourth Amendment malicious prosecution claim, Dkt. Nos. 39–84.

On August 31, 2023, Investigator Gagne moved for summary judgment on

this remaining claim.   Dkt. Nos. 85, 86.   Thereafter, plaintiff moved for

reconsideration of the Court's February 10, 2022 Order on the motion to

dismiss.   Dkt. No. 90.   Both motions have been fully briefed and will be

considered on the basis of the submissions without oral argument.

## II. <u>BACKGROUND</u>

On or about October 6, 2015, plaintiff brought his 1997 Ford F-250 pickup

truck to Tri Count, a car repair shop in Syracuse, New York.   Def.'s Facts,

Dkt. No. 86 ¶ 1.   The truck had recently had its engine replaced, but plaintiff

was still having problems with it.   *Id*. ¶ 2.   In fact, plaintiff had prepared a

handwritten "problem list" for the mechanics to look at.   *Id*.   This list was

dated "10-6-015 [*sic*]."   *Id*. ¶¶ 3–4.   But it seems that the shop was not able to

fix the problems and the truck was left stranded at the shop.   *See id*. ¶ 5.

---

[2]  Detective Root answered the operative complaint and asserted a cross-claim against
Investigator Gagne.  Dkt. Nos. 21, 29.  But after the only claim that survived initial review against
Detective Root was dismissed as time-barred, Dkt. No. 36 at 15, Investigator Gagne answered and
asserted a cross-claim against Detective Root, Dkt. No. 37.  The cross-claims by and against
Detective Root were dismissed as moot and he was terminated as a defendant on October 4, 2022.
Dkt. No. 49.  So only the malicious prosecution claim against Investigator Gagne remains.

On or about December 7, 2015, plaintiff filed a "Complaint Report" against the car repair shop with the New York State Department of Motor Vehicles ("DMV") Division of Vehicle Safety ("DVS").  Def.'s Facts ¶ 5.  According to the written complaint:

> Brought my truck back for them to repair the engine work they did not [do] properly in the first place.  They did transmission work [without] my consent and charged me storage.

*Id.*  Plaintiff also brought a small claims action against the car repair shop in Syracuse City Court.  *Id.* ¶ 6.  The repair shop counterclaimed for the cost of the ongoing storage fees.  *Id.*

At some point during the pendency of that state-court small claims action, and possibly acting on information provided by the shop, the DMV's Division of Field Investigation ("DFI") opened an investigation into a "suspected counterfeit inspection sticker" on plaintiff's pickup truck.  Def.'s Facts ¶ 10.

In March of 2016, the DMV's DFI assigned Investigator Gagne to look into the case.  Def.'s Facts ¶ 10.  He had a decade on the job and about 25 of these counterfeit-sticker investigations under his belt.  *Id.* ¶¶ 7–8.  Importantly, Investigator Gagne was also a New York State Peace Officer with the authority to swear out felony complaints based on probable cause.  *Id.* ¶ 9.

Investigator Gagne soon learned that plaintiff had submitted a Complaint Report to the DMV about Tri Count's failed attempt to repair to his pickup

truck.  Def.'s Facts ¶ 11.  So he went down to Tri Count to inspect plaintiff's truck, which was still in storage at the shop.  *Id*. ¶ 12.  There, Investigator Gagne observed the inspection sticker.  *Id*. ¶ 13.  It had nine digits.  *Id*.  It looked irregular.  *See id*. ¶ 15.  And the sticker number did not match any inspection number in the DMV's database.  *Id*. ¶ 14.

Investigator Gagne removed the sticker from plaintiff's truck and kept it as evidence in his investigation.  Def.'s Facts ¶ 16.  Then he interviewed the repair shop manager, who told him that he had witnessed plaintiff drive the 1997 Ford F-250 pickup into the repair shop on October 6, 2015 and request the repair work with a handwritten list of problems.  *Id*. ¶¶ 17–19.

The manager also provided Investigator Gagne with that handwritten list of problems plaintiff had given him.  Def.'s Facts ¶ 20.  And he claimed that the suspicious inspection sticker had been on the truck when plaintiff had driven it into the shop.  *Id*. ¶ 21.  Based on the manager's statements and his own observations and investigation, Investigator Gagne prepared a felony complaint that alleged plaintiff had committed criminal possession of a forged instrument in violation of § 170.25 of New York penal law.  *Id*. ¶ 22.

On December 5, 2016, the small claims case plaintiff had brought against the repair shop took place in Syracuse City Court.  Def.'s Facts ¶ 23.  During a break in the proceedings, plaintiff was arrested and taken to the Onondaga County jail for booking on the forgery charge.  *Id*. ¶ 24.  Investigator Gagne

prepared an arrest packet for the District Attorney's office to use if it decided to prosecute plaintiff on the charge. *Id*. ¶ 25. This packet included the documents that Investigator Gagne had gathered, including the counterfeit sticker and a statement taken from the shop manager. *Id*. But Investigator Gagne was not involved in the decision of whether to actually prosecute the charge. *Id*. ¶ 27.

The District Attorney's ("DA") office initially moved forward with the forgery charge against plaintiff. They offered plaintiff an adjournment in contemplation of dismissal ("ACD"), but he rejected it. Ex. C to Dolan Decl., Dkt. No. 85-4. Later, however, the DA's office moved to dismiss the charge against plaintiff. *Id*. That motion was granted by Syracuse City Court Judge Derrek T. Thomas on January 23, 2018. *Id*. This action followed.

## III.  **LEGAL STANDARDS**

### A.  **Reconsideration**

Under the Local Rules, "a party may file and serve a motion for reconsideration or reargument no later than fourteen days after the entry of the challenged judgment, order, or decree." N.D.N.Y. L.R. 60.1. "A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995)

(McAvoy, J.) (citing *Doe v. N.Y. City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.), *cert denied*, 464 U.S. 864 (1983)).

These are demanding requirements. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). Accordingly, a motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

## B. **Summary Judgment**

The entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts

in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted).  Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

## IV. <u>DISCUSSION</u>

As an initial matter, plaintiff is *pro se*.  So his filings must be held to less stringent standards.  *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012).  As the Second Circuit has repeatedly warned, documents filed *pro se* "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that [they] suggest[ ]." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

### A. <u>Plaintiff's Motion for Reconsideration</u>

Plaintiff has moved for reconsideration of the February 10, 2022 Order that granted in part and denied in part Investigator Gagne's motion to dismiss.  Dkt. No. 87.  Broadly construed, plaintiff contends that he has come into possession of documents that demonstrate the felony complaint sworn out by Investigator Gagne was defective.  *Id*.  According to plaintiff, this and other evidence support the conclusion that he was unlawfully arrested.  *Id*.

Investigator Gagne has opposed relief.  Dkt. No. 91.  In defendant's view, plaintiff's motion is untimely and meritless.  *Id*.  As defendant explains, a

motion for reconsideration must be filed within fourteen days after the entry of the Order being challenged. *Id*. But plaintiff's motion was filed almost twenty months later. *Id*. To the extent plaintiff relies on "new evidence" in the form of the supporting statement taken from the car repair manager, defendant argues that they turned this over to plaintiff in discovery months ago. *Id*. Defendant argues that plaintiff has offered no explanation for why he did not promptly move for reconsideration once he received it. *Id*. On the merits, defendant argues that this evidence does not warrant reconsideration of the February 10, 2022 Order because the manager's statement has "no bearing on when Plaintiff's claims accrued or when the statute of limitations lapsed, and therefore offers no support for reconsideration." *Id*.

Upon review, plaintiff's motion for reconsideration must be denied. In this District, the rule is that a movant must seek reconsideration promptly; *i.e.*, within 14 days. N.D.N.Y. L.R. 60.1. That is a tight deadline. And nearly twenty months have elapsed here. So the motion is untimely.

But even on the merits, plaintiff has not satisfied the very heavy burden required of him. Although he points to new Supreme Court precedent, that change in the law does not justify reconsideration because it does not alter the legal analysis in the February 10, 2022 Order. And although he points to some "new evidence" in the form of the statement from the shop manager

that he received in discovery, this information does not alter the outcome of the February 10 Order, either.

The remainder of plaintiff's filing challenges the propriety of Investigator Gagne's decision to swear out a felony complaint instead of seeking a warrant (calling it a prearranged kidnapping and abduction).  Plaintiff also contends that this Court committed legal error by characterizing his false arrest claim as arising under state law rather than federal law (which enjoys a longer statute of limitations).

But these arguments are also insufficient to justify relief.  First, although plaintiff might be correct that seeking a warrant was an option, state law enforcement officers are not required to do so in every case.[3]  Instead, the question is whether the officer possessed probable cause.  And while more is required to convict, *probable cause* can exist regardless of whether plaintiff knew of the forgery or intended to use it for fraudulent ends.  *See, e.g.*, *Smith v. DeGirolamo*, 2020 WL 5752226, at *7 (E.D.N.Y. Sept. 25, 2020).

Second, the Court correctly applied the law of false arrest.  As plaintiff recognizes, a state-law claim for false arrest is an intentional tort generally subject to a short, one-year statute of limitations.  But a § 1983 claim for false arrest gets the benefit of a longer, three-year limitations period.  The problem

---

[3]  Peace officers can sometimes make arrests but they cannot execute warrants.  *See* N.Y. Crim. Proc. Law § 140.25; *see also* Gagne Decl., Dkt. No. 85-5 ¶ 21.

with both of these claims is that they accrued on December 5, 2016, the date on which plaintiff was arrested.  Thus, as the February 10 Order explained, even the longer, three-year limitations period expired before plaintiff filed this civil rights action on January 25, 2021.  Accordingly, plaintiff's motion for reconsideration must be denied.[4]

## B.  <u>Investigator Gagne's Motion for Summary Judgment</u>

Investigator Gagne has moved for summary judgment on plaintiff's malicious prosecution claim.  Def.'s Mem., Dkt. No. 85-18.  According to defendant, he developed probable cause during his investigation to support the conclusion that plaintiff had committed the forgery charge.  *Id*. at 14–16.

To prevail on a claim for malicious prosecution under § 1983 or New York law, a plaintiff must show: (1) the initiation or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of that criminal proceeding in the plaintiff's favor; (3) a lack of probable cause for commencing the criminal proceeding; and (4) that actual malice motivated the defendant's actions.  *See Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019).  A § 1983 claim also requires "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Buari v. City*

---

[4]  The Federal Rules of Civil Procedure do not expressly provide for a motion for reconsideration, so courts sometimes look to Rules 59(e) and/or 60(b).  *Kew v. Town of Northfield,* 2023 WL 6050389, at *2 (D. Vt. July 10, 2023).  But those Rules do not warrant relief, either.

*of N.Y.*, 530 F. Supp. 3d 356, 383 (S.D.N.Y. 2021) (quoting *Rohman v. N.Y. City Trans. Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

Probable cause is a defense to a claim of malicious prosecution. *Stansbury v. Wertman*, 721 F.3d 84, 94–95 (2d Cir. 2013). But it is a slightly higher standard than the one used for false arrest claims. *Id.* "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* at 95 (citation omitted).

Upon review, the properly supported facts offered by Investigator Gagne in support of his motion for summary judgment establish that probable cause existed to arrest plaintiff and initiate the prosecution against him on this claim. Despite being warned of the consequences, Dkt. No. 85 at 3, plaintiff did not file an opposition that substantiates any genuine disputes over the material facts, Dkt. No. 88. So those facts are deemed admitted. N.D.N.Y. L.R. 56.1(b).[5]

The admitted facts establish that Investigator Gagne observed a DMV inspection sticker on plaintiff's truck with irregular microprint that did not match any known inspections. These facts further establish that Investigator Gagne took a statement from the repair shop manager that supported the

---

[5] Although plaintiff is *pro se*, he is not exempt from procedural rules. But the Court has also reviewed plaintiff's filings to determine if he has created a genuine issue for trial. He has not.

conclusion that plaintiff owned the truck and had driven it to the shop with the suspected forged sticker on the vehicle.

The results of Investigator Gagne's detective work fit comfortably within the contours of the relevant penal law.  Under New York law, a person is guilty of second-degree forgery "when, with intent to defraud, deceive or injury another, he falsely makes, completes or alters a written instrument which is or purports to be . . . (3) [a] written instrument officially issued or created by a public office, public servant or governmental instrumentality." N.Y. PENAL LAW § 170.10(3).  Elsewhere, New York law makes clear that an inspection sticker on a vehicle is "issued or created by" the DMV, a New York State instrumentality.  15 N.Y.C.R.R. § 79.1.

Plaintiff is understandably frustrated by the course of events that led to his arrest and prosecution.  *See* Dkt. No. 87.  In light of plaintiff's *pro se* status, the Court has also reviewed the exhibits offered by plaintiff.  The first appears to be a memo authored by the DA's Office.  *Id*.  This memo is a summary of the evidence against plaintiff.  *Id*.  But it also recognizes that further investigation showed that the repair shop was in possession of the truck for "many months," which means it is "possible that the inspection sticker was altered by the repair shop" or even by someone else.  *Id*.  The second exhibit is a handwritten note that tends to suggest the repair shop manager did not want to bring any charges.  *Id*.  And the third is an excerpt

- 14 -

from Investigator Gagne's deposition in which he states that he did not leave the forged inspection sticker in the possession of the DA's Office because he didn't trust them not to lose it.  *Id*.

The problem for plaintiff is that none of these things create a triable issue of fact on the probable cause question.  As noted *supra*, the Second Circuit has repeatedly emphasized that probable cause—even in the slightly more demanding context of a malicious prosecution claim—requires far less than what is needed to prove guilt beyond a reasonable doubt at trial.

Indeed, even if the exculpatory facts set out in the DA's memo (*e.g.*, that the sticker might well have been forged by another bad actor) were known to Investigator Gagne, it would not have vitiated probable cause under the totality of these circumstances.  *Cf. Stansbury*, 721 F.3d at 92–93 ("A story is never a single chapter, it is the experience of the entire tale; the same is true of probable cause.").  Accordingly, Investigator Gagne's motion for summary judgment must be granted.

## V.  <u>CONCLUSION</u>

Plaintiff has not substantiated a genuine dispute of any fact that might require a trial on his malicious prosecution claim.

Therefore, it is

ORDERED that

1.  Plaintiff's motion for reconsideration is DENIED; and

2.  Defendant's motion for summary judgment is GRANTED.

The Clerk of the Court is directed to terminate the pending motions, enter

a judgment accordingly and close the file.

IT IS SO ORDERED.


Dated:  January 3, 2024
        Utica, New York.

David N. Hurd
U.S. District Judge